● ORIGINAL ●

1
4/13/0

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY,
    Plaintiff

    v.

Pennsylvania Board of Probation and
Parole, ("PBPP"); Joseph Smith,
individually and in his official capacity as
agent for PBPP; **Daniel Roberts,**
individually and in his official capacity as
District Director for PBPP; **George
Johnson,** individually and in his official
capacity as supervisor for PBPP; **Charles
Giornesto,** individually and in his official
capacity as agent for PBPP; **Robert B.
Stewart III,** individually and in his official
capacity as District Attorney of Huntingdon
County, PA; **Arthur Thomas,** individually
and in his official capacity as counsel for
PBPP; **K. Scott Roy,** individually and in
his official capacity as counsel for PBPP;
**Thomas Ridge,** individually and in his
official capacity as Governor of PA;
**William Ward,** individually and in his
official capacity as Chairman of PBPP;
**Sharon Burke,** individually and in her
official capacity as assistant to the
Superintendent of Smithfield SCI; **William
Caldwell,** individually and in his official
capacity as judge of the U. S. District
Court; **Seth Mendelsohn,** individually and
in his official capacity as counsel for the PA
Office of Attorney General; **Fred Jacobs,**
individually and in his official capacity as
hearing examiner for PBPP; **John Doe #1,**
individually and in his official capacity as a
corrections officer for PA Department of
Corrections ("DOC"); **Neil Mechlin,**
individually and in his official capacity as
Superintendent for DOC at Waynesburg
State Correctional Institution, ("SCI");

**1 : CV 00 - 0649**

**CIVIL RIGHTS COMPLAINT**

Civil Action No. _____

**Jury Trial Demanded**

FILED
SCRANTON

APR 13 2000

PER _____
DEPUTY CLERK

**James Morgan**, individually and in his          :
official capacity as Superintendent for          :
DOC at Smithfield                                :

# COMPLAINT

## I.    PRELIMINARY STATEMENT

Gail Galloway, ("Plaintiff"), file this Civil Rights Complaint pursuant to 42 U.S.C.A. Section 1983 to redress the deprivations, under color of law, of rights secured by the Constitution of Pennsylvania and the Constitution of the United States of America. Plaintiff also files this Action under the Civil RICO Statutes, 18 U.S.C.S. ss 1961, ss 1962, ss 1963, ss 1964.  Plaintiff  also claims violations of 18 U.S.C.S. ss 241, ss 242, as well as violations of 61 P.S. ss 331.27, 18 Pa. C.S. ss 4902, ss 4903, ss 4904, ss 4910, and ss 4911, *inter alia.*

Plaintiff is an adult citizen and resides at R.D.#1, Box 30, Petersburg, PA 16669. Plaintiff lives in a private home and shares access to and common authority over the bathroom, livingroom, den, kitchen, and one bedroom Plaintiff shares with Beverly Galloway ("Wife").

Plaintiff's son, David Galloway, ("David") shares common authority over the rooms of the house except for his bedroom, which no one else in the household has access to or common authority over.  David keeps his private room locked all the time and he possesses the only key, showing he exhibits an expectation of privacy that is reasonable.  David is a 27 year old adult law abiding citizen, a sportsman, and a private collector of militaria, sporting equipment and antique through semi-modern firearms including his personal hunting rifles.  David has a current valid license to carry a concealed weapon for protection, registered to him at his home address by the Huntingdon County Sheriff's Department following the extensive background

investigation required for such a permit.

Plaintiff was convicted of a non violent crime in 1991 which Plaintiff still maintains his innocence. Plaintiff was incarcerated in November 1992 and released to a Community Corrections Center in January 1994 where Plaintiff had his car, a full time job, and was free to go home on weekends to be with his family. On September 14, 1994, Plaintiff was released on parole and worked on the same job without incident until the events which brought about this instant action.

On June 1, 1998, Joseph Smith, ("Smith"), an agent of the Pennsylvania Board of Probation and Parole ("PBPP") came to the residence of the Plaintiff where Plaintiff was sitting on the side porch with his five (5) year old grandson, after just quitting work for the day. Smith got out of a pickup truck and approached Plaintiff at the porch. Smith said he had come to search the house because it had been reported to the PBPP office that Plaintiff's son, David, had inquired about buying Plaintiff a .50 caliber rifle for Plaintiff for his birthday. Plaintiff informed Smith that he knew nothing of this and did not believe that David would make such an inquiry.

Smith then said he was there to search David's room. Plaintiff asked Smith for a search warrant because David's room is always locked and no one but David has access to his room. Smith said he did not have a search warrant and did not need one because he could search anywhere he wanted anytime he wanted. Plaintiff again told Smith that David was not home and that David keeps his private room locked all the time and Plaintiff does not have access to David's room. Smith ordered Plaintiff to take him to David's room. Plaintiff complied under protest, leaving 5 year old Tyler Galloway,

4

("Tyler"), on the porch without family supervision.  Upon arriving at the door to David's

private room, Smith ordered Plaintiff to open the door.  Plaintiff had stated repeatedly

that he did not have a key to David's private room and no access to and no common

authority over David's private room.  Smith again ordered Plaintiff to open the door.

Plaintiff tried the doorknob and the door was locked as Plaintiff had repeatedly stated.

Plaintiff had asked Smith six (6) different times to be allowed to call David at work so

he could come home if Smith wanted to talk to him.  Smith had refused each request.

Plaintiff asked Smith three (3) different times to be allowed to wake his wife,

who was sleeping due to having to work third shift, so she could watch 5 year old Tyler.

Smith refused these reasonable requests each time too.  Smith then became aggressive

and ordered Plaintiff again to get the door open while exposing a handgun at his side

with his hand close to the pistol grip.  Plaintiff became scared and recalled hearing not

long before that two (2) parole agents had shot an unarmed parolee named Kenneth

Griffin to death in his home in West Kensington, PA.  Fearing for his life, Plaintiff

forcibly opened the locked door, causing it to be damaged.  Smith had no search warrant,

no probable cause for a search warrant, and no reasonable suspicion to believe Plaintiff

had violated any condition of his parole.  Smith showed no interest in searching any area

of the house Plaintiff had common authority over.

Smith entered David's room and started to ransack while making Plaintiff stand

in the middle of the room.  Finding nothing, Smith opened the doors to a large closet and

entered it.  Smith looked around for a few seconds and then reached up to the back of the

top shelf of the closet where Smith removed a handgun which David had a valid permit

to carry.  Smith found a key somewhere inside the closet and then got into a large

solid wooden cabinet located inside David's closet and discovered David's private collection of antique and collectible guns and David's hunting rifles and other collectibles.

Smith forced Plaintiff out to the porch where a Pennsylvania State Police ("PSP") car was arriving. Smith and the trooper took hold of Plaintiff and pulled his arms behind his back and handcuffed Plaintiff in front of his 5 year old grandson. Scared from what was going on as the two men put Plaintiff in the back seat of the troopers car, the little boy ran off around the house and out of sight.

Another PSP car arrived and Cpl. Brown got out and aided in the warrantless search and seizure and helped remove personal property belonging to David from his private room. David's valuable property was placed in the bed of the pickup truck Smith came in without regard to its condition or value. Smith made no inventory of what was seized in the warrantless search and seizure in David's room.

Plaintiff was placed in the Huntingdon County prison. On June 2, 1998, George Zanic, ("Zanic"), was appointed to represent Plaintiff, but Zanic refused to talk to Plaintiff or his family and would not come to see Plaintiff when his office was only about two (2) blocks away. On June 9, 1998, a preliminary hearing was held and Zanic did not even show up. Zanic did not ask for a continuance or do anything at all on behalf of Plaintiff, thereby abandoning Plaintiff without legal representation.

On June 24, 1998, Smith transported Plaintiff to the State Correctional Institution, ("SCI") at Smithfield, PA. At the direction of the PBPP, Plaintiff was held at SCI Smithfield until a revocation hearing could be held and Plaintiff was place in solitary

6

confinement in the Restricted Housing Unit ("RHU") also referred to as the ("Hole").

Plaintiff remained in solitary, not allowed to talk to anyone and no one being allowed to

talk to Plaintiff until Plaintiff was transferred on November 10, 1998.

A revocation hearing was held on August 11, 1998, at which time Smith

committed perjury, presented documents as evidence while representing them to be

something other than what they were in violation of state law and Plaintiff's due process

rights.

David's attorney was at the hearing but did not challenge any of the

Constitutional violations of the warrantless search and seizure and did not challenge  any

violations of state or federal law and basically was not prepared and presented no

defense for the Plaintiff.

As soon as Plaintiff was placed in jail, Plaintiff's Habeas Corpus case became

active in the U. S. District Court which was captioned *Galloway v. County of

Huntingdon.*  Robert B Stewart III, ("Stewart") with the help of William Caldwell,

("Caldwell") conspired to push Plaintiff's habeas corpus petition through the court while

Plaintiff was locked up in solitary confinement in the hole at Smithfield SCI and deny

and dismiss it so Plaintiff would not have a chance to present the facts.  Stewart and

Caldwell conspired to not allow the true issues of Plaintiff's case, which was on a stay

from the Judge Muir, and denying Plaintiff the opportunity to present his case on the

true issues and merits was a denial of due process.  The Plaintiff was locked up in

solitary confinement in the Hole in SCI Smithfield and was denied access to legal

material following numerous requests for access to the law library and legal material

because of the active habeas corpus petition and Plaintiff was denied all access to

7

legal material for almost five (5) months by prison officials, which strictly limited

Plaintiff's ability to prosecute his *pro se* Petition for Writ of Habeas Corpus and this, in

turn, caused a denial of due process. Stewart, with full knowledge that Plaintiff had been

transferred to SCI Waynesburg, served Plaintiff's papers by mailing them to SCI

Smithfield instead of Plaintiff's home address which was listed with all parties as the

address where papers were to be served for Plaintiff. By the time Plaintiff finally

received what Stewart had filed to the Court and served to the wrong address, it was to

late for Plaintiff to respond and Caldwell in furtherance of the conspiracy to protect

the interests of Huntingdon County dismissed Plaintiff's habeas petition without

allowing Plaintiff to respond or know what was going on in the secret communications

between Stewart and Caldwell, thereby denying Plaintiff due process of law. Plaintiff

has also discovered that Caldwell and Stewart were co-defendants in a civil action

charging them with conspiracy to protect the interests of Huntingdon County while they

were actively involved in Plaintiff's case against Huntingdon County, constituting, at the

very least, a conflict of interest. Their conspiratorial conduct has rolled over and infected

Plaintiff's appeals while they continue to protect the interests of Huntingdon County.

