IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY

   Plaintiff

   v.           No. 1:00-CV-00649

PENNSYLVANIA BOARD OF     Judge Rambo
PROBATION AND PAROLE, *et al.*,

               Magistrate Judge Smyser

   Defendants

BRIEF IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS BOARD, SMITH, ROBERTS, JOHNSON, THOMAS, ROY, RIDGE, WARD, BURKS, MENDELSOHN, JACOBS, MECHLING AND MORGAN

I. Statement of the Case

A. Identities of the Parties and Nature of the Action

Plaintiff is Gail Galloway, who was most recently confined in the State Correctional Institutions at Smithfield and Waynesburg as a consequence of a finding by the Board that he had violated his parole. The named defendants are: the Honorable William Caldwell, Judge, U.S. District Court; the Pennsylvania Board of Probation and Parole (the Board); Joseph Smith, Charles B. Giornesto, Daniel Roberts and George Johnson, four present or former employees of the Board; Arthur Thomas and K. Scott Roy, two attorneys for the Board; the Honorable Thomas Ridge,

Governor of the Commonwealth of Pennsylvania; the Honorable William Ward, the Chairman of the Board; Sharon Burks, the assistant to the Superintendent of the State Correctional Institution at Smithfield, Pennsylvania; Seth Mendelsohn, a deputy attorney general; Fred Jacobs, formerly a hearing examiner for the Board; Neil Mechling the Superintendent of the State Correctional Institution at Waynesburg, Pennsylvania and James Morgan, the Superintendent of the State Correctional Institution at Smithfield, Pennsylvania. The complaint seeks compensatory and punitive damages and an award of costs (including, curiously, attorney's fees).[1]

B. Procedural History

Galloway filed this action on April 10, 2000. Thereafter copies of the complaint, without summonses, were mailed to defendants Pennsylvania Board of Probation And Parole, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan who waived service. In spite of the fact no summonses were served with the complaint on any of these defendants, they filed a motion to dismiss on June 21, 2000. This brief is filed in support of that motion.

C. Statement of Facts

The complaint relates a series of events beginning on June 1, 1998, when Galloway's home was searched because of a tip that he possessed weapons in violation of the terms of his parole. Galloway then relates events in his life, including the parole revocation process, his habeas corpus petition he filed in Federal Court and his life in two of the Commonwealth's prisons.

---

[1] Defendants say "curiously" because plaintiff is proceeding *pro se*.

It appears that Galloway is presenting the following claims of constitutional violation by the eleven persons who file this brief: 1. a claim that the search of Galloway's home on June 1, 1998, by Smith violated his Fourth Amendment rights; 2. a claim that the procedures afforded him at the parole violation hearing violated his Fourteenth Amendment rights to due process; 3. a claim that the forfeiture proceedings violated his Fourteenth Amendment rights to due process; 4. a claim of inadequate medical care while confined at SCI-Smithfield violated his Eighth Amendment right to be free from cruel and unusual punishments; and 5. a claim that when he slipped and fell on a wet floor at SCI-Waynesburg it violated his Eighth Amendment right to be free from cruel and unusual punishments.

## II. Questions Presented

1.  Does the Eleventh Amendment bar this action for damages against the Board and officials and employees of the Commonwealth in their official capacities?

2.  Did the search of the room which plaintiff denies having a possessory interest in violate plaintiff's Fourth Amendment rights?

3.  Has plaintiff adequately pled his conspiracy claims?

4.  Should the Court dismiss the claims against Fred Jacobs, who conducted plaintiff's parole revocation hearing, as he enjoys quasi-judicial immunity for any decisions he rendered in that capacity?

5.  As plaintiff has not obtained a favorable decision concerning his challenge to the parole revocation proceedings is his claim under § 1983 cognizable?

ARGUMENT

I. THE BOARD, AND OFFICIALS AND EMPLOYEES OF THE COMMONWEALTH ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.[2]

The Eleventh Amendment to the Constitution exemplifies a broad rule of state sovereign immunity. As the Supreme Court has explained, that rule "has two parts: first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996), *quoting Hans v. Louisiana*, 134 U.S. 1, 13 (1890). For over a century the Court has "reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe*, 517 U.S. at 54, *quoting Hans*, 134 U.S. at 15. A federal suit against an unconsenting State or its alter ego is barred regardless of the relief sought. *Seminole Tribe*, 517 U.S. at 58 ("we have often made it clear that the relief sought by a plaintiff ... is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

As an agency of the Commonwealth government, the Board and its employees and officials partake of Pennsylvania's Eleventh Amendment immunity. *See* Pa. Stat. Ann., tit. 71 § 61 (Purdon

---

[2] When deciding a motion to dismiss for failure to state a cognizable claim, the Court must accept plaintiff's factual claims and draw from them all reasonable inferences favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3$^d$ Cir. 1984); *Truhe v. Rapell*, 641 F.Supp. 57 (M.D. Pa. 1985). Therefore, the Court should not dismiss a complaint for failure to state a claim unless it is convinced beyond reasonable doubt that the plaintiff can prove no set of facts to support a claim which would permit recovery. *Conley, Supra*; *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 887, 891 (W.D. Pa. 1985)(*citing, Columbia Picture Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3$^d$ Cir. 1984)).

