

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAIL GALLOWAY,<br>    Plaintiff | : | No. 1:00-CV-00649 |
| v. | : | (Judge Rambo) |
| PENNSYLVANIA BOARD OF<br>PROBATION AND PAROLE,<br>*et al.*,<br>    Defendants | : | |

FILED
HARRISBURG, PA

JUL 2 0 2000

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

## PLAINTIFF'S RESPONSE TO "BRIEF IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS BOARD, SMITH, ROBERTS, JOHNSON, THOMAS, ROY, RIDGE, WARD, BURKS, MENDELSOHN, JACOBS, MECHLING, AND MORGAN

Gail Galloway, ("Plaintiff"), is suing each defendant in their individual capacity and official capacity for violations of Plaintiff's Constitutional rights under color of law. The defendants were acting under color of law because they were cloaked by their official jobs which allowed them to abuse their authority and position to violate Plaintiff's Constitutional rights. The defendants are not entitled to immunity when performing government functions when that official's conduct violated clearly established Statutory and Constitutional rights of which any reasonable person would have known.

When deciding a motion to dismiss for failure to state a cognizable claim, the Court must accept plaintiff's factual claims and draw from them all reasonable inferences favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). Therefore, the Court should not dismiss a complaint for failure to state a claim unless it is convinced beyond a reasonable doubt

that the plaintiff can prove no set of facts to support a claim which would permit recovery. *Conley, supra; Columbia Pictures Industries, Inc. v. Redd Horne, Inc.,* 749 F.2d 154, 161 (3rd Cir. 1984). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is **'a short and plain statement of the claim'** that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957) emphasis added. Federal Rules of Civil Procedure, Rule 8 (a)(2).

Plaintiff responds to defendants in their numbered format.

### ARGUMENT

I.   The named defendants are not immune when their conduct violates clearly established Statutory and Constitutional rights of which a reasonable person would have been aware. The specific language of 42 U.S.C. 1983 "creates a species of tort liability that on its face admits of no immunities." *Imler v. Pachtman,* 424 U.S. 409, 417. Its language is absolute and unqualified, and no mention is made of any privileges, immunities, or defenses that may be asserted. *Owen v, City of Independence,* 445 U.S. 622 (1980).

*Martinez v. California,* 444 U.S. 277 (1980) held that a State cannot immunize an official from liability for injuries compensable under federal law and conduct of persons acting under color of state law which is wrongful under 42 U.S.C. 1983.

Title 42 U.S.C. 1983 provides in relevant part:

2

"Every person who, under color of law of any statute, ordinance, regulation, custom, or usage, of any state..., subjects, or causes to be subjected, any citizen of the United States or person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The suit is being brought against state officers in their individual capacity because they acted under color of law in their official capacity and is not a suit against the state itself.

The Eleventh Amendment very specifically states:

**"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the States of the United States by citizens of another State. or by citizens or subjects of any Foreign State."**

The Amendment by its own terms does not bar suits against a state by its own citizens and any ruling which goes against the clear and concise wording of the Constitutional Amendment would be rendered unconstitutional. The clear reading of the language of the Constitution is affirmed in *South Carolina v. United States,* 199 U.S. 437, 448 and states:

**"The Constitution is a written instrument. As such, its meaning does not alter. That which it meant when it was adopted, it means now."** emphasis added.

The Eleventh Amendment means exactly what it says and repeated misinterpretation of the clear and unambiguous language does not render the true language void or make the misinterpretation the law of the land. Further, no court has the power to change the wording of a law or Constitutional Amendment. Therefore, the defendants may not invoke the Eleventh Amendment, since that Amendment bars only federal court suits against states by citizens of other states. A cause of action is clearly provided by

3

42 U.S.C. 1983, which in terms authorizes suits to redress deprivation of rights secured by the laws of the United States. *Boyd v U.S.*, 116 U.S. 28 asserts that the Court has a duty to protect against any encroachment of a Constitutionally secured liberty; and *Byars v. U.S.*, 273 U.S. 28 asserts that rights must be interpreted in favor of the citizen.

The infringement upon Plaintiff's liberty interests was a violation of the Fourth and Fourteenth Amendments which are well established rights. Plaintiff was subjected to an illegal and unconstitutional search which resulted in Plaintiff being forced under color of law to commit a criminal act of burglary by defendant Joseph Smith, ("Smith"), to forcibly enter, without warrant, the private locked residence of a law abiding private adult citizen, illegally seize that persons property from a locked cabinet located inside his closed closet and then use the illegally seized property as evidence to establish a bogus parole violation and incarcerate Plaintiff with loss of liberty for 15 1/2 months, with almost 5 months being spent in the Hole in solitary confinement when Plaintiff had done nothing wrong. "Due process protections apply when government action deprives a person of a liberty or property interest." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "The substantive aspect of the due process clause bars certain arbitrary, wrongful government actions regardless of the fairness of the procedure used to implement them." *Daniels v. Williams*, 474 U.S. 327 (1996). The "Procedural aspect of the due process clause guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property." *Zinerman v. Burch*, 494 U.S. 113 (1990). **"When an official acts in behalf of the state and acts are illegal or unconstitutional, they are not entitled to the states immunity."** *Hafer v. Melo*, 502 U.S. 21 (1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 234 (1974)). "The

4

threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue." *Com. v. Mountain*, 711 A.2d 473. Plaintiff had a definite liberty interest at issue.

A State official seeking to enforce in the name of a State an unconstitutional act "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. 123, 159-160. "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946).

The defendants are liable to Plaintiff because they acted under color of state law and acted in bad faith with malicious purpose and a manner exhibiting a wanton and willful disregard of Plaintiff's rights, liberty, safety, or property.2

The defendant Pennsylvania Board of Probation and Parole, ("PBPP") is being sued as an entity which constitutes an enterprise within the civil RICO Statutes.

"Tort defendants, including those sued under Section 1983 are 'responsible for the natural consequences of [their] actions." *Malley v. Briggs*, 475 U.S. 335.

II.  The illegal and unconstitutional search and seizure was a direct result of a conspiracy between the defendants which began with the known false report of parole agent Giornesto which the other defendants knew was not true and culminated with the

5

conspiracy of the defendant to cover-up the illegal and unconstitutional search and seizure by filing false reports, perjury, and other violations of statutory law and the Constitutional rights of the Plaintiff.

Defendant Giornesto violated the law by filing a known false report. The conspiracy among defendants Smith, Johnson, and Roberts to conduct a warrantless search took root. Plaintiff had been on parole for almost four (4) years without incident, was employed in the same job since being paroled, and was not committing any violation of his parole.

Defendant Smith did not have a search warrant or probable cause or even reasonable suspicion that Plaintiff had violated his parole outside of the conspiracy and known false report. "Constitutional rights of parolee are indistinguishable from those of probationer. Probationer's home, like anyone else's is protected by the Fourth Amendment's requirement that searches be reasonable." *Com. v. Williams*, 629 A.2d 1031, 547 Pa 577 (1997).

In confirming Plaintiff's rights, the Pennsylvania Supreme Court states:

> "Overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the state; security afforded to personal privacy against arbitrary intrusion by the police is the core of the Fourth Amendment and basic to free society. U.S.C.A. Const Amend. 4." and "Search and seizure <u>is not reasonable</u> unless it is conducted pursuant to a search warrant issued by a magistrate upon probable cause, <u>which exists when officer has knowledge of sufficient facts and circumstances gained through trustworthy information</u> to warrant prudent man to believe that the person seized has committed a crime. Const. Art. 1 ss 8." *Com. v. Kohl*, 615 A.2d 308 (Pa 1992) emphasis added.

The entire pretext of coming to Plaintiff's residence was not probable cause and not reasonable suspicion, but, rather, based solely on the known false report which was

the basis of the conspiracy. When defendant Smith entered Plaintiff's home on June 1, 1998, he found no evidence of a parole violation in Plaintiff's living quarters or areas of common authority, that is where the reasonableness of the search ended.

When defendant Smith ordered Plaintiff to get the locked door open to Plaintiff's adult son's room and displayed a gun in a coercive manner, defendant Smith exceed his authority and entered a realm that required a search warrant based on probable cause. Defendant Smith far exceeded reasonableness and his authority when he forced Plaintiff through coercive tactics and potential threat on Plaintiff's life to get the locked door open to David Galloway's, ("David") room. Plaintiff had asked defendant Smith a total of six (6) times to call David at work to come home if Smith wanted in his private residence and Smith refused each request. David is a law abiding private adult citizen and maintains a private residence in the home where Plaintiff lives with his wife and grandson.

The defendants admit that Plaintiff has a subjective expectation of privacy and defendant Smith by forcing Plaintiff to become a party to the criminal act of burglary in the forced entry of David's locked room far exceeded his authority and violated every concept of parole supervision.

The defendants also state "conditions accepted by Galloway in this case included his agreement not to possess any weapons and his written consent to a search of his person, property and residence without warrant by agents of the Board." However, Plaintiff <u>did not</u> and <u>cannot</u> sign away the Constitutional rights of another person to have his property searched without warrant. "An individual's effects and possessions are Constitutionally protected from unreasonable search and seizure as well as his person

7

and such protection does not depend on the physical presence or physical absence of the individual owner. P.S. Const. Art. 1, ss 8." *Com. v. DeJohn*, 403 A.2d 1283. "Expectation of privacy is present when an individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that...subjective expectation is one that society is prepared to recognize as reasonable." *Com. v. Oglialoro*, 525 Pa 250, 579 A.2d 1288 (1990). *Com. v. Rathfon*, 705 A.2d 448 (Pa Super 1997). "To have reasonable expectation of privacy protectable by Fourth Amendment, one must intend to exclude others and must exhibit that intent." *Rathfon* at 451. "Absent exigent circumstances, <u>police may not search residence without warrant</u>." *Rathfon* at 451, emphasis added. "Generally, residential settings are areas which are given greatest protection by Fourth Amendment." *Rathfon* at 451. Without question, defendant Smith and defendant Brown had no Constitutional right, no power and no authority to be a party to a warrantless search and seizure and the instigation of a criminal act of breaking into David's locked residential dwelling. "Upon closing the door to one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Com. v. Alexander*, 708 A.2d 1251, 1256 n 14 (Pa 1998).

Pennsylvania Statute 61 P.S. ss 331.27 a (b) which governs parole agents states:

**"Nothing in this Section shall be construed to permit searches and seizures in violation of the Constitution of the United States or Section 8 of Article 1 of the Constitution of Pennsylvania."**

The Pennsylvania Supreme Court has addressed this Statute and determined that parole agents have no authority over private citizens who are not under their supervision. Pennsylvania Supreme Court Justice Papadakos wrote a separate

8

concurring and clarifying opinion:

"Consistent with my reading of 61 P.S. s 331.27, I can agree that **the parole officers were not vested with police powers over Robert Edwards since it does not appear that he was a probationer or parolee and that therefore, they were not entitled to seize** his welfare card, insurance card, or business card." *Com. v. Pickron,* 535 Pa 241, 251, 634 A.2d 1093, 1098.

In the instant case, the defendants considered themselves above the law and Constitutional rights of a private citizen they had no authority over and above the Pennsylvania Supreme Court's affirmation of the clear language of the Statute.

The warrantless search of a private law abiding citizen's locked residential dwelling to find evidence to fabricate a case against another person for a technical parole violation is something that society is not willing to recognize as reasonable.

The items seized from a private citizen following the forced entry into his residential dwelling cannot be used as evidence of a technical parole violation when Plaintiff had no knowledge of what was there and no authority or control over what was seized in the illegal warrantless search. Conditions parallel to Plaintiff's are shown in the case of *Keith Scott v. Pennsylvania Board of Probation and Parole,* No. 3093 CD 1994 on remand to the Commonwealth Court and final decision filed October 27, 1999. Keith Scott, ("Scott"), was on parole and living in his parents house. Without probable cause or reasonable suspicion, parole agents conducted a warrantless search of Scott's living quarters and found no evidence of a parole violation. Then the agents continued the warrantless search into Scott's mother's sitting room, which was open to the rest of the house, and found several rifles under the sofa that belonged to his stepfather. Scott was arrested and charged with a technical parole violation and incarcerated. The warrantless search was subsequently ruled unconstitutional and on October 27, 1999, on

remand to the Commonwealth Court, the PBPP finally conceded that its revocation of parole was not supported by substantial evidence. This was after the PBPP had fought Scott for 5 years and kept him in prison illegally. In No. 66 M.D. Appeal Docket 1996, Decided July 3, 1997 in the Supreme Court of Pennsylvania, the Court determined that **Scott had protection under the Fourth Amendment.** This court also stated: "Thus, the agents suspicion was based on mere speculation and insufficient to support a warrantless search of the room adjacent to appellee's bedroom.

The court in *Com. v. Katz*, 452 Pa 102, 305 A.2d 701 (1973) also stated that it "Applies the exclusionary rule in revocation hearings when the officer engaged in the misconduct is aware of parolees status."

In the instant case there was not even mere speculation, but only the known false report based on the conspiracy of the defendants. Based solely on the known false report, which was contrived as part of the conspiracy to circumvent the law, defendant Smith came to Plaintiff's residence and caused the criminal act of breaking into a private citizen's residence in violation of the well established Fourth and Fourteenth Amendments and seized private property to use as evidence of a technical parole violation. Defendant Smith, aside from the conspiracy with the other defendants, had **no** reasonable suspicion to believe Plaintiff had violated any condition of his parole and Smith admitted that he had seized David's property to see if any of it was stolen which made him acting as a "Stalking horse" for police. "It is a matter of federal law and state law that parole and probation agents cannot act like 'stalking horses' for the police." *Com. v. Pickron*, 535 Pa 241, 247, 634 A.2d 1093, 1096. "It is only if the

parole officer 'changed hat' and became stalking horses for the police that society's interest in the rehabilitation of a parolee is superseded by the parolee's privacy interests. **If and when that occurred, the subsequent search of the parolee's apartment without a search warrant was a violation of the parolee's Fourth Amendment rights."** *Com. v. Edwards*, 583 A.2d 445 emphasis added. Defendant Smith admitted to being a <u>stalking horse</u> for the police and abandoned his duties as an administrator for the parole system and became a police officer conducting a warrantless search upon the locked residence of a private citizen he had no authority over in hope of finding evidence of a crime, which he did not, and the search became exploratory in nature. "General exploratory searches **cannot** be undertaken by officers with or without a warrant." *U.S. v. Rabinowitz*, 70 S. Ct. 430 (1950) emphasis added. "However, a parole search **may not** be used as a 'subterfuge for a criminal investigation.'" *Com. v. Edwards,* 583 A.2d 445 (Pa Super 1990) emphasis added.

Therefore, Plaintiff had standing and an expectation of privacy covered by the Fourth Amendment and defendants argument should be denied.

III. The defendants in "II" contend that Plaintiff "Does not reasonably dispute that Smith believed the information that he had been given about Galloway's son attempting to purchase a weapon as a gift for Galloway." However Plaintiff does contend that a conspiracy existed between Smith and the other defendants to deprive Plaintiff of his Constitutional rights and did so by the wrongful arrest and incarceration of Plaintiff for 15 1/2 months.

"At the pleading stage in civil rights cases, however, the Plaintiff's access to specific facts surrounding the defendants conduct is often severely limited. In addition,

11

conspiracy by its very nature is secretive. Thus, in view of Fed. R. Civ. P. 8 (f), the court will liberally construe the allegations of the complaint concerning combinations of the conspirators. The Third Circuit in Ammlung v. City of Chester, supra, takes the position that the combination element of conspiracy is pleaded with sufficient specificity if the complaint **merely alleges** that the defendant's 'conspired' or were involved in an agreement or combination." *Vasquez v. Ferre*, 404 F. Supp. 815, 822 (1975) emphasis added. Therefore, Plaintiff should be allowed to develop the facts surrounding the conspiracy in discovery.

The defendants had guilty knowledge of the wrong done to Plaintiff, but would not admit to the wrong which caused the conspiracy to cover-up their illegal and unconstitutional actions.

Defendant's Mendelsohn and Robert Stewart have conspired in a forfeiture action against David's private property in which they want to forfeit David's property to the state so it can be sold to pay restitution they say Plaintiff owes. It is unconstitutional for the state to illegally take the private property of an innocent person and sell it to pay a debt another person owes and said debt has nothing to do with the innocent person.

Since it is impossible to plead more specifically as to the conspiracy, Plaintiff needs full discovery to put his case of conspiracy together with specific facts and details.

IV.    Defendant Jacobs is not immune for his actions in furtherance of the conspiracy to cover-up for the other defendants and is an intricate party to the instant suit. The defendants are not immune when their conduct violates clearly established

12

statutory or Constitutional rights of which a reasonable person would have known. Plaintiff needs full discovery to tie the conspiracy to cover-up the unconstitutional conduct of the other defendants together. Plaintiff was also denied due process of law by defendant Jacobs as part of the conspiracy and Plaintiff was denied a fair hearing before a fair and impartial tribunal. Employees working for the PBPP have a self serving agenda and interest in the outcome of the proceeding and are biased and prejudiced which lays the ground work for a conspiracy to cover-up any wrongdoing by their agents or employees. "One element of due process is the chance to defend oneself before a fair and impartial tribunal." *Callahan v. Mid Valley School Dist.*, 720 A.2d 815 (Pa Cmwlth 1998). It is obvious that throughout the entire process of the technical parole violation Plaintiff has been prejudiced by the manufactured charge based on the lies and known false reports of parole officials, followed by the deliberate filing of known false documents and perjury to cover-up their illegal conduct. Plaintiff has, therefore, been continually prejudiced and denied due process of law and has not had "an adequate opportunity in the state proceedings to raise constitutional challenges" *Freger v. Thomas*, 74 F.3d 740, 745 (9th Cir. 1996) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Further, they will commit overbroad abuses to protect their own self serving interests and then claim immunity. Would a person be able to get justice if he bought a used car that was junk and the entire used car industry was regulated and policed by an association of used car dealers. Plaintiff thinks not. The same applies to self regulating agencies who will not admit to error or mistakes and are will to do "whatever it takes" to cover-up their illegal or unconstitutional acts. Such power places them above the law as the Constitution

was meant when written. Plaintiff has been denied due process of law through the illegal and unconstitutional conspiratorial conduct of the defendants and then regulating and ruling on their own actions. Quasi-judicial immunity only protects quasi-judicial acts. A civil conspiracy to cover-up the unconstitutional acts of associates in the same organization is not a judicial act when the conspiracy to cover-up was done with malice toward Plaintiff and therefore does not allow Jacobs to claim quasi-judicial immunity. No immunity is expressly provided for in an action brought pursuant to Section 1983.

      V.      The fundamental flaw in applying *Heck v. Humphrey*, 512 U.S. 477 (1994) is that it does not apply in the instant action. It would be an affectation of legal research to cite a plethora of cases and the many treatises on the law of torts to confirm that the tort of false imprisonment is the unlawful detention or confinement of the Plaintiff intentionally caused by the defendants. False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment. It is also generally required that the Plaintiff be conscious of his detention or confinement. The interest sought to be protected by this tort is the interest each of us has to remain free from restraint of movement and is actionable under common law and the Fourth Amendment where the unlawful detention or confinement is intentionally caused regardless of whether a criminal prosecution is instituted thereafter.

      *Heck* holds that a damages claim that "necessarily demonstrates the invalidity of a conviction" may not be brought while the conviction stands. 512 U.S. at 481-82. A

14

claim for damages based upon a false arrest does not necessarily impugn the validity of a conviction should a prosecution be instituted. That this is so becomes clear by the considering the following illustrations. Assume, for example, an arrest is made and no statement is taken or evidence seized incident to it. A common law action for false arrest or an action pursuant to ss 1983 is thereafter commenced and a verdict rendered in favor of the plaintiff. An indictment is, however, thereafter duly obtained and the plaintiff is convicted. The validity of the conviction is not at all impugned by the result of the action for false arrest. In *Gonzales v. Entress*, 133 F.3d 551 (7th Cir. 1998) Judge Esterbrook stated it thus at 553: **"Wrongful invasions of property are actionable...under state law and the Fourth Amendment, no matter what happens to the criminal prosecution.** Suppose a person says something like 'I was arrested without probable cause and spent a night in jail until my wife came up with bail money.' That injury is compensable whether or not the person is later convicted - indeed, whether or not he is later prosecuted. **The rationale of cases such as *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980), and *Haring v. Prosise*, 462 U.S. 306, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983), which hold that a criminal prosecution does not bar civil search and seizure claims under principles of preclusion ( collateral estoppel or res judicata) is that a search can be unlawful but the conviction entirely proper, or the reverse, and that some injury from a violation of the Fourth Amendment is unrelated to conviction."** emphasis added.

Assume further, that evidence was seized or a statement taken incident to the unlawful arrest. The **false arrest or ss 1983 claim is immediately actionable** even if the prosecutor never tries to use the evidence or statement at trial. **And even if the**

15

**evidence or statement is used at trial, the validity of the subsequent conviction would not necessarily be impugned by a verdict returned in favor of the plaintiff in the civil action.** The Court recognized that in *Heck* when it wrote at 487, n.7 as follows: ". . .a suit for damages attributable to an alleged unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the ss 1983 plaintiff's still outstanding conviction. Because of doctrines like independent source and inevitable discovery,...and especially harmless error... such a ss 1983 action, even if successful, **would not necessarily imply that the plaintiff's conviction was unlawful."** emphasis added. See also, *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996), cert. denied. U.S., 117 S. Ct. 952 (1997) holding that a ss 1983 unlawful arrest claim accrued on the day of arrest because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction."; *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) "It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."; *Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) **"The point is that it is possible for an individual to be properly convicted though he is unlawfully arrested, or his home unlawfully searched. The remedy for those constitutional violations is a civil action under ss 1983 for money damages."** emphasis added. Therefore, Plaintiff should be allowed to continue his suit for the illegal conduct and Constitutional violations perpetrated upon Plaintiff by the defendants.

## CONCLUSION

Wherefore, the Court should deny the motion to dismiss filed by the Pennsylvania

Board of Probation and Parole, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan and permit Plaintiff to commence discovery to obtain facts and details to support his suit.

Respectfully submitted,

Gail Galloway
R.D.#1, Box 30
Petersburg, Pa 16669
814-669-9164

Date: July 18, 2000

## CERTIFICATE OF SERVICE

      I certify that I have this day served a true and correct copy of the foregoing document upon the persons named below by First Class United States Mail at the address stated, which is the last known address of each.

Peter McManamon
200 Penn Street
Huntingdon, PA 16652

Francis Filipi
Office of the Attorney General
15th Floor, Strawberry Sq.
Harrisburg, PA 17120

Anne Fiorenza
Assistant United States Attorney
Federal Building
P.O. Box 11754
228 Walnut Street
Harrisburg, PA 17108-1754

Charles Giornesto
11393 Raystown Rd
Saxton, PA 16678-8054

*Gail Galloway*
Gail Galloway
R.D.#1, Box 30
Petersburg, PA 16669
(814) 669-9164

Date: July 18, 2000