

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL GALLOWAY | : |
| Plaintiff | : |
| v. | : No. 1:00-CV-00649 |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, *et al.*, | : Judge Rambo |
| | : Magistrate Judge Smyser |
| Defendants | : |

BRIEF IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DEFENDANT CHARLES B. GIORNESTO

I. Statement of the Case

A. Identities of the Parties and Nature of the Action

Plaintiff is Gail Galloway, who was most recently confined in the State Correctional Institutions at Smithfield and Waynesburg as a consequence of a finding by the Board that he had violated his parole. The named defendants are: the Honorable William Caldwell, Judge, U.S. District Court; the Pennsylvania Board of Probation and Parole (the Board); Joseph Smith, Charles B. Giornesto, the moving defendant, Daniel Roberts and George Johnson, four present or former employees of the Board; Arthur Thomas and K. Scott Roy, two attorneys for the Board;

the Honorable Thomas Ridge, Governor of the Commonwealth of Pennsylvania; the Honorable William Ward, the Chairman of the Board; Sharon Burks, the assistant to the Superintendent of the State Correctional Institution at Smithfield, Pennsylvania; Seth Mendelsohn, a deputy attorney general; Fred Jacobs, formerly a hearing examiner for the Board; Neil Mechling the Superintendent of the State Correctional Institution at Waynesburg, Pennsylvania and James Morgan, the Superintendent of the State Correctional Institution at Smithfield, Pennsylvania. The *pro se* complaint seeks compensatory and punitive damages and costs.

B. Procedural History

Galloway filed this action on April 10, 2000. Some time thereafter at a date unknown to counsel, at least a copy of the complaint, possibly without a summons, was personally served on Charles B. Giornesto by a constable.[1] On July 24, 2000, defendant Giornesto filed a motion to dismiss. This brief is filed in support of that motion.

C. Statement of Relevant Facts

The complaint relates a series of events that began on June 1, 1998, when Galloway's home was searched. The search was undertaken because of a tip supplied by defendant Giornesto that Galloway's son, David, had been attempting to purchase a 50 caliber weapon for Galloway for his birthday.[2] Galloway then relates events in his life, including the parole

---

[1] Although Giornesto's counsel stated in his July 24, 2000, motion to enlarge that "copies of the complaint and summons together waiver of service forms to all other defendants," this was not accurate. The copies of the complaint sent to the other defendants did not have a summons attached. It is unknown whether the copy served on defendant Giornesto had a summons attached.

[2] Understandably, this was a concern for the Board as Galloway, a convicted felon is not permitted to possess firearms. If Galloway possessed weapons it would be violation of the terms

-2-

revocation process, his habeas corpus petition he filed in Federal Court and his life in two of the Commonwealth's prisons.

Galloway contends that Giornesto fabricated this tip "to get possession of a valuable collection of antique, military and collectable firearms owned by ... David." Complaint at ¶E (p. 31). Galloway asserts that this supposedly fabricated tip resulted in Galloway's loss of a "protected liberty interest and basic Constitutional rights and caused irreparable harm to Plaintiff's business." *Id*. There are no other claims of violation of federally protected rights attributable to this defendant.

## II. Questions Presented

1. Does the Eleventh Amendment bar this action for damages against an employee of the Commonwealth in his official capacity?

2. Does the search of the room or the confiscation of the guns, in neither of which does plaintiff assert having a possessory interest, violate plaintiff's Fourth Amendment rights?

3. As plaintiff has not obtained a favorable decision concerning his challenge to the parole revocation proceedings is his due process claim cognizable?

## ARGUMENT

I. AS THE BOARD, ITS OFFICIALS AND EMPLOYEES RE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT THE CLAIM FOR MONEY DAMAGES FILED AGAINST GIORNESTO IN HIS OFFICIAL CAPACITY MUST BE DISMISSED.

The Eleventh Amendment to the Constitution exemplifies a broad rule of state sovereign immunity. As the Supreme Court has explained, that rule "has two parts: first , that each State is

---

of his parole.

-3-

a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996), *quoting Hans v. Louisiana*, 134 U.S. 1, 13 (1890).³ For over a century the Court has "reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe*, 517 U.S. at 54, *quoting Hans*, 134 U.S. at 15. A federal suit against an unconsenting State or its alter ego is barred regardless of the relief sought. *Seminole Tribe*, 517 U.S. at 58 ("we have often made it clear that the relief sought by a plaintiff ... is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

As an agency of the Commonwealth government, the Board and its employees partake of Pennsylvania's Eleventh Amendment immunity. *See* Pa. Stat. Ann., tit. 61 § 331.2 (Purdon 1999) (establishing the Pennsylvania Board of Probation and Parole as an agency of the Commonwealth, whose nine members are appointed by the Governor). The Eleventh Amendment bars this lawsuit, *unless* Pennsylvania has lost or given up its immunity.

That immunity can be lost or given up in only two ways: 1) if the Commonwealth itself waives it, or 2) if Congress, pursuant to a valid exercise of power, abrogates it. *College Savings*

---

³ When deciding a motion to dismiss for failure to state a cognizable claim, the Court must accept plaintiff's factual claims and draw from them all reasonable inferences favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3ᵈ Cir. 1984); *Truhe v. Rapell*, 641 F.Supp. 57 (M.D. Pa. 1985). Therefore, the Court should not dismiss a complaint for failure to state a claim unless it is convinced beyond reasonable doubt that the plaintiff can prove no set of facts to support a claim which would permit recovery. *Conley, Supra; Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 887, 891 (W.D. Pa. 1985)(*citing, Columbia Picture Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3ᵈ Cir. 1984)).

*Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 119 S.Ct. 2219, 2223 (1999). In this case, there is no question of waiver — Pennsylvania by statute has expressly declined to waive its Eleventh Amendment immunity, *see* Pa. Stat. Ann., tit. 42 § 8521(b) (Purdon 1998). Nor has Congress abrogated that immunity in civil rights cases filed under Section 1983. *Pennhurst State School and Hospital v. Halderman*, 456 U.S. 89, 99-100 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978). Furthermore, neither a state nor its officials acting in their official capacities are "persons" under §1983. *Will v. Michigan*, 491 U.S. 58 (1989). Accordingly, Galloway's damages action against defendant Giornesto in his official capacity is barred.

II.   PLAINTIFF LACKS STANDING TO COMPLAIN ABOUT THE SEARCH OF THE ROOM AND CONFISCATION OF THE GUNS AS HE DENIES HAVING A POSSESSORY INTEREST IN EITHER.

While the Fourth Amendment generally proscribes searches conducted outside the judicial process, there are exceptions when "special needs, beyond the normal need for law enforcement," make the judicial probable cause requirement impracticable or unnecessary. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (search of probationer's home); *New York v. Burger*, 482 U.S. 691, 699-703 (1987) (search of premises of highly regulated business); *O'Connor v. Ortega*, 480 U.S. 709, 721-25 (1987) (work-related search of employees' desks); *New Jersey v. T.L.O.*, 469 U.S. 325, 337-42 (1985) (search of student's property by school officials); *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) (search of prisoner's cell); *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979) (body cavity search of inmates).

The exceptions to the Fourth Amendment's probable cause requirement turn on whether a person has a "constitutionally protected reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). This requires a two-part inquiry:

whether the individual has manifested a subjective expectation of privacy in the object of the challenged search, and whether society is willing to recognize that expectation as reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). Regardless of Galloway's subjective privacy expectation, it cannot be said that society is willing to recognize it as reasonable. In exchange for early release from prison into the community, a parolee such as Galloway agreed to abide by certain conditions of parole, a violation of which permits society, through its governmental representatives, to reincarcerate the violator. There is, of course, no requirement that a parolee accept the parole conditions; he is free to reject parole and serve out his prison term.

Conditions accepted by Galloway in this case included his agreement not to possess any weapons and his written consent to a search of his person, property and residence without a warrant by agents of the Board. These are no different than conditions requiring a parolee to submit to alcohol or drug treatment with its attendant drug testing, mental health treatment or other rehabilitative programming, all of which indicate diminished privacy expectations by the parolee over his conduct and his person. More importantly, they demonstrate that the community is unwilling to release offenders before the expiration of their term of incarceration unless certain conditions are met.

However, this action does not require the Court to determine whether the warrantless search of a parolee's home violated his diminished expectations of privacy. First, Galloway admits that he "would have no objection to a search of areas he had common authority over if it was based on a legitimate reasonable suspicion ...." Complaint ¶ B.12. Second, if we believe Galloway's claims, the privacy rights he is asserting are those of his son's and not his. It was David's room that he is complaining about being searched – it is guns allegedly belonging to

David that were confiscated. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("The Amendment protects persons against unreasonable searches of "their persons [and] houses' and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual."); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (The "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (*citing, Katz v. United States*, 389 U.S. 347, 351 (1967)). Galloway does not assert that he had any expectation of privacy in the room of his son. Similarly, Galloway has denied any possessory interest in the guns that were confiscated. Neither his Fourth Amendment rights prohibiting unreasonable searches and seizures nor his Fourteenth Amendment right to not be deprived of property without due process are implicated by the decisions to enter David's room and confiscate David's guns. Therefore even if we assume that the allegedly false tip bu Giornesto that David was intending to buy his father a 50 caliber weapon lead inexorably to the search of David's room can not be the basis for a claim by the father and his Fourth Amendment claim should be dismissed.

Last, even had Giornesto lied about what someone else had told him about David's intents in the hopes that someone would confiscate David's supposedly valuable gun collection, there is no allegation that Giornesto played any role in Smith's decision to search David's room. Giornesto is not alleged to have been on the scene and Galloway does not allege Smith consulted Giornesto before allegedly insisting on Galloway opening the door to David's room. The allegations against Giornesto are insufficient to state a claim under §1983. In order to assert a viable claim, the defendant must have been personally involved in the allegedly wrongful conduct either by actual conduct or his knowledge of, and acquiescence in, the wrongful conduct.

-7-

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207-1208 (3ᵈ Cir. 1988); *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3ᵈ Cir. 1995); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3ᵈ Cir. 1976); *Goode v. Rizzo*, 506 F.2d 542, 550 (3ᵈ Cir. 1974), *rev'd on other grounds*, 423 U.S. 362 (1976); *Bracey v. Grenoble*, 494 F.2d 566, 571 (3ᵈ Cir. 1974). Every defendant against whom a suit is brought must be shown to have been involved in the complained of conduct. *Parratt v. Tailor*, 451 U.S. 527, 537 N.3 (1981); *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 263 (3ᵈ Cir. 1995); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3ᵈ Cir. 1988); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton*, 546 F.2d at 1082.

    III.    PLAINTIFF HAS NOT OBTAINED A FAVORABLE DECISION CONCERNING HIS CHALLENGE TO THE PAROLE REVOCATION PROCEEDINGS AND HIS CLAIMS UNDER § 1983 REGARDING THOSE PROCEEDINGS ARE NOT COGNIZABLE.

This is a § 1983 action in which Galloway seeks to recover monetary damages because he was determined to be a parole violator. The only possible constitutional claim alleged is that his liberty interest was taken without due process.[4] However, this claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). In *Heck*, the plaintiff, a convicted prisoner, filed suit under 42 U.S.C. § 1983 against prosecutors of Dearborn County as well as an investigator employed by the Indiana State Police. His complaint alleged that the defendants had engaged in an unreasonable, unlawful, and arbitrary investigation; had knowingly destroyed

---

[4]Galloway alleges that the consequence of this supposed false tip is that he lost business. However, a claim that someone defamed a plaintiff, standing a lone, does not present a case for Section 1983 relief. See *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). In fact, Giornesto's supposedly false tip did not lessen Galloway's reputation in any way.

exculpatory evidence; and had caused an unlawful voice identification procedure. The plaintiff sought, *inter alia*, compensatory and punitive damages.

The United States Supreme Court concluded plaintiff had no cognizable claim under § 1983. In refusing to recognize any cause of action, the Court expressed its unwillingness to permit a suit for the recovery of damages which would call into question the validity of the plaintiff's underlying conviction or sentence. Unless the plaintiff could first demonstrate that his conviction had previously been invalidated, the Court declared that his § 1983 action would be barred.

More recently, in *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584 (1997), the United States Supreme Court extended its holding in *Heck* to prison disciplinary hearings which resulted in the loss of good-time credits. In *Edwards*, the plaintiff was found guilty of committing prison infractions and was sanctioned to the loss of 30 days' good-time credit which he had previously earned toward his release. He then filed suit under 42 U.S.C. § 1983 contending that the procedures used at his disciplinary hearing violated his Fourteenth Amendment due process rights.

Relying on *Heck*, the Court in *Edwards* held that the plaintiff's claim under § 1983 was not cognizable since a judgment in his favor would necessarily imply the invalidity of the prison disciplinary decision and the punishment which had been imposed.

The same principal is true of parole proceedings. In *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), the Ninth Circuit examined a suit for damages under § 1983 brought by a Washington state inmate that raised the claim that his right to due process was violated by the denial of parole based upon allegedly false information contained in his parole file. The court

-9-

treated the issue in the following terms:

> "We have no difficultly in concluding that a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement... Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits. Appellant's civil claim for damages amounts to a collateral attack on his denial of parole and subsequent incarceration. *Heck* does not permit this."

*Id.* at 1024.

Other circuits which have considered this question have also concluded that § 1983 suits calling into question parole board decisions are not cognizable unless and until those decisions have been invalidated or overturned. *Ali v. Hubbard*, 1997 WL 556293 (1st Cir. 1997); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *Miller v. Indiana Department of Corrections*, 75 F.3d 330 (7th Cir. 1996); *McGrew v. Texas Bd. of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *Schafer v. Moore*, 46 F.3d 43 (8th Cir. 1995).

Because Galloway's complaint essentially challenges the validity of his parole revocation for allegedly unconstitutional reasons, it runs afoul of *Heck* and is, therefore, barred. Unless Galloway is first able to show that the Parole Board's decision has been invalidated or overturned, he has no cognizable claim under § 1983 for the decisions rendered in administrative and judicial proceedings (such as the forfeiture action) or the testimony given in those proceedings.

## CONCLUSION

Wherefore, the Court should dismiss Charles B. Giornesto as a defendant.

                                      Respectfully submitted,

                                      D. MICHAEL FISHER
Attorney General

BY: *[signature: Francis R. Filipi]*
FRANCIS R. FILIPI
Senior Deputy Attorney General
Attorney ID# 18630

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

Counsel for Defendants Pennsylvania Board of Probation and Parole, Joseph Smith, Daniel Roberts, George Johnson, Charles B. Giornesto, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan

OFFICE OF ATTORNEY GENERAL
Litigation Section
15th Floor, Strawberry Square
Harrisburg PA 17120
E-Mail: ffilipi@attorneygeneral.gov
Direct Dial: (717) 787-3874
FAX: (717) 772-4526

DATE: August 7, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY :
    Plaintiff :
:
v. : No. 1:00-CV-00649
:
PENNSYLVANIA BOARD OF : Judge Rambo
PROBATION AND PAROLE, *et al.*, : Magistrate Judge Smyser
    Defendants :

### CERTIFICATE OF SERVICE

I, FRANCIS R. FILIPI, Senior Deputy Attorney General, hereby certify that on this date I caused to be served copies of the foregoing Brief in Support of Motion to Dismiss Filed on Behalf of Defendant Charles B. Giornesto, by depositing a copy in the United States Mail, postage prepaid, first class, in Harrisburg, PA, addressed to each of the following:

Gail Galloway
R.D. #1, Box 30
Petersburg, PA 16669

Plaintiff

Anne K. Fiorenza, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
228 Walnut Street, Suite 217
Harrisburg, PA 17108

Counsel for Hon. William Caldwell

Peter McManamon, Esq.
200 Penn Street
P.O. Box 383
Huntingdon PA 16652

Counsel for District Attorney Robert B. Stewart, III

                                       */s/ Francis R. Filipi*
                                       FRANCIS R. FILIPI
                                       Senior Deputy Attorney General

DATED: August 7, 2000