While at SCI Smithfield in the Hole in solitary, Plaintiff suffered severe chest

pains, pain and numbness of the left arm, profuse sweating, severe headache and erratic

blood pressure. Plaintiff, believing he was having a heart attack, asked the guard making

his rounds for medical help and told the guard what was wrong. The guard left and

Plaintiff continued to suffer. After about an hour, the guard returned and pushed a

crumbled up piece of toilet paper under the door and said there were four (4) Tums in it

and Plaintiff was to eat them, keep quite and get to sleep. Plaintiff suffered all through the night, believing he might die. The institution exhibited a negligent deliberate indifference to the medical needs of Plaintiff whose father had a history of heart trouble from the age of 42 and Plaintiff was 50 years old.

The following afternoon Plaintiff was strapped and handcuffed and taken to the dentist and a medic, not knowing what had happened the previous day, told Plaintiff he wanted to see him about his cholesterol levels before he was taken back to the block. When Plaintiff was finally taken to the medical office and examined, he was placed in the hospital infirmary. Plaintiff's blood pressure was very high and very erratic. Plaintiff remained in the infirmary about a week without his family being notified and suffered from intermittent chest pains. Plaintiff's wife registered a complaint about the lack of proper medical care at the onset of the cardiac event and the fact that she was not notified that Plaintiff was hospitalized with a heart problem. After Plaintiff was returned to the Hole, given nitro glycerin tablets and monitoring of blood pressure started, Sharon Burke ("Burke") came to Plaintiff's cell and ordered Plaintiff to write to his wife and tell her he was not being mistreated and was being well taken care of. When Plaintiff told Burke what had happened, her response was "You didn't die, did you." There was no reason for denying medical care and using the fact Plaintiff did not die as justification for the denial of medical care.

At SCI Waynesburg, Plaintiff was exiting his cube housing unit and slipped on the wet floor that had been wet mopped, causing the Plaintiff to fall hard onto the wet floor and strike his head and left shoulder on a heavy wood plank table seat. There were no wet floor signs out or anything to indicate the floor was wet. After Plaintiff fell, the

officer on duty made an inmate put out the wet floor signs in the area where Plaintiff had slipped and fell. Plaintiff has suffered severe headaches and severe pain in his left shoulder and back ever since. The DOC doctor on duty said there wasn't much they could do. Plaintiff over the week or so after the fall was passing blood in his stool. Again the medical personnel said there was nothing they could do. They took Plaintiff off the aspirin he had been given to take everyday to thin his blood for his heart problem. Plaintiff was not given proper medical care exhibited by the deliberate indifference of the medical personnel and Plaintiff still suffers as a result.

Plaintiff's Constitutional rights were violated by the DOC when Plaintiff was held longer than allowed by law and made to serve over his maximum sentence by several days because the County jail time was not properly calculated by the DOC.

Plaintiff's Constitutional rights were violated under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. The PBPP defendants violated the parole regulations and Statutes including 61 P.S. ss 331.27, because they had no authority to conduct a warrantless search on a locked residential dwelling of a private citizen and then illegally seize property to use as evidence of a parole violation when Plaintiff had no access to, no common authority over and no control over what was seized. Plaintiff was not in possession of any contraband to justify a parole violation. No evidence of a parole violation was found in any area Plaintiff had common authority over.

PBPP defendants have violated numerous state laws and federal laws under 18 U.S.C. ss 241 and ss 242.

The continuing conspiracy of Stewart and Caldwell goes back further and is a violation of the RICO Act. Their conspiracy was in place when they conspired to dismiss a previous lawsuit filed in 1996 by Plaintiff against the other perpetrators of fraud upon Plaintiff's business. There are numerous predicate acts of fraud resulting from the continuing conspiracy and Stewart and Caldwell were actively conspiring against Plaintiff while they were co-defendants in a lawsuit filed by Rodman and Melinda Thompson for conspiracy to protect the interests of Huntingdon County and Plaintiff's lawsuit was against Huntingdon County.

The conspiratorial actions of the defendants in violation of the Plaintiff's Constitutional rights has extended into a RICO violation by the fraudulent conduct by wire and mail which has caused Plaintiff's business to be destroyed to the point that it cannot recover its business or pay its outstanding debts.

Plaintiff's original charge was a non violent offense and Plaintiff has never been involved in any acts of violence, Plaintiff is 52 years old and was working in his own business and had been on parole for almost four (4) years without incident. The charged parole violation was based on a know false report file by parole agent and gun dealer Charles Giornesto, aka Casey Giornesto and the unconstitutional warrantless search and seizure in a locked private residence of an adult citizen who is not and never has been under the authority of the PBPP. There was no justification for the PBPP to place Plaintiff in total incarceration in an already extremely overcrowded prison system when alternatives such as house arrest, electronic monitoring, etc. were available. Plaintiff was given total incarceration so he could not have a chance to prosecute his Petition for Writ of Habeas Corpus and show the illegal, unethical, and

other motives of the conspirators and get his wrongful conviction overturned.

The Actions of each defendant under color of law has violated established Constitutional and Statutory rights of the Plaintiff and Plaintiff's rights to due process.

Plaintiff is seeking compensatory damages and punitive damages from each defendant for their conspiratorial involvement in the denial of Plaintiff's most basic Constitutional rights.

Defendant Smith also exhibited a negligent deliberate indifference toward the welfare and well-being of a 5 year old child who was left without family supervision and ran off when Plaintiff was handcuffed in front of him and pushed into a police car. Smith had refused to allow Plaintiff to wake his wife. When Plaintiff's wife woke later from the noise of Smith and Brown ransacking David's room, she came out to the PSP car and asked where Tyler was. Plaintiff said he had ran off around the house and Plaintiff did not know where he was now. After searching, Plaintiff's wife found the 5 year old boy hiding behind a chair in the corner of the front porch, shaking and scared. This incident has caused an emotional trauma on the child

## II.   **JURISDICTION**

The U. S. District Court has jurisdiction over Plaintiff's claims of violation of Plaintiff's federal and state Constitutional rights under color of law as provided in 28 U.S.C.S. ss 1343, among others, granting district courts original jurisdiction over civil actions to redress any deprivation under color of law of any right, privilege or immunity secured by the Constitution of the United States.

## III.   **PARTIES**

1.      Gail Galloway, ("Plaintiff") is an adult citizen of the United States and resides at R.D.#1, Box 30, Petersburg, PA 16669.  Plaintiff initiates this lawsuit for violations of his civil rights and Constitutional rights within the meaning of the Constitutions of the United States and Pennsylvania as well as violations of federal and state laws in denying Plaintiff due process of law.

2.      The Pennsylvania Board of Probation and Parole ("PBPP") is being sued as an entity for violations of Plaintiff's basic civil rights and Constitutional rights as well as acts in violation of RICO Statutes under 18 U.S.C.S. ss 1961, ss 1962, ss 1963 and ss 1964 and has established a pattern of racketeering activities.  Said acts were done under color of  law to deprive Plaintiff of rights secured by the Constitution and laws of the United States and Pennsylvania.

3.      Defendant Joseph Smith, ("Smith") is an adult and agent of the PBPP and is being sued individually and in his official capacity for actions committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or

territory of the United States.

4.      Defendant Daniel Roberts is an adult and is a manager for the PBPP and is being sued individually and in his official capacity for actions committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

5.      Defendant George Johnson is an adult and a supervisor for the PBPP and is being sued individually and in his official capacity for actions committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

6.      Defendant Charles Giornesto, aka Casey Giornesto, ("Giornesto"), is an adult and an agent for the PBPP and is being sued individually and in his official capacity for actions committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

7.      Defendant Robert B. Stewart III is an adult and is the District Attorney of Huntingdon County and is being sued individually and in his official capacity for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights

14

secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

8.    Defendant Arthur Thomas ("Thomas") is an adult and is counsel for the PBPP and is being sued individually and in his official capacity for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

9.    Defendant K. Scott Roy, ("Roy"), is an adult and is counsel for the PBPP and is being sued individually and in his official capacity for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the Laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

10.    Defendant Thomas Ridge, ("Ridge"), is an adult and is Governor of Pennsylvania and is being sued individually and in his official capacity for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

11.    Defendant William Ward, ("Ward") is an adult and is the Chairman of the PBPP and is being sued individually and in his official capacity for acts committed

15

against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by

the United States Constitution and the laws of the United States and Pennsylvania and

did so under color of any rule, regulation, statute, ordinance, custom or usage of any state

or territory of the United States.

12.    Defendant Sharon Burke, ("Burke"), is an adult and is Assistant to the

Superintendent at the State Correctional Institution, ("SCI"), at Smithfield, PA and is

being sued individually and in her official capacity for act committed against Plaintiff

under color of state law, thereby depriving Plaintiff of rights secured by the United

States Constitution and the laws of the United States and Pennsylvania and did so

under color of any rule, regulation, statute, ordinance, custom or usage of any state or

territory of the United States.

13.    Defendant William Caldwell, ("Caldwell"), is an adult and is a judge in

the U. S. District Court for the Middle District of Pennsylvania and is being sued

individually and in his official capacity for acts committed against Plaintiff under color
of

law, thereby depriving Plaintiff of rights secured by the United States Constitution and

the laws of the United States and Pennsylvania and did so under color of any rule,

regulation, statute, ordinance, custom or usage of any state or territory of the United

States.

14.    Defendant Seth Mendelsohn, ("Mendelsohn") is an adult and is counsel

for the Office of the Attorney General of Pennsylvania and is being sued individually and

in his official capacity for acts committed against Plaintiff under color of state law,

thereby depriving Plaintiff of rights secured by the United States Constitution and the

laws of the United States and Pennsylvania and did so under color of any rule,

regulation, statute, ordinance, custom or usage of any state or territory of the United

States.

15.    Defendant Fred Jacobs, ("Jacobs"), is an adult and is a hearing

examiner for the PBPP and is being sued individually and in his official capacity for

acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of

rights secured by the United States Constitution and the laws of the United States and

Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom

or usage of any state or territory of the United States.

16.    Defendant John Doe#1, ("Doe #1"), is an adult and is a corrections

officer for the Pennsylvania Department of Corrections, ("DOC") and is being sued

individually and in his official capacity for acts committed against Plaintiff under color

of state law, thereby depriving Plaintiff of rights secured by the United States

Constitution and the laws of the United States and Pennsylvania and did so under color

of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the

United States.

17.    Defendant Neil Mechlin, ("Mechlin") is an adult and is Superintendent

of SCI Waynesburg, PA and is being sued individually and in his official capacity for

acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of

rights secured by the United States Constitution and the laws of the United States and

Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or

usage of any state or territory of the United States.

18.     Defendant James Morgan, ("Morgan") is an adult and is Superintendent of SCI Smithfield, PA and is being sued individually and in his official capacity for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania and did so under color of any rule, regulation, statute, ordinance, custom or usage of any state or territory of the United States.

## IV.   STATEMENT OF FACTS

A.      Defendant Pennsylvania Board of Probation and Parole ("PBPP") is

an entity and government agency bound by Statute of Law to obey the law and

Constitutional rights of the citizens and is also an enterprise within the meaning of the

RICO act.

1.      Plaintiff was on parole and under the supervision of the PBPP and

had been on parole without incident since September 14, 1994.

2.      Pennsylvania Statute 61 P.S. ss 331.27a pertains to PBPP and all

other defendants in this law suit directly or indirectly involved in the warrantless search

and seizure conducted June 1, 1998 without probable cause or reasonable suspicion to

believe Plaintiff had violated any condition of his parole.  Said search was performed on

the locked residential dwelling of a law abiding private adult citizen who is not and never

has been under the custody, control, supervision, or authority of the PBPP and was

conducted by forced entry without a search warrant.

3.      Defendant PBPP is an entity which constitutes an "enterprise"

within the meaning of 18 U.S.C.S. ss 1961, ss 1962, ss 1963, ss 1964 and has

established a pattern of racketeering activities with various illegal acts including but not

limited to the conspiracy to commit the act of burglary, theft, and robbery in the

warrantless forced entry into the locked residential dwelling of David Galloway

("David"), a law abiding adult private citizen and the thefts of products of interstate

commerce belonging to David.

4.      Defendant PBPP through its counsel, agents, and employees

committed mail fraud in the filing of known false reports and the fraudulent use of

19

Bureau of Alcohol, Tobacco, and Firearms ("BATF") forms to commit perjury, falsely

represent BATF forms to be something they were not and fraudulently used the mailed

forms to obstruct and impede justice at a parole hearing held August 11, 1998.

    5.    Defendant PBPP has attempted to obstruct justice and committed a

predicate act of fraud in a conspiracy to cover-up the shooting death of a parolee named

Kenneth Griffin ("Griffin") in his apartment in West Kensington, PA in the Fall of 1997.

Grillin was unarmed and in bed with his wife at the time he was shot to death by two

parole agents in a hail of bullets.

    6.    Defendant PBPP committed another predicate act of obstruction

of justice in the seizure of products of interstate commerce in the case of Keith Scott

("Scott") who was violated on parole for possession of firearms in 1994.  After Scott

served three (3) years in prison as a result of the warrantless search and seizure and the

fact that the court had ruled the search and seizure unconstitutional, the PBPP finally

conceded that there was no evidence to justify the parole violation.  Defendant PBPP

knew there was no evidence to justify the parole violation and revocation for possession

of firearms which Scott did not own and were not in his possession, but the PBPP

pursued the case through the courts since 1994 with the knowledge the search was

illegal, thereby committing the act of conspiracy to obstruct justice and take possession

of products of interstate commerce.  In the Fall of 1999, the Commonwealth Court, on

remand from the United States Supreme Court, dismissed the case and the PBPP

finally admitted they had no evidence of a parole violation, therefore, the 3 year

incarceration was not justified and the product of a continuous conspiracy to obstruct

justice.

7.    Defendant PBPP has continued in a pattern of obstruction of justice in Plaintiff's case and violated the Statutes of law under 61 P.S. 331.27a and the Constitutional rights of Plaintiff under the Fourth and Fourteenth Amendments and Article 1, Section 8 of the Pennsylvania Constitution and 18 U.S.C.S. ss 241 and ss 242, *inter alia.*

8.    Defendant PBPP has continued its predicate acts of fraud in Plaintiff's case which caused Plaintiff's business to suffer substantially and be forced to the verge of bankruptcy from which Plaintiff has not been able to recover.

B.    Defendant Joseph Smith, ("Smith"), an agent of the PBPP did on June 1, 1998, come to the residence of Plaintiff and demand to search the premises under the guise that it had been reported that David had inquired about buying Plaintiff a .50 caliber rifle for his birthday.  Smith knew this was not true and was not probable cause or even reasonable suspicion to conduct a warrantless search.  Smith had arrived in a pickup truck and confronted Plaintiff, who was sitting outside his house on the porch swing with his five (5) year old grandson.

1.    Defendant Smith admitted he had no search warrant and refused to say who had filed the report when Plaintiff stated there was no truth to it that Plaintiff knew of.

2.    Defendant Smith refused six (6) different times to allow Plaintiff to call David to come home when Smith made it clear he was there specifically to search David's private room.

3.    Defendant Smith said specifically that he was there to search

21

David's room and Plaintiff told Smith repeatedly that David lives in a private room that

he keeps locked and that David is the only one with a key and that no one else had access

to or common authority over David's private locked dwelling.  By David having a door

on his residence which he kept closed and locked at all times, David exhibited an

expectation of privacy that society would accept as reasonable.

       4.      Defendant Smith, acting as part of a conspiracy on the known

fraudulent report filed by PBPP agent Charles Giornesto, aka Casey Giornesto

("Giornesto"), who is also a gun dealer with a gun shop near Saxton, PA, ordered

Plaintiff, to take him directly to David's room.  Smith had no search warrant, no

probable cause, and no reasonable suspicion to believe Plaintiff had done anything to

violate the conditions of his parole which Plaintiff had been on almost four (4) years

continuous without incident.  Smith refused to allow Plaintiff to wake his wife, who was

asleep due to having to work third shift, to take care of the 5 year old boy.

       5.      Defendant Smith ordered Plaintiff through the entire house

directly to David's room at the other end of the long house.  Smith made no attempt

to search anywhere in the house where Plaintiff had access to or common authority

over.

       6.      Upon arriving at the door to David's private room, Smith ordered

Plaintiff to open the door.  Plaintiff tried the door and it was locked as Plaintiff had

stated.  Smith became aggressive and again ordered Plaintiff to get the door open.

Plaintiff said he did not have a key to the room and he should call David at work to come

home.  Smith became agitated and again in a harsh commanding voice ordered Plaintiff

to "GET THE DOOR OPEN!" Then Smith moved his arm back along his side exposing

a handgun with his hand close to the grip. The shooting death of an unarmed parolee in

his home several months before flashed through Plaintiff's mind. Plaintiff, in fear for his

life, forcibly opened David's locked door causing it to be damaged.

   7. Defendant Smith ordered Plaintiff inside David's room and

ordered Plaintiff to stand in the middle of the room while Smith ransacked the room.

After finding nothing in the room, Smith entered through the door of a large closet and

started to search inside the closet. Smith reached up high to the top shelf of the closet

and from the back of it removed a handgun, checked it and laid it on David's bed. David

had a valid legal permit to possess and carry a concealed weapon for protection that was

issued to David at his home address by the Huntingdon County Sheriff following the

extensive background investigation performed before the issuance of a protection permit.

   8. Smith then entered a locked solid wooden cabinet located inside

the closet at the back and seized David's collection of antique through semi modern

firearms and other collectibles.

   9. Defendant Smith forced Plaintiff outside where a Pennsylvania

State Police ("PSP") car had arrived. Smith and the Trooper handcuffed Plaintiff in front

of his 5 year old grandson and pushed Plaintiff into the PSP car. The little boy became

scared and ran off around the house and out of sight.

   10. Another PSP car arrived, driven by Cpl. Brown. Smith and Brown

reentered the house and continued the warrantless search and seizure of David's lawfully

owned property and family heirlooms.

   11. 61 P.S. ss 331.27a (g) defines "Offender" as: "Any person

23

subject to the parole or probationary supervision of the board."

"Property search" is defined as:  "A warrantless search of real property, vehicle or personal property which is in the possession or under the control of the offender."

"Real property" is defined as: "Any residence or business property of the offender, including all portions of the property to which the offender has access."

12.    Plaintiff is the "Offender" as defined by law.  David is a law abiding private citizen who is not and never has been under the authority, custody or control of the PBPP, therefore the PBPP agent and PSP had no authority to conduct a warrantless search and seizure in his locked residence.

13.    Plaintiff would have no objection to a search of areas he had common authority over if it was based on a legitimate reasonable suspicion as the law requires.  However, the PBPP defendants and Smith conspired to fabricate a known false report in an attempt to overcome the reasonable suspicion requirement of the law.  Then Smith did not search any area of the "Property" which Plaintiff had access to or common authority over.  But instead, Smith violated the parole statute governing a parole agent's conduct,  61 P.S. ss 331.27a (b)  which states:  "Nothing in this section shall be construed to permit searches and seizures in violation of the Constitution of the United States or Section 8 of Article 1 of the Pennsylvania Constitution."  David is not an "Offender" as defined by law and is a law abiding adult citizen who exhibited a reasonable expectation of privacy in his locked residential dwelling.  The forced entry

warrantless search and seizure violated the Fourth Amendment and Article 1, Section 8

of the Pennsylvania Constitution which both state: The right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no warrants shall issue, but upon probable cause, supported

by oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized. The forced entry warrantless search and seizure violated

every concept of the Fourth Amendment and Article 1, Section 8.

        14.    Defendant Smith made no inventory of what was seized in the

warrantless search and seizure and no inventory had ever been provided since June 1,

1998.

        15.    Plaintiff contends that the search and seizure of weapons and

firearms was a farce and part of a conspiracy for a gun dealer parole agent to get his

hands on David's valuable collectibles. The seizure was performed in a shopping list

fashion for certain items people wanted. If this had been a legitimate search for

weapons, it would have been performed in areas of common authority and common

access to Plaintiff. A legitimate parole search would not have involved a coercive threat

of life for a parolee to conduct the unlawful act of burglary into a private locked

residential dwelling and goes far outside the scope of authority in supervising a parolee.

        16.    The shopping list type seizure of property also signifies the lack of

validity for the warrantless search. Had this been a legitimate search for weapons: why

was part of knife collection seized while two (2) military combat bayonet knives from

the collection were left on David's bed? Why were two (2) loaded rifle magazines and

three (3) other rifle magazines left in the bottom drawer of the wooden cabinet?

Why was a competition crossbow with no arrows seized and a compound hunting bow with a quiver of arrows left behind?  Why was a pair of expensive new handcuffs and a leather pouch taken?  They are not a weapon or a firearm, but rather a desirable item for a parole agent to want for himself.  Had this been a truly legitimate search and seizure of firearms and weapons, all the knives, ammo, magazines, etc. would have been seized.

17.    Defendant Smith conspired to deprive Plaintiff of his Constitutional rights by committing a fraudulently based warrantless search and seizure in a private locked residence that Plaintiff had no access to and no control over and then Smith used the fraudulently seized items to violate Plaintiff's parole and send Plaintiff to prison for 15 1/2 months for a parole violation that was non existent.

18.    Defendant Smith continued in the conspiracy and cover up and continued to deny Plaintiff due process of law.  Smith knew Plaintiff was not in possession of any contraband.

19.    As part of the conspiracy and denial of due process, Smith committed perjury on August 11, 1998 in violation of 18 Pa. C.S. ss 4902 and ss 4903 when Smith testified that Plaintiff purchased a rifle.  This was false and known by Smith to be false.  Smith then violated 18 Pa. C.S. ss 4910(2) by presenting a BATF form into evidence as an exhibit to prove Plaintiff had purchased a rifle and to discredit the sworn testimony of David.

20.    Defendant Smith used a BATF form to back up his perjured testimony and falsely presented the form to be something it was not.  Plaintiff's name

26

was on the BATF form only as written in by the parole board about who they were

checking on and not who the purchaser was.  In fact the BATF form was marked on the

front that no check could be done and the serial number needed to be rechecked.

       21     By presenting a BATF form as evidence and representing it to be

something it was not is a violation of 18 Pa. C.S. ss 4911(a)(2) and (b) since Smith used

the known false document to defraud the hearing examiner and cause injury to the

Plaintiff.

       22.    Defendant Smith violated the law with known false statements and

false papers in violation of 18 Pa. C.S. ss 4904(d)(1)(2)(3)(e) pertaining to unsworn

falsification to authorities, violation of 18 Pa. C.S. ss 4906(b)(1) pertaining to false

reports to law enforcement authorities, violation of 18 Pa. C.S. ss4910(2) pertaining to

tampering with or fabricating physical evidence with the false reports and violation of

18 Pa. C.S. ss 4911(a)(2) pertaining to tampering with public records or information.

All these violations of law contributed to the denial of due process of law for the

Plaintiff.

       23.    Defendant Smith, in furtherance of the conspiracy, deliberately

withheld vital information from Plaintiff until the revocation hearing so Plaintiff could

not rebut any of the false reports or perjured testimony, thereby denying Plaintiff of

due process of law.

       24.    Defendant presented hearsay testimony in violation of Plaintiff's

right to due process of law.

       25.    Defendant Smith became a stalking horse for police and

abandoned his duties as an administrator for the parole system when he acted as a

police officer conducting a warrantless search and seizure in the locked residential

dwelling of a private citizen he had no authority over in hope of finding evidence that

a crime may have been committed.  Smith admitted at the August 11, 1998

revocation hearing that he had seized David's property to see if any of it was stolen,

thereby admitting he changed hats and became a stalking horse for the police in

conducting a forced entry warrantless search and seizure.

     C.     Defendant Daniel Roberts ("Roberts") is the District Supervisor of the

PBPP at the Altoona, PA office and acted under color of law and in furtherance of the

conspiracy to deprive Plaintiff of his Constitutional rights by authorizing a warrantless

search and seizure based on the known false report of co-conspirator Giornesto into

the private locked residential dwelling of David when Roberts knew or should have

known that David was not under the authority of the PBPP.  Roberts then used the

illegally seized property which Plaintiff had no access to and no control over as

evidence of a parole violation against Plaintiff.  Roberts then became involved in the

conspiracy to cover up the illegal conduct and Constitutional violations perpetrated upon

Plaintiff.

     1.     Defendant Roberts knew or should have known that  no one in the

PSP or PBPP had any authority over David to forcibly enter his private residence without

warrant.

     2.     Defendant Roberts was responsible for the direct supervision

of the parole agents and supervisors working in his office and was directly responsible

for their conduct and training.

3.    Defendant Roberts knew or should have known that it was a violation of the Constitutional rights of Plaintiff to order a search and seizure of property belonging to a private citizen that Plaintiff did not own, did not have possession of and did not have control over.

4.    Defendant Roberts knew or should have known the state laws and the Statutes governing the conduct of parole agents, especially 61 P.S. 331.27 which states that no search or seizure can be made in violation of the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution.

5.    Defendant Roberts knew of the conduct of defendants Smith, Giornesto, and George Johnson and being a co-conspirator, approved of their conduct, condoned it and turned a blind eye to the violations of the laws and statutes and Constitutional rights of Plaintiff.

6.    Defendant Roberts then became involved in the conspiracy to cover up the known illegal activities and violations of Plaintiff's basic Constitutional rights and Plaintiff being denied due process of law.

D.    Defendant George Johnson, ("Johnson"), is a parole supervisor for the PBPP and acted under color of law and in furtherance of the conspiracy by acting on the known false report of Gornesto to conduct a general warrantless search on the residence of David while knowing he had no authority over David.

1.    Defendant Johnson in furtherance of the Conspiracy attempted to cover up the known false report and illegal conduct of the co-conspirators in order to deprive Plaintiff of his protected liberty interest and basic Constitutional rights.

2.    Defendant Johnson knew or should have known the laws and

Statutes regulating the PBPP concerning private law abiding citizens who are not "Offenders" as defined by Statute and that the PBPP had no authority over private citizens.

3.    Defendant Johnson knew or should have known that it was a violation of the laws of the United States under 18 U.S.C.S. ss 241 and 242 as well as violations of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments of the United States constitution to forcibly enter a private residential dwelling of a law abiding private citizen without warrant and seize private property to fabricate a parole violation against Plaintiff who did not have access to or control over anything in the private residence that was forcibly entered.

4.    Defendant Johnson, due to his position as parole supervisor was directly responsible for the training and supervision of the parole agent co-defendants and responsible for their conduct and actions.

5.    Defendant Johnson knew he had no authority over David who was a private citizen and not an "Offender" as defined by Statute and that the PBPP had no authority over David and Johnson knew of the conduct of defendant's Smith and Giornesto and as a co-conspirator approved their conduct, condoned it and turned a blind eye to the known illegal acts and violations of the law and Constitutions.

6.    Defendant Johnson then aided in a conspiracy to cover up the known illegal activities of the co-conspirators and deny Plaintiff of his protected liberty interest and Constitutional rights.

E.    Defendant Charles Giornesto, aka Casey Giornesto, ("Giornesto"), is an

30

agent of the PBPP and has a long history as a gun dealer and was involved in a conspiracy before and after June 1, 1998 to get possession of a valuable collection of antique, military and collectible firearms owned by a private citizen, David. Giornesto acted under color of law in filing a known false report in violation of the law so that it would be acted upon, this being a direct violation of 18 Pa. C.S. ss 4904, unsworn falsification to authorities. Giornesto specifically violated 18 Pa. C.S. ss 4904(a)(3) when he intentionally and maliciously fabricated a story that he was informed by Chet Stryker, ("Stryker") that Plaintiff's son David had inquired about buying a .50 caliber rifle for the Plaintiff for his birthday. This deliberate and malicious lie was fabricated and reported by Giornesto with the sole intent to mislead a public servant to rely on the false report. Giornesto violated 18 Pa. C.S. ss 4906(b)(1) when he filed a false report to law enforcement authorities of an incident he knew did not occur. Giornesto's illegal acts, under color of law has caused Plaintiff to lose his protected liberty interest and basic Constitutional rights and caused irreparable harm to Plaintiff's business.

1.    Defendant Giornesto fabricated the false report and with the assistance of Johnson gained consent for Smith to conduct a general warrantless search upon the residence of David who is not under the authority of the PBPP. This was done with the sole intent to gain possession of David's valuable collectibles and as part of of an overall conspiracy to deprive Plaintiff of his Constitutional rights and due process of law.

2.    Defendant Giornesto fabricated the false report to overcome the reasonable suspicion requirement to conduct a warrantless search on Plaintiff's living quarters which was a ruse to gain access to the house so a warrantless search could be

performed on the residence of David and illegally take possession of his valuable collectibles.

3.    Defendant Giornesto knew when he filed the report that it was false and in violation of state laws and would result in the Plaintiff's loss of his Constitutional rights under the Fourth and Fourteenth Amendments and lose his protected liberty interest.

4.    Defendant Giornesto, a known gun dealer, knew the value of the collectible guns owned by David and under the guise of being destroyed, as stated by Roberts, the defendants would be able to keep what they wanted, split up the collection or sell it for their own personal gain.

5.    Defendant Giornesto knew that none of the defendants had any authority over David and used Plaintiff's parole status as a stepping stone to launch the warrantless forced entry into David's private room.

6.    Defendant Giornesto knew or should have known his conspiratorial actions violated state and federal law and violated the PBPP regulations and Statutes such as 61 P.S. ss 331.27 as well as violations of Plaintiff's Fourth and Fourteenth Amendment rights and rights under Article 1, Section 8 of the Pennsylvania Constitution.

E.    Defendant Robert B. Stewart III ("Stewart") conspired with William Caldwell, ("Caldwell"), and other defendants to deny Plaintiff due process of law and have Plaintiff locked away in solitary confinement in the Restricted Housing Unit ("RHU"), the Hole, ("Hole"), of Smithfield SCI when Plaintiff's Habeas Corpus

Petition was coming active in the U.S. District Court.

1.    Defendant's Stewart and Caldwell were co-defendants in various civil actions charging them with conspiracy to protect the interests of Huntingdon County and conspiracy to violate the Constitutional rights of Rodman and Melinda Thompson.

2.    Plaintiff's habeas corpus action was against Huntingdon County and any involvement of Stewart and Caldwell while they were co-defendants in a law-suit for protecting the interests of Huntingdon County would be a conflict of interest and violative of Plaintiff's due process rights.

3.    Defendant's Stewart and Caldwell had Plaintiff's habeas corpus petition dismissed without allowing Plaintiff to receive copies of what Stewart filed into the federal court and not allowing Plaintiff to answer anything filed.

4.    Plaintiff believes this conspiratorial confederation still exists between Stewart and Caldwell.

5.    Defendant Stewart failed to comply with Court Orders when Caldwell issued an Order on September 28, 1998, giving Stewart 20 days to comply. The Ordered material was due on October 13, 1998. Stewart failed to comply with the time limit of the Court Order. Because of the conspiratorial confederation, Caldwell gave Stewart a 15 day "informal extension" of time without notifying Plaintiff.

6.    Defendant Stewart sent a letter to Plaintiff stating that some papers had been filed with the Court and that other papers would be filed in the future, however, Plaintiff, locked away in the RHU at Smithfield in solitary confinement was never served with any papers that were filed into Court. Plaintiff had no way to verify the content or

*33*

truthfulness of any papers Stewart filed or to respond to them.

7.    On October 27, 1998, Plaintiff filed a Motion to Compel and
Comply for Stewart to serve copies of all court filings to Plaintiff who was doing his case
*pro se*.  After another 7 days had passed and in furtherance of the conspiracy to deny
Plaintiff access to the court and due process of law, Caldwell arbitrarily denied Plaintiff's
Motion to Compel, thereby denying Plaintiff due process of law and causing extreme
prejudice to Plaintiff's habeas corpus action and in direct violation of the rules of court
that the opposing party be served with anything filed into the court.

8.    In the Order dated November 4, 1998, denying Plaintiff's Motion
to Compel and Comply with the Court Order of September 28, 1998, Caldwell gave
Stewart another 15 days extension to comply after Stewart had already failed to comply
with two time limits. This gave Stewart a total of 60 days with three time extensions of
an original 20 day Order and implied that Stewart did not have to serve Plaintiff with a
copy.  This caused extreme prejudice to Plaintiff.

9.    Plaintiff had his home address registered with Stewart for all
mailings so Plaintiff's wife could copy and forward all filings to Plaintiff.

10.    The new date for Stewart to file an answer to the Court Order was
November 19, 1998.  Stewart did not mail the Plaintiff's copy to his registered address,
but instead mailed it to the SCI at Smithfield on November 19, 1998 while having
knowledge that  Plaintiff had been transferred to SCI Waynesburg on November 10,
1998, causing an extreme delay and Plaintiff not receiving the copy until December 3,
1998.  Plaintiff with limited access to legal material, copying and mailing, drafted a

response, but Caldwell had ruled on December 14, 1998, denying Plaintiff's writ of habeas corpus before the court had received what Plaintiff's response, thereby denying Plaintiff due process of law and access to the court.  Stewart and Caldwell conspired to limit the issues Plaintiff could present to the court when Plaintiff was claiming ineffective assistance of counsel for not raising meritorious issues in the appeal process.

   11. The conspiracy of Stewart and Caldwell had effectively swept Plaintiff's petition for writ of habeas corpus under the rug and denied Plaintiff his Constitutional rights to due process of law and a fair chance to be heard on the true merits of the case.

   12. Defendant Stewart has filed a fraudulent forfeiture action in the matter of *David Galloway v. Joseph Smith, et al.,* 1:CV-99-1868 and against Plaintiff to forfeit property that Plaintiff does not own and did not have possession of when seized. This constituted mail fraud under the RICO Statute in which Stewart conspired with others unknown at present as part of the enterprise  to commit fraud on the court and damage the business of David.

   13. Defendant Stewart backdated court records of filings and tampered with court records in violation of the law and Constitutional rights of Plaintiff to make it appear he had timely filed court papers and not committed the perjury he had before the U.S. District Court in 1:CV-99-1868.

   14. Defendant Stewart, in furtherance of the conspiracy, is also attempting an act of extortion under color of law when he offered to return part of David's property and sell the rest of David's property to pay restitution he claims Plaintiff owes.  Stewart also wants a package deal for David to drop his lawsuit and

"That there would be no more litigation between the Commonwealth and the Galloway's regarding this seizure." This is extortion under color of law in an attempt to bargain away Plaintiff's Constitutional rights to file a lawsuit for the violations of laws and Plaintiff's Constitutional rights.

15.    Defendant Stewart cannot condone the theft of property belonging to a private law abiding citizen and then sell the innocent person's property to pay the debts of another, i.e. Plaintiff. Stewart's duties are to protect the Constitutional rights of private citizens and not to conspire to cover up the illegal seizure of property so the Commonwealth can steal it under color of law.

16.    Defendant Stewart has conspired with Seth Mendelsohn, ("Mendelsohn") to trespass into a civil litigation and has abused his authority in an arbitrary and capricious manner in an attempt to manipulate the Court and alter the proceedings in a civil litigation.

17.    Defendant Stewart has conspired with Mendelsohn and commenced a vindictive prosecution after refusing to allow a hearing under Rule 324 on a Return of Property Motion filed by David in 1998 for the return of his property which was seized in a warrantless forced entry search and seizure and used as false evidence against Plaintiff for a bogus parole violation as part of the conspiracy to incarcerate Plaintiff so he could not be able to pursue his writ of habeas corpus that had finally come up in the U.S. District Court and which was against Huntingdon County. By the defendant's conspiring to have Plaintiff incarcerated and placed in solitary confinement in the Hole, Plaintiff was denied all access to legal material which he had repeatedly

36

requested for almost five (5) months to enable Plaintiff to have meaningful access to the court and the conspiratorial actions of the defendants denied Plaintiff his Constitutional rights to due process of law.

18.     The defendants through a series of letters mailed, faxed, etc. and telephone calls containing known fraudulent and false information in furtherance of the conspiracy to deprive Plaintiff of his liberty interest and Constitutional rights and to cause harm to Plaintiff and his business constitutes mail and wire fraud of an enterprise in furtherance of the conspiracy and in violation of RICO Statutes as well as violations of federal and state law and violations of Plaintiff's Constitutional rights.

19.     Defendant Stewart knew or should have known that his conspiratorial conduct and actions were in violation of state and federal law and violated Plaintiff's Constitutional rights while he acted under color of his authority and under color of law.

20.     Defendant Stewart had conspired with the other defendants of the PBPP to refuse to allow the Rule 324 hearing David requested in 1998 so no ruling could be made on the legality of the warrantless search and seizure that would have effected the bogus case against Plaintiff for parole violation.  Stewart needed to keep Plaintiff incarcerated so he could manipulate his conspiracy with Caldwell to dismiss Plaintiff's Petition for Writ of Habeas Corpus without Plaintiff being able to defend his position and merits of the case.

G.     Defendant Arthur Thomas, ("Thomas") is an attorney for the PBPP and has conspired with the other defendants to cover up the illegal conduct and warrantless

search and seizure in the residence of a private citizen the PBPP had no authority over

and then use the illegally and unconstitutionally seized items as a basis to revoke

Plaintiff's parole when no parole violation occurred and while acting under color of

law.

   1.  Defendant Thomas through his conspiratorial actions has caused

the Plaintiff to lose his protected liberty interest and be unjustly and unconstitutionally

imprisoned for a parole violation that never happened which caused the false

imprisonment of Plaintiff for 15 1/2 months, including about 5 months in the Hole

in solitary confinement at the direction of the PBPP.

   2.  Defendant Thomas, while continuing in the conspiracy and cover

up has abused his authority and oath as an attorney while working for the PBPP and

acting under color of state law, has caused Plaintiff to lose his Constitutional rights under

the Fourth and Fourteenth Amendments as well as under Article 1, Section 8 of the

Pennsylvania Constitution.

   3.  Defendant Thomas knew or should have known that the PBPP had

no authority over a private citizen to forcibly enter his residence, conduct a warrantless

search and seize property of the private law abiding citizen to use as false evidence of a

parole violation against Plaintiff.  Thomas should also have known the Statutes and

regulations that govern the PBPP and that it was a direct violation of 61 P.S 331.27 to

conduct a warrantless search and seizure in the residential dwelling of a private citizen

who is not an "Offender" as defined by the Statute.  Thomas should have also known that

any such action was a violation of federal law under 18 U.S.C.S. ss 241, and ss 242.

   4.  Defendant Thomas, being an attorney and officer of the court

sworn to uphold the Constitutions of Pennsylvania and the United States could have corrected the violations of law and the violations of the Plaintiff's liberty interest and Constitutional rights when he first became aware of them, but instead chose to become a party to the conspiracy to cover up the unlawful and unconstitutional actions of the PBPP agents and officials and conspired to deny Plaintiff due process of law.

5.    Defendant Thomas in furtherance of the conspiracy approved the unlawful conduct of the other conspirators and abused his position and authority under color of law by aiding in the cover up and condoning the unlawful actions of the other conspirators by turning a blind eye to the known violations of state and federal law, violations of PBPP regulations, violations of the Pennsylvania and United States Constitutions and the overall conspiracy to deprive the Plaintiff of his liberty interest and due process of law.

6.    Defendant Thomas exhibited a gross deliberate indifference to the Constitutional rights of the Plaintiff and was involved in filing a Motion to Suppress evidence Plaintiff presented to the Commonwealth Court so the truth about the illegal and unconstitutional conduct of the PBPP agents would not be known, thereby denying Plaintiff access to the Court to present the truth and also denying the Plaintiff due process of law.

H.      Defendant K. Scott Roy, ("Roy") is an Attorney for the PBPP and has conspired with the other defendants to cover up the illegal and unconstitutional conduct and warrantless search and seizure in the residence of a private citizen the PBPP had no authority over and the use of unconstitutionally seized items as a basis to revoke Plaintiff's parole when no parole violation occurred and while acting under color of law. The false imprisonment for 15 1/2 months has caused Plaintiff's business to be virtually destroyed and has cost Plaintiff his livelihood and job.

1.      Defendant Roy through his conspiratorial actions has caused Plaintiff to lose his protected liberty interest and be unjustly and unconstitutionally incarcerated for a parole violation that never happened which caused the false imprisonment of Plaintiff for 15 1/2 months of which about 5 months was spent in solitary confinement in the Hole due to instructions by the PBPP. Plaintiff was working everyday on a job and was a productive tax paying member of society and Plaintiff had done nothing to justify the treatment he received.

2.      Defendant Roy, while continuing in the conspiracy and cover up, has abused his authority and oath as an attorney while working for the PBPP and acting under color of law has caused Plaintiff to lose his Constitutional rights under the Fourth and Fourteenth Amendments as well as Article 1, Section 8 of the Pennsylvania Constitution, *inter alia.*

3.      Defendant Roy knew or should have known that the PBPP had no authority over David, a private citizen, to forcibly enter his residence, conduct a search and seize private property of a private law abiding citizen to use as false evidence of a parole violation against Plaintiff when Plaintiff had no access to or control over

40

anything David owned or possessed in his private room. Roy also should have known the

Statutes and regulations that govern the PBPP and that it was a direct violation of

61 P.S. ss 331.27 to conduct a warrantless search and seizure in a residential dwelling of

a private citizen who is not an "offender" as defined by the Statute. Roy also should have

known that any such action was also in violation of federal and state Constitutional rights

and violation of state laws and federal law under 18 U.S.C.S. ss 241 and ss 242.

      4.    Defendant Roy, being an attorney and officer of the Court sworn

to uphold the Constitutions of Pennsylvania and the United States could have corrected

the violations of law and the violations of Plaintiff's liberty interest and Constitutional

rights when he first became aware of them, but instead chose to become a party to the

conspiracy to cover up the unlawful and unconstitutional actions of the PBPP agents and

officials and conspire to deny Plaintiff due process of law.

      5.    Defendant Roy, in furtherance of the conspiracy, approved the

unlawful conduct of the other conspirators and abused his position and authority under

color of law by aiding in the cover up and condoning the unlawful actions of the other

conspirators by turning a blind eye to the known violations of state and federal law,

violations of the Pennsylvania and United States Constitutions and the overall conspiracy

to deprive Plaintiff of his protected liberty interest and due process of law.

      6.    Defendant Roy exhibited a gross deliberate indifference to the

Constitutional rights of the Plaintiff and was involved in filing a Motion to Suppress

evidence Plaintiff was presenting to the Commonwealth Court so the truth about the

illegal and unconstitutional conduct of the PBPP agents would not be known, thereby

denying Plaintiff access to the Court to present the truth and also denying Plaintiff due process of law.

I.    Defendant Thomas Ridge, ("Ridge") is the Governor of Pennsylvania and bears the overall responsibility for the conduct and training of officials, officers, and field agents of the PBPP and the PSP and is responsible for the appointment of defendant Ward as the Chairman of the PBPP.

1.    Defendant Ridge, as chief law enforcement officers of Pennsylvania has failed in his duties and responsibilities to secure the Constitutional rights of the Plaintiff after being informed of the violations by state agents under color of law.  Plaintiff wrote a detailed letter to Ridge explaining the numerous violations of state and federal law as well as the Constitutional violations by the PBPP and the PSP and Ridge refused to investigate the misconduct and in fact did nothing and turned a blind eye to the violations.

2.    Defendant Ridge became involved in the conspiracy to deprive Plaintiff of his Constitutional rights when he first became aware of them and chose to ignore the violations of Plaintiff's Constitutional rights and aid in the cover up to deprive Plaintiff of his Constitutional rights under the Fourth an Fourteenth Amendments of the United States Constitution and a violation of Article 1, Section 8 of the Pennsylvania Constitution to conduct a warrantless forced entry search and seizure on the residential dwelling of a private law abiding citizen.

3.    Defendant Ridge knew or should have known that his conduct in failing to seek due process for the Plaintiff contributed to an escalation of the conspiracy and contributed to the violations of federal and state laws in furtherance of

42

the conspiracy to cover up the warrantless forced entry search and seizure which was in itself a denial of due process.

4.    Defendant Ridge knew or should have known that it is unconstitutional to conduct a warrantless forced entry general search and seizure in the locked residential dwelling of a private law abiding adult citizen who was not under the authority of the PBPP and that no probable cause existed for the PSP to be involved in a general warrantless search and seizure.

5.    Defendant Ridge failed in his duties to secure and protect the Constitutional rights of the Plaintiff by his conspiratorial conduct in aiding and approving of the known illegal conduct of the other conspirators and has abused his position and authority under color of law by aiding in the cover up as well as turning a blind eye to the violations of state statutes, PBPP regulations, state and federal law and violations of the United States and Pennsylvania Constitutions that Ridge swore to protect and the conspiracy to deprive Plaintiff of due process of law.

6.    Defendant Ridge showed a gross deliberate indifference toward the Constitutional rights of the Plaintiff and failed to take any action whatsoever to secure the Constitutional rights of the Plaintiff and failed to even respond to Plaintiff regarding violations of laws and Constitutions.

J.    Defendant William Ward, ("Ward"), was appointed as Chairman of the PBPP by defendant Ridge and has conspired to cover up the violations of state and federal laws and the violations of protected Constitutional rights and has misused his power under color of law to deprive the Plaintiff of his Constitutionally protected rights

43

and due process of law.

1.    Defendant Ward knew or should have known that the actions of the PBPP and its directors, supervisors, agents, and counsel violated the Constitutional rights of the Plaintiff and that the warrantless forced entry search and seizure in a private residential dwelling where Plaintiff had no access to or authority over was a violation of that private law abiding citizen's Constitutional rights and that items seized in such a warrantless forced entry search and seizure were not evidence that Plaintiff had committed any parole violation.

2.    Defendant Ward's prolonged cover up of his agents illegal and unconstitutional conduct in furtherance of the conspiracy has resulted in the denial of due process of law for the Plaintiff.

3.    Defendant Ward shoulders the responsibility for the conduct and training of all parole agents and officials and is responsible when they knowingly violate the state statutes and Constitutional rights of private citizens who are not under their supervision, custody, control, or authority.  Ward also knew it was a violation of Plaintiff's protected liberty interest and Constitutional rights to seize property from a private law abiding citizen and use it as evidence of a parole violation against Plaintiff when Plaintiff had no access to or control over the private property of another that was seized and used as evidence against Plaintiff.

4.    Defendant Ward knew or should have known that it was a violation of parole regulation and Statute 61 P.S. 331.27 as well as Article 1, Section 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments of the United States Constitution to conduct such a warrantless search on a private citizen

44

the PBPP had no authority over.

5.    Defendant Ward knew or should have known that defendant Giornesto's report was false and in violation of state laws and 18 Pa C.S. ss 4904 relating to unsworn falsification to authorities, 18 Pa. C.S. ss 4906 relating to false reports to law enforcement authorities, violation of 18 Pa. C.S. ss 4910 pertaining to tampering with or fabricating physical evidence with the fraudulent use of BATF forms by representing them to be something they were not at the sworn revocation hearing. Ward has continued in the cover up of Smith's perjury and filing of false documents and reports in furtherance of the conspiracy and cover up of the illegal acts of the defendants.

6.    Defendant Ward failed to correct the numerous violations of the law and Constitutions against the Plaintiff and has ignored them by becoming a co-conspirator to aid in the cover up of the warrantless forced entry into the residential dwelling of a private law abiding adult citizen and the illegal seizure and use of the private citizens personal property to establish a bogus parole violation against Plaintiff.

7.    Defendant Ward approved of the illegal conduct of the other conspirators and has abused his authority under color of law by overlooking the illegal conduct and aiding in the cover up and turning a blind eye to the violations of state and federal law, violations of state Statutes and PBPP regulations and violations of Plaintiff's Constitutional rights under the United States and Pennsylvania Constitutions and the continuing conspiracy to deprive Plaintiff of due process of law.

8.    Defendant Ward displayed a negligent deliberate indifference to the Constitutional rights of the Plaintiff and failed to take any action to correct the

violations of laws and the Constitutions perpetrated upon the Plaintiff by the PBPP and in doing so denied Plaintiff due process of law and as part of the fraudulent conduct caused severe harm to Plaintiff's business.

K.   Defendant Sharon Burke, ("Burke") is an assistant to the Superintendent at SCI Smithfield and is responsible for a conspiracy to cover up the denial of medical care as guaranteed by the Eighth Amendment to the United States Constitution and causing excessive punishment by the denial of family visits with Plaintiff for no just cause.

1.   When Plaintiff's family filed a complaint with state officials that Plaintiff had been denied medical care after suffering an apparent heart attack while locked up in the Hole in solitary confinement in administrative custody, Burke came to Plaintiff and ordered Plaintiff to write a letter to his family stating that he was not being mistreated or denied medical care.  When Plaintiff refused and stated he had been denied medical care, Burke responded by stating "Well, you didn't die."  Thereby exhibiting a deliberate indifference to the medical needs of the Plaintiff and signifying that a person had to die to have been denied proper medical care.

2.   As retaliation, defendant Burke was instrumental in Plaintiff being denied family visits which are crucial to the morale of a person locked up in solitary confinement in the Hole for no other reason than administrative action at the request of the PBPP and denied all contact with other people until Plaintiff got the family visits he requested and then they were taken away for no just cause.

3.   Plaintiff had suffered an angina attack and was eventually given nitro glycerin tablets and place on a special cardiac diet.  Due to the deliberate

indifference of the employees at SCI Smithfield and the lack or prompt medical care Plaintiff could have died in his cell.

L.    Defendant John Doe #1, ("Doe #1") is a corrections officer at SCI Smithfield who refused medical care for Plaintiff who believed he was having a heart attack which there is a family history of.

1.    Plaintiff was sitting in the Hole in solitary confinement and started to have severe chest pains, sweating, a severe headache and pain and numbness in the left arm. When Doe #1 came on his rounds, Plaintiff told him he thought he was having a heart attack and needed medical care. Doe #1 left and Plaintiff assumed he had gone for help. About an hour later Doe#1 returned and pushed a piece of folded toilet paper under the cell door and told Plaintiff there were four (4) Tums in it and Plaintiff was to eat them, keep quiet and go to sleep. Plaintiff suffered through the night and believed he was going to die.

2.    Defendant Doe #1 exhibited a deliberate indifference to the immediate medical need of Plaintiff which could have caused Plaintiff to die. Plaintiff's blood pressure was very erratic and had gone up to very high levels which Plaintiff had never experienced before.

M.    Defendant Neil Mechlin, ("Mechlin") is the Superintendent of SCI Waynesburg and shoulders the responsibility of the running of the Institution, training of the officers and qualifications of the medical staff and the overall medical care of the inmates.

1.    The Department of Corrections and Defendant Mechlin did not

properly train corrections officers in the use of wet floor signs on hazardous floors that that are waxed to a high shine and become very slippy when wet.

2.      Plaintiff walked out of his housing cube in Block DB and immediately slipped on the wet floor, hitting his left shoulder and head on the heavy plank on the picnic style table bench when he fell.  Plaintiff also hurt his back when he fell hard onto the floor.

3.      Plaintiff suffered an injury to his left shoulder, head and neck as well as pains inside and his back.

4.      Plaintiff sought medical care and was told not to worry about it and that the pain would go away and Plaintiff would be sore for a few days.  Nothing else was done and no tests were conducted.

5.      Plaintiff suffered for months with the extreme pain in his left shoulder which still persists.  Plaintiff still has pain in his neck and back and suffers severe headaches.

6.      Plaintiff also sustained internal injuries when he fell and had blood in his stool for about two weeks.  Plaintiff reported the problem and was told there was nothing to be concerned about and nothing was done except take away the aspirin Plaintiff was taking to thin his blood for his heart problem.

7.      Plaintiff's back still hurts in a chronic pain.

8.      Defendant Mechlin and his medical staff exhibited a deliberate indifference to the medical care of the Plaintiff and did not conduct tests or adequate examinations to discover the extent of any possible internal injuries.

9.      Defendant Mechlin was negligent in his supervision and training

of officers who did not put out wet floor signs on a dangerous floor when it was wet mopped and failed in his supervision of the medical staff to assure proper medical care.

10.    Directly after Plaintiff fell on the wet floor, the officer on duty had the wet floor signs put out, which they were negligent in not putting out before Plaintiff fell hard on the wet floor and injured himself.

11.    Defendant Mechlin and the DOC allowed further humiliation and degradation of Plaintiff by lining Plaintiff up in the RHU upon reception at SCI Waynesburg and videotaping Plaintiff and two other being strip searched and the strip search being viewed by female officers in the booth or viewed at other times at their discretion.  This humiliating videotape strip search served no security purpose and the female officers were heard discussing the strip search videotapes that they watched or were present when the videotaping was done.  This violated Plaintiff's Constitutional rights and degraded Plaintiff to lower than animal form.

12.    Defendant Mechlin and the DOC held Plaintiff several days past the allowable maximum sentence according to law.

N.    Defendant Fred Jacobs, ("Jacobs") is a hearing examiner and former Chairman of the PBPP and denied Plaintiff a fair hearing and due process of law.

1.    Defendant Jacobs refused to allow the Plaintiff's attorney to tape record the revocation hearing so Plaintiff would have an accurate record of the hearing.

2.    Defendant Jacobs allowed unsubstantiated hearsay testimony that Plaintiff could not cross examine, thereby denying Plaintiff due process of law.

3.    Defendant Jacobs allowed the hearing to take place while the PBPP withheld the names of crucial witnesses Plaintiff needed to show the illegal and unconstitutional conduct of the PBPP agents and the false reports they filed. Jacobs also allowed fraudulent BATF forms to be admitted into evidence and used against Plaintiff when they were known to be falsely represented.

4.    Defendant Jacobs and/or other conspirators were responsible for a four (4) minute gap of deleted testimony in the PBPP tape of the hearing which had crucial testimony to prove Smith was lying and acting as a stalking horse for the police and not in his duties as an administrator for the parole system.

5.    Defendant Jacobs told Plaintiff that he could not record the revocation hearing, but that a copy of the transcript would be made available to Plaintiff for any subsequent appeal.  The hearing was held August 11, 1998 and the Plaintiff never received a copy of the transcript to aid in filing the appeal which caused extreme prejudice to Plaintiff and denied Plaintiff due process of law and the ability to file a meaningful and timely appeal and be able to make reference to testimony.  The hearing tape was not transcribed until January 2000.

6.    Defendant Jacobs knew or should have known that the conduct of the PBPP and its agents was illegal and violated the protected liberty interest and Constitutional rights of the Plaintiff as well as violating the Constitutional rights of a private law abiding innocent person and the illegal seizure of that persons lawfully owned property seized without warrant following a forced entry in his residential dwelling.

7.    Defendant Jacobs violated Plaintiff's rights to due process by allowing the admission of illegally and unconstitutionally seized property Plaintiff did not have possession of, no access to, and no control over to be admitted as evidence against Plaintiff which was not substantial evidence are required to show that Plaintiff had violated any condition of his parole.

8.    Defendant Jacobs violated Plaintiff's due process rights by admitting BATF forms to be admitted which were fraudulently represented to show Plaintiff purchased a gun and Plaintiff's name was only on the forms as the name of the person the PBPP was checking on.

9.    Defendant Jacobs was involved in the conspiracy to cover up

the illegal and unconstitutional actions of the PBPP agents in a conspiracy of self preservation to protect their own employees from any claim of wrongdoing.

    Q.    Defendant William Caldwell, ("Caldwell") conspired with defendant Stewart to deprive Plaintiff of due process of law.

    1.    Defendants Caldwell and Stewart had conspired in another civil case to protect the interest of Huntingdon County and Caldwell and Stewart had conspired against Plaintiff whose case was against Huntingdon County.

    2.    Defendants Caldwell and Stewart had conspired previously against Plaintiff in a civil RICO action that Plaintiff had filed and a true conflict of interest existed. Caldwell and Stewart had conspired to dismiss Plaintiff's civil RICO action and Caldwell abused the power of his position under color of law where Plaintiff had a valid claim and the defendants had committed provable fraud, wire fraud and other violation which cost Plaintiff's business well in excess of $100,000.00.

    3.    Defendant's Caldwell and Stewart have continued in their conspiracy and acted against the evidence and case law and abused their authority by refusing to allow Plaintiff to present evidence which proved he did not get a fair trial. Plaintiff needed to present the evidence of ineffective assistance of counsel which was sufficient to overturn the wrongful conviction for a crime Plaintiff is innocent of.

    4.    Defendant Caldwell conspired with Stewart to dismiss Plaintiff's habeas corpus petition so Plaintiff could not get his conviction overturned and the primary reason was to protect Huntingdon County. This was all done while Plaintiff was conveniently locked was in solitary confinement in the Hole in SCI Smithfield and

being denied all access to legal material that Plaintiff had repeatedly requested for almost five (5) months.

       5.      Defendant Caldwell issued a Court Order for Stewart to file an answer to the Court within 20 days. Stewart did not answer the Order and Caldwell gave Stewart an "informal" 15 day extension which Stewart also did not meet. Something was subsequently filed by Stewart but Plaintiff was never served a copy of what was filed by Stewart so Plaintiff could not respond and had no idea what Stewart filed. This was a violation of the Rules of Court.

       6.      Plaintiff filed with Caldwell to force Stewart to serve Plaintiff a copy of what he had filed into the Court, but Caldwell in furtherance of the conspiracy to deprive Plaintiff of due process of law refused to order Stewart to serve Plaintiff in violation of the Rules of Court so Plaintiff still had no idea what Stewart had filed and had no way to respond, thereby denying Plaintiff due process of law.

       7.      In furtherance of the conspiracy to protect Huntingdon County, Stewart filed papers into the Court long after they were due and did not serve Plaintiff at his registered address at R.D. #1, Box 30, Petersburg, PA so it could be forwarded to Plaintiff where ever he may be. Stewart instead sent it to SCI Smithfield, knowing that Plaintiff had been moved from there 10 days before and transferred to SCI Waynesburg.

       8.      By the time Plaintiff finally received what Stewart filed this time and prepared to answer it, Caldwell, in furtherance of the conspiracy to deny Plaintiff due process of law, had dismissed Plaintiff's Petition for Writ of Habeas Corpus.

       9.      Defendant Caldwell admitted in his ruling, "The petitioner

correctly contends that the instruction was erroneous under Pennsylvania law." and "The petitioner has therefore established a due process violation." However as a part of the continuing conspiracy to protect Huntingdon County and the other defendants in Plaintiff's original suit, Caldwell denied Plaintiff's Petition for Writ of Habeas Corpus and again denied Plaintiff's Constitutional rights to due process of law.

        10.    Defendants Caldwell and Stewart are part of the enterprise and conspiracy involving the civil RICO violations and have successfully denied Plaintiff a fair appellate review and denied Plaintiff due process of law, which said conspiracy has been ongoing and caused great harm to the Plaintiff and his business.

        P.    Defendant Seth Mendelsohn, ("Mendelsohn") has conspired with Stewart to file a fraudulent forfeiture action in trespass on a civil litigation, No. 1:CV-99-1868 to deliberately stall the proceedings and was a vindictive prosecution naming Plaintiff and is an attempt to legally steal the personal property of an innocent person under color of law and sell his property to pay a debt Stewart says the Plaintiff owes.

        1.    No action was filed by Stewart until directly after David filed a civil lawsuit to recover his illegally seized private property.

        2.    Defendant Mendelsohn conspired with Stewart in the vindictive prosecution for the forfeiture after Stewart repeatedly denied David the Rule 324 hearing David had requested in 1998.

        3.    Defendant Mendelsohn has conspired to sidetrack a civil litigation and with Stewart has committed fraud upon the court in violation of his oath to uphold the law and the Constitution and divert a litigants attention from his suit and

54

drag the Plaintiff into the forfeiture action when Plaintiff did not own any of the property seized in the warrantless search.

       4.     Plaintiff's case is extremely complex with the co-mingling of conspiracies to deprive Plaintiff of his Constitutional rights to due process of law.

       Q.     Defendant James Morgan, ('Morgan') is the Superintendent of SCI Smithfield and shoulders the responsibility of running the institution, training of the officers and staff, qualifications and conduct of the medical staff and the overall medical care of inmates.

       1.     The Pennsylvania Department of Corrections and defendant Morgan did not see to the proper training and qualifications of the staff and oversee their conduct. Plaintiff, who was 50 years old and has a family history of heart problems, suffered what he believed to be a heart attack while confined in the RHU. Plaintiff suffered severe chest pains, pain and numbness in the left arm, sweating, severe headache, and shortness of breath.

       2.     Plaintiff reported this to the corrections officer on duty as he made his rounds in the RHU, defendant Doe #1. The officer left and Plaintiff assumed he had gone for medical help. The officer returned about an hour later and stuffed a folded piece of toilet paper under the cell door with four Tums wrapped up in it. The guard told Plaintiff to eat the Tums, keep quiet and get to sleep. The staff exhibited a deliberate indifference to the medical needs of Plaintiff for a condition which could have been fatal for Plaintiff. No medical help or examination at all was given to determine if Plaintiff's life was in danger.

3.    Defendant Morgan failed to see to the proper supervision of the mail room officers who were tampering with United States Mail. Plaintiff's wife purchased a word circle book from The Book Store, located about a mile from the institution and The Book Store packed and mailed the book immediately according to DOC policy. However, it took nine (9) days for Plaintiff to receive the book which was delivered to Plaintiff dog eared and someone had been working the puzzle in pencil in the book.

4.    Plaintiff complained of this and it was obvious that Plaintiff could not have written in the book because only flex ink pens are given in the RHU. Plaintiff is not aware of any investigation or corrective action for tampering with United States Mail, which is a violation of federal law and the tampering was not for any security reason.

5.    Plaintiff had put in numerous requests to go to the law library because he had an active case in the federal court. Plaintiff was denied access to legal material for about four (4) months while in the Hole. Finally, a few days before Plaintiff was transferred to SCI Waynesburg, Plaintiff was strapped and handcuffed and take to the RHU law library.

6.    Plaintiff, who was in administrative custody and not disciplinary custody was badly treated and further humiliated unnecessarily by being videotaped being strip searched on his was into the law library and videotaped being strip searched on his way back out.

7.    The law library for the RHU consisted of a small wire cage with a few worn and outdated books that were basically useless to Plaintiff to prepare any meaningful response to the court. The RHU law library did not meet the standards

established by the United States Supreme Court for any legal material that would give a person meaningful access to the courts.

       8.    Defendant Morgan should have made sure family visits were maintained according to what was established. Family visits are crucial to the morale and well being of incarcerated persons. However, Plaintiff refused to write a letter to his wife telling her he was not being mistreated and that he was being well taken care of as he was ordered to do by defendant Burke. Burke and others then retaliated against Plaintiff by refusing his established family visits on visiting day and turning Plaintiff's family away, telling them to go home and they could not visit Plaintiff.

## IV.    ALLEGATIONS OF DEPRIVATIONS

(1)    All defendants herein named in this complaint are being sued individually and in their official capacity and at all times within this complaint acted under color of law to deprive Gail Galloway, the Plaintiff, of rights, privileges, immunitites, under color of any statute, regulation, rules, ordinance, custom, or usage of any state, subjects, or causes to be subject, the Plaintiff within the jurisdiction of this court, the deprivation of said rights, privileges, or immunities secured by the Constitution and laws of Pennsylvania and the United States.

(2)    Defendants PBPP, Smith, Roberts, Johnson, Giornesto, Stewart, Thomas, Roy, Ridge, Ward, Caldwell, Jacobs, Mendelsohn, did at all times within this complaint and at all times within the subject  matter herein have personal knowledge and were personally involved either directly or indirectly in a civil conspiracy and as such did not correct the herein claimed violations after being brought to their attention and they were knowingly responsible for either causing or allowing the Constitutional violations when they had an affirmative obligation to follow each and every directive and command of the Pennsylvania and United States Constitutions as well as all applicable state and federal laws.  These defendants had guilty knowledge of the violations of Plaintiff's Fourth and Fourteenth Amendment rights of the United States Constitution and violation of Article 1, Section 8 of the Pennsylvania Constitution and the subsequent conspiracy to cover up the violations and the denial of due process.

(3)    Said defendants in (2) were actively involved in a civil conspiracy to deprive Plaintiff of his Constitutionally protected rights under color of law and in violation of federal law under 18 U.S.C.S. ss 241 and ss 242.

(4)     Said defendants in (2) also violated the Statutes regulating the PBPP and

61 P.S. ss 331.27 and continue to ignore the law and cover up the warrantless forced

entry search and seizure in the residence of aprivate law abiding adult citizen and the

unlawful seizure of his personal property to use as false evidence of a fabricated

parole violation to incarcerate Plaintiff in violation of Plaintiff's protected liberty

interest, false imprisonment, and violations of Plaintiff's Constitutional rights and a

continuing denial of due process of law.  Plaintiff has suffered a substantial lose to his

business, lose of consortium, and severe hardship to his family by the false

imprisonment.

(5)     Defendants Burke, Mechlin, Doe #1, and Morgan have violated

Plaintiff's basic rights under the Eight Amendment to medical care and have exhibited

a deliberate indifference toward the health and medical needs of the Plaintiff.


## VII     CLAIMS FOR RELIEF

1.     Each defendant had an affirmative duty and obligation to follow the

mandates and commands of the Pennsylvania and United States Constitutions and to

assure the obligations of the Constitutions are enforce against all violations of the

Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and

Article 1, Section 8 of the Pennsylvania Constitution, *inter alia.*  Therefore, Plaintiff

seeks compensatory and punitive damages against each defendant based on their

individual and official acts, where this lawsuit is brought against each defendant in his

individual and official capacity for violating Plaintiff's Constitutional rights.  Also for

becoming involved in a conspiracy to cover up the illegal and unconstitutional acts

performed in an arbitrary, reckless, and callous manner in total disregard of Plaintiff's

Constitutional rights and rights under federal and state law.  The claimed acts

perpetrated by the defendants could have been corrected promptly, but the defendants

chose to deprive Plaintiff of his Constitutional rights by conspiring to cover up the

illegal and unconstitutional acts.

      2.     Plaintiff seeks compensatory damages for the severe financial loss to his

business which resulted in lost credit ratings, loss of business from the vacuum cleaner

parts and service business which Plaintiff was the only repair technician, loss of the good

business name and reputation by not being able to fulfill guarantee work on equipment

sold which resulted in complaints to the consumer protection agency against Plaintiff.

Loss of business for the new sawmill which Plaintiff was the only qualified operator.

This loss was substantial and also caused Plaintiff to be known as unreliable in

performing work he had agreed to do and given starting dates.  Plaintiff also seeks

compensatory damages for emotional distress, loss of consortium, mental anguish, and

physical injuries caused by being wrongfully taken from his family for no just cause due

to the illegal and unconstitutional acts of the defendants, the wrongful imprisonment, and

being confined in the Hole in solitary confinement for almost five (5) months.  Plaintiff

also seeks compensatory damages for pain and suffering caused by physical injuries

sustained in the fall at Waynesburg and the stress and anguish of the heart problem

brought on by the acts of the defendants.

      3.     Plaintiff seeks punitive damages as punishment for each defendant for

their arbitrary and capricious disregard for Plaintiff's Constitutionally protected rights

## IX    **VERIFICATION**

I, Gail Galloway, assert under penalty of perjury, that to the best of my knowledge and belief, the foregoing complaint is true and correct except for those matters upon which I rely on information and belief, and to those matters, I believe them to be true and correct.

This  5  day of  April , 2000.

Respectfully Submitted,

*Gail Galloway*

Gail Galloway
Plaintiff, *pro se*
R.D.#1, Box 30
Petersburg, PA 16669
(814) 669-9164

Sworn to and subscribed to before me

this  5  day of  Apn. l , 2000.

District Justice

SEAL

DANIEL S. DAVIS DISTRICT JUSTICE
MAGISTERIAL DISTRICT 20-3-01
P.O. BOX 381, ALEXANDRIA, PA 16611
MY COMMISSION EXPIRES JAN. 3, 2002

64

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY,                          :        CIVIL NO. 1:CV-00-0649

    **Plaintiff**                         :

    v.                                  :

PENNSYLVANIA BOARD OF                   :
PROBATION AND PAROLE et al.,            :

    **Defendant**                        :
                                        :

FILED
HARRISBURG, PA

AUG 1 0 2000

MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

## O R D E R

    On June 27, 2000 Plaintiff filed a response to Defendant Caldwell's motion to dismiss seeking to strike Caldwell's motion for failure to comply with Local Rule 7.1's requirement that moving parties seek concurrence before filing motions.  Although Local Rule 7.1 addresses only pro se *prisoners*, and Plaintiff is not a prisoner, it is this court's policy not to require concurrence to be sought of *any* pro se parties.  Accordingly, **IT IS HEREBY ORDERED THAT**

    (1) Plaintiff's motion to strike (Doc. 7.) is **DENIED.**


                        SYLVIA H. RAMBO
                        United States District Judge


Dated: August  *10* , 2000.