1990) (establishing the Department of Corrections as part of the executive department of the Commonwealth). The Eleventh Amendment bars this lawsuit, *unless* Pennsylvania has lost its immunity.

That immunity can be lost in only two ways: 1) if the Commonwealth itself waives it, or 2) if Congress, pursuant to a valid exercise of power, abrogates it. *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 119 S.Ct. 2219, 2223 (1999). In this case, there is no question of waiver — Pennsylvania by statute has expressly declined to waive its Eleventh Amendment immunity, *see* Pa. Stat. Ann., tit. 42 § 8521(b) (Purdon 1998). Nor has Congress abrogated that immunity in civil rights cases filed under Section 1983. *Pennhurst State School and Hospital v. Halderman*, 456 U.S. 89, 99-100 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978). Furthermore, neither a state nor its officials acting in their official capacities are "persons" under §1983. *Will v. Michigan*, 491 U.S. 58 (1989). Accordingly, Galloway's damages action against the Board and the other moving defendants in their official capacities is barred.

II. THE SEARCH OF THE ROOM WHICH PLAINTIFF DENIES HAVING A POSSESSORY INTEREST IN DID NOT VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHTS.

While the Fourth Amendment generally proscribes searches conducted outside the judicial process, there are exceptions when "special needs, beyond the normal need for law enforcement," make the judicial probable cause requirement impracticable or unnecessary. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (search of probationer's home); *New York v. Burger*, 482 U.S. 691, 699-703 (1987) (search of premises of highly regulated business); *O'Connor v. Ortega*, 480 U.S. 709, 721-25 (1987) (work-related search of employees' desks); *New Jersey v. T.L.O.*, 469 U.S. 325, 337-42 (1985) (search of student's property by school officials); *Hudson v. Palmer*, 468 U.S.

517, 525-26 (1984) (search of prisoner's cell); *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979) (body cavity search of inmates).

The exceptions to the Fourth Amendment's probable cause requirement turn on whether a person has a "constitutionally protected reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). This requires a two-part inquiry: whether the individual has manifested a subjective expectation of privacy in the object of the challenged search, and whether society is willing to recognize that expectation as reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

Regardless of Galloway's subjective privacy expectation, it cannot be said that society is willing to recognize it as reasonable. In exchange for early release from prison into the community, a parolee such as Galloway agreed to abide by certain conditions of parole, a violation of which permits society, through its governmental representatives, to reincarcerate the violator. There is, of course, no requirement that a parolee accept the parole conditions; he is free to reject parole and serve out his prison term.

Conditions accepted by Galloway in this case included his agreement not to possess any weapons and his written consent to a search of his person, property and residence without a warrant by agents of the Board. These are no different than conditions requiring a parolee to submit to alcohol or drug treatment with its attendant drug testing, mental health treatment or other rehabilitative programming, all of which indicate diminished privacy expectations by the parolee over his conduct and his person. More importantly, they demonstrate that the community is unwilling to release offenders before the expiration of their term of incarceration unless certain conditions are met.

However, this action does not require the Court to determine whether the warrantless search of a parolee's home violated his diminished expectations of privacy. First, Galloway admits that he "would have no objection to a search of areas he had common authority over if it was based on a legitimate reasonable suspicion ...." Complaint ¶ B.12. While Galloway now argues that the information given Smith was not true, he does not reasonably dispute that Smith believed the information that he had been given about Galloway's son attempting to purchase a weapon as a gift for Galloway. Second, if we believe Galloway's claims, the privacy rights he is asserting are those of his son's and not his. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("The Amendment protects persons against unreasonable searches of "their persons [and] houses' and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual."); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (The "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (*citing, Katz v. United States*, 389 U.S. 347, 351 (1967)). Galloway fails to assert that he had any expectation of privacy in the room of his son. Therefore the search of David's room can not be the basis for a claim by the father and his Fourth Amendment claim should be dismissed.

III.   PLAINTIFF FAILS TO ADEQUATELY PLEAD A CONSPIRACY CLAIM AND DEFENDANTS MAY NOT BE HELD LIABLE FOR THE ACTIONS OF OTHERS.

Galloway asserts as to each and every defendant that he or she conspired to violate his constitutional rights. For example, Roberts, whom Galloway identifies as the district supervisor of the Altoona office (Complaint, ¶ C) is alleged to have conspired (with whom exactly is unclear) to violate Galloway's constitutional rights by authorizing a warrantless search the room of Galloway's

-7-

son, David, and thereafter covering-up the allegedly illegal conduct (Complaint ¶¶C1-C6).[3] There is no allegation that Roberts was at the scene to make any decision as to whether to enter the room in which the guns were found. He fails to identify even one single overt act by Roberts that would support an inference that he was even aware Galloway was asserting that David's room was not part of Galloway's homestead. A plaintiff can not merely assert that a conspiracy exists without more. Rather he "must ... plead sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreements can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically." *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir.1985). "A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992). Any arguable decision by Roberts made about the search before Smith went to Galloway's house could be the consequence of independent decision-making and not part of a conspiracy. As the district court explained in *Loftus v. SEPTA*, 843 F.Supp. 981 (E.D. Pa. 1994):

> It has long been the rule in this circuit that a complaint alleging a conspiracy " 'must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading.' "*Rose v. Bartle*, 871 F.2d 331, 366 n. 60 (3d Cir.1989) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1223, at 181). Specifically: "The plaintiffs must plead with particularity the "circumstances" of the alleged wrongdoing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged

---

[3] Galloway does not allege Roberts was on the scene during the search. As Galloway is complaining only about the search of his son's room over which he disclaimed any interest its search could never form a basis for a claim his Fourth Amendment rights were violated. Therefore Roberts could only be liable for the allegedly unconstitutional search of the son's room if he were consulted once Smith was on the scene. Galloway does not allege he was.

> conspirators taken to achieve that purpose, will be deemed sufficient.... [A]n inference [of conspiracy] ... from the Complaint ... [is] no substitute for the requirement that the circumstances of the conspiracy be pleaded with specificity.

*Loftus*, 843 F.Supp. at 986-87 (footnote omitted) *(quoting, Rose*, 871 F.2d at 366 (which in turn quoted *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F.Supp. 1385, 1401 (D.Del.1984)); *accord, Dwares v. City of New York*, 985 F.2d 94, 99-100 (2$^d$ Cir.1993) ("We have, of course, repeatedly held that in order to state a claim of conspiracy under § 1983 the complaint must contain more than mere conclusory allegations. And while a plaintiff should not plead mere evidence, he should make an effort to provide some details of time and place and the alleged effect of the conspiracy. Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed: diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (internal citations and quotations omitted); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3$^d$ Cir.1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose.") (citing *Kalmanovitz* ). Stripped of their veneer, Galloway's assertions are merely unsupported conclusions of conspiracy that can not properly survive a motion to dismiss.

Similar to the claims against Roberts are the claims against Johnson, that he conspired to conduct a warrantless search of David's room (Complaint, ¶D.), against Thomas, that he conspired to cover up the allegedly improper search of David's room (Complaint, ¶G.), against Roy, that he conspired to cover up the allegedly improper search of David's room (Complaint, ¶H.), against Ridge, that he conspired with others when he failed to act on Galloway's claims of unconstitutional

-9-

conduct by others after the fact (Complaint, ¶I.2), against Ward, that he conspired to prolong the cover up(Complaint, ¶J.), and against Burks, that she conspired to cover up the denial of medical care after the fact (Complaint, ¶K).

Although Galloway couches his claims against these defendants as conspiring with others, is it obvious that he is actually naming them as defendants on the assumption that they should be held liable for the alleged conduct of subordinates. This is made clear when he alleges for example that Ward "shoulders the responsibility for the conduct and training of all parole agents"(Complaint at ¶J.3) or that Ridge "failed in his duties to secure and protect the Constitutional rights of the Plaintiff ...." Complaint at ¶I.5. Galloway has made similar claims as to the other moving defendants of responsibility for the conduct of others (e.g., Johnson "due to his position as parole supervisor" (Complaint at ¶D.4), Thomas and Roy "could have corrected the violations of law" (Complaint at ¶G.4. & ¶H.4.), Mechling "was negligent in his supervision and training of officers (Complaint at ¶M.9.) and Morgan "shoulders the responsibility of running the institution, training of the officers and staff" and "failed to see to the proper supervision of the mail room officers" (Complaint at ¶Q. & Q.3). Similarly, a close reading of Galloway's complaint reveals that he is alleging only that Burks was the recipient of after-the-fact complaints about his medical care. There is no basis for concluding she, a non-doctor, was involved in treating Galloway.

However, to state a claim under §1983, the defendant must have been personally involved in the allegedly wrongful conduct either by actual conduct or his knowledge of, and acquiescence in, the wrongful conduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-1208 (3$^d$ Cir. 1988). Every defendant against whom a suit is brought must be shown to have been involved in the complained of conduct. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d

1077 (3ᵈ Cir. 1976). Liability under Section 1983 cannot be premised on a theory of *respondeat superior* in any context. *Parratt v. Tailor*, 451 U.S. 527, 537 N.3 (1981); *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 263 (3ᵈ Cir. 1995); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3ᵈ Cir. 1988); *Hampton*, 546 F.2d at 1082. The threshold issue is whether a defendant participated in, or had actual knowledge of, and, having the power and duty to affect the course of others, acquiesced in, the conduct that caused the violation of plaintiff's federally protected rights. *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3ᵈ Cir. 1995); *Hampton*; *Goode v. Rizzo*, 506 F.2d 542, 550 (3ᵈ Cir. 1974), *rev'd on other grounds*, 423 U.S. 362 (1976); *Bracey v. Grenoble*, 494 F.2d 566, 571 (3ᵈ Cir. 1974). For example, Galloway only asserts that Roberts should be held liable because he "was responsible for the direct supervision of the parole agents ... and ... for their conduct and training. Complaint ¶C-2. As the Court of Appeals explained in *Chinchello v. Fenton*, 805 F.2d 126, 134 (3ᵈ Cir.1986), "[*Goode v.* ]*Rizzo*[, 506 F.2d 542 (3ᵈ Cir. 1974)] and its pre-March 1983 progeny in this Circuit demonstrate that there is no affirmative duty to train, supervise and discipline subordinates."[4]

Galloway's attempts to hold moving defendants liable simply for being the superior or supervisor must be rejected. *Egan v. Cocini*, 585 F.Supp. 801 (M.D. Pa. 1984). Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan are not alleged to have participated in

---

[4]The *Chinchello* court observed that other courts of appeal have been more willing to infer supervisory approval of unconstitutional conduct. However those courts have found that liability will vest only where the official has "'1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and 2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" *Id.*, 805 F.2d at 133.

any decision which Galloway believes violated his rights and they should be dismissed.

    IV.    FRED JACOBS, WHO CONDUCTED PLAINTIFF'S PAROLE REVOCATION HEARING AS A HEARING EXAMINER FOR THE BOARD OF PROBATION AND PAROLE, ENJOYS QUASI-JUDICIAL IMMUNITY FOR ANY DECISIONS HE RENDERED IN THAT CAPACITY.

Fred Jacobs, who conducted plaintiff's parole revocation hearing as a hearing examiner for the Board of Probation and Parole, enjoys quasi-judicial immunity for any decisions he rendered in that capacity. The Pennsylvania Board of Probation and Parole and its members are entitled to quasi-judicial immunity when they perform adjudicatory duties. *Thompson v. Burke*, 556 F.2d 233, 236-38 (3$^d$ Cir. 1977); *Harper v. Jeffries*, 808 F.2d 281, 284 (3$^d$ Cir. 1986). Decisions made by members of the Parole Board are adjudicatory when they affect the length of imprisonment and the time of parole. *Amendola v. Jacobs*, C.A. No. 90-5047 (1990 WL 124946 E.D. Pa.). Thus, hearing examiner Jacobs, who performed the adjudicatory function for the Board to revoke Galloway's parole, is immune from § 1983 suits for damages. *Id.* Accordingly, the Board and Jacobs are entitled to quasi-judicial immunity.

    V.    PLAINTIFF HAS NOT OBTAINED A FAVORABLE DECISION CONCERNING HIS CHALLENGE TO THE PAROLE REVOCATION PROCEEDINGS AND HIS CLAIMS UNDER § 1983 REGARDING THOSE PROCEEDINGS ARE NOT COGNIZABLE.

This is a § 1983 action in which Galloway seeks to recover monetary damages because he was determined to be a parole violator. It is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). In *Heck*, the plaintiff, a convicted prisoner, filed suit under 42 U.S.C. § 1983 against prosecutors of Dearborn County as well as an investigator employed by the Indiana State Police. His complaint alleged that the defendants had engaged in an unreasonable, unlawful, and arbitrary investigation; had knowingly destroyed exculpatory evidence; and had caused an unlawful voice

-12-

identification procedure. The plaintiff sought, *inter alia*, compensatory and punitive damages.

The United States Supreme Court concluded plaintiff had no cognizable claim under § 1983. In refusing to recognize any cause of action, the Court expressed its unwillingness to permit a suit for the recovery of damages which would call into question the validity of the plaintiff's underlying conviction or sentence. Unless the plaintiff could first demonstrate that his conviction had previously been invalidated, the Court declared that his § 1983 action would be barred.

More recently, in *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584 (1997), the United States Supreme Court extended its holding in *Heck* to prison disciplinary hearings which resulted in the loss of good-time credits. In *Edwards*, the plaintiff was found guilty of committing prison infractions and was sanctioned to the loss of 30 days' good-time credit which he had previously earned toward his release. He then filed suit under 42 U.S.C. § 1983 contending that the procedures used at his disciplinary hearing violated his Fourteenth Amendment due process rights.

Relying on *Heck*, the Court in *Edwards* held that the plaintiff's claim under § 1983 was not cognizable since a judgment in his favor would necessarily imply the invalidity of the prison disciplinary decision and the punishment which had been imposed.

The same principal is true of parole proceedings. In *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), the Ninth Circuit examined a suit for damages under § 1983 brought by a Washington state inmate that raised the claim that his right to due process was violated by the denial of parole based upon allegedly false information contained in his parole file. The court treated the issue in the following terms:

> "We have no difficultly in concluding that a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's

-13-

>continuing confinement... Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits. Appellant's civil claim for damages amounts to a collateral attack on his denial of parole and subsequent incarceration. *Heck* does not permit this."

*Id.* at 1024.

Other circuits which have considered this question have also concluded that § 1983 suits calling into question parole board decisions are not cognizable unless and until those decisions have been invalidated or overturned. *Ali v. Hubbard*, 1997 WL 556293 (1st Cir. 1997); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *Miller v. Indiana Department of Corrections*, 75 F.3d 330 (7th Cir. 1996); *McGrew v. Texas Bd. of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *Schafer v. Moore*, 46 F.3d 43 (8th Cir. 1995).

Because Galloway's complaint essentially challenges the validity of his parole revocation for allegedly unconstitutional reasons, it runs afoul of *Heck* and is, therefore, barred. Unless Galloway is first able to show that the Parole Board's decision has been invalidated or overturned, he has no cognizable claim under § 1983 for the decisions rendered in administrative and judicial proceedings (such as the forfeiture action) or the testimony given in those proceedings.

CONCLUSION

Wherefore, the Court should dismiss the Pennsylvania Board of Probation and Parole, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan as defendants.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: *Francis R. Filipi*
FRANCIS R. FILIPI
Senior Deputy Attorney General
Attorney ID# 18630

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Counsel for Defendants Pennsylvania Board of Probation and Parole, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan

OFFICE OF ATTORNEY GENERAL
Litigation Section
15th Floor, Strawberry Square
Harrisburg PA 17120
E-Mail: ffilipi@attorneygeneral.gov
Direct Dial: (717) 787-3874
FAX: (717) 772-4526

DATE: July 10, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY       :
    Plaintiff       :
               :
  v.       :       No. 1:00-CV-00649
               :
PENNSYLVANIA BOARD OF       :       Judge Rambo
  PROBATION AND PAROLE, *et al.*,       :       Magistrate Judge Smyser
    Defendants       :

## CERTIFICATE OF SERVICE

I, FRANCIS R. FILIPI, Senior Deputy Attorney General, hereby certify that on this date I caused to be served copies of the foregoing Brief in Support of Motion to Dismiss Filed on Behalf of Defendants Board, Smith, Roberts, Johnson, Thomas, Roy, Ridge, Ward, Burks, Mendelsohn, Jacobs, Mechling and Morgan, by depositing a copy in the United States Mail, postage prepaid, first class, in Harrisburg, PA, addressed to each of the following:

Gail Galloway
R.D. #1, Box 30
Petersburg, PA 16669

Plaintiff

Peter McManamon, Esq.
200 Penn Street
P.O. Box 383
Huntingdon PA 16652

Counsel for District Attorney Robert B. Stewart, III

Anne K. Fiorenza, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
228 Walnut Street, Suite 217
Harrisburg, PA 17108

Counsel for Hon. William Caldwell

Charles B. Giornesto
11393 Raystown Rd.
Saxton, PA 16678-8054

Defendant

*Francis R. Filipi*
FRANCIS R. FILIPI
Senior Deputy Attorney General

DATED: July 10, 2000