(27)
1/2/01
MA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY,                    :    CIVIL NO. 1:CV-00-0649

     **Plaintiff,**                    :

     v.                    :    **FILED**
                        HARRISBURG, PA

**PENNSYLVANIA BOARD OF**                    :
**PROBATION AND PAROLE et al.,**                 JAN 0 2 2001

     **Defendants.**                    :    MARY E. D'ANDREA, CLERK
                        Per _____
                                Deputy Clerk

### MEMORANDUM

Before the court are the following motions: (1) Defendants Smith, Roberts, Johnson, Thomas, Roy, Ridge, Ward, Burks, Mendelsohn, Jacobs, Mechling, Morgan, and Pennsylvania Board of Probation and Parole's motion to dismiss; (2) Defendant Giornesto's motion to dismiss; (3) Defendant Caldwell's motion to dismiss; (4) Plaintiff's motion for entry of default judgment against Defendant Stewart; and (5) Defendant Stewart's motion to dismiss. The time for briefing each of these motions has expired, and the motions are ripe for disposition.

## I.        **Background**

This is an action seeking monetary damages pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983. Plaintiff, Gail Galloway, filed the instant action on April 14, 2000, naming as defendants the Pennsylvania Board of Probation and Parole ("Board") and sixteen other individuals that include employees and officials of the Board, the Pennsylvania Department of Corrections, the Governor of Pennsylvania, the District Attorney of Huntingdon County, Pennsylvania, and the Honorable William W. Caldwell, United States District Court Judge for the Middle District of Pennsylvania.

Plaintiff's complaint alleges the following: Plaintiff was convicted of a non-violent crime in 1991 for which he was incarcerated in November of 1992. On September 14, 1994, Plaintiff was released on parole. Plaintiff resided in Petersburg, Pennsylvania, with his wife and 27 year old son on June 1, 1998, when a search and seizure of various weapons was conducted at Plaintiff's residence. Plaintiff's parole was revoked, and he was imprisoned 15 ½ months for the parole violation. The present action arises out of the June 1, 1998 search and seizure, certain events that occurred during his subsequent incarceration, the disposition of Plaintiff's petition for writ of habeas corpus, and a forfeiture action involving the seized weapons. The following are the factual and legal allegations regarding each named Defendant:

A. **Defendants Pennsylvania Board of Probation and Parole, Charles Giornesto, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling, and James Morgan**

Plaintiff's complaint alleges various violations of his constitutional rights by the above named Defendants ("State Defendants"). The State Defendants are as follows: the Pennsylvania Board of Probation and Parole ("Board"); four present and former employees of the Board (Giornesto, Smith, Roberts, Johnson); two attorneys for the Board (Thomas, Roy); the Governor of Pennsylvania (Ridge); the Chairman of the Board (Ward); the Assistant Superintendent of the State Correctional Institute at Smithfield, Pennsylvania ("SCI Smithfield") (Burks[1]); a

---

[1]Sharon Burks's name is incorrectly spelled "Burke" in the complaint.

deputy attorney general of Pennsylvania (Mendelsohn[2]); a former Board hearing examiner (Jacobs); the Superintendent at the State Correctional Institute at Waynesburg, Pennsylvania ("SCI Waynesburg") (Mechling[3]); and the Superintendent at SCI Smithfield (Morgan).

### 1.   Factual allegations regarding the June 1, 1998 search and subsequent "cover up"

Plaintiff alleges that Defendants Giornesto, Smith, Roberts, and Johnson each took part in an illegal search and seizure of Plaintiff's son's, David Galloway's, bedroom. On June 1, 1998, Smith went to Plaintiff's residence and informed Plaintiff that he was there to search the residence because the Board received a report that Plaintiff's son had inquired about buying Plaintiff a .50 caliber rifle as a birthday gift. Giornesto filed the report, and Plaintiff contends that Giornesto fabricated a tip from a gun dealer as the basis for the report. Giornesto's purported motive was to gain possession of David Galloway's valuable weapons collection.

Plaintiff contends that he did not have common authority over David Galloway's bedroom, that it was kept locked, and that David Galloway had the only key. A search of David Galloway's room resulted in the seizure of various weapons that served as the basis for Plaintiff's parole revocation. Plaintiff contends that the search was conducted in violation of his son's federal and state  constitutional rights. (Compl. at 25, ¶ 13.) Defendant Daniel Roberts is the District Supervisor of the Board at the Altoona, Pennsylvania office. Plaintiff alleges that Roberts

---

[2]Seth Mendelsohn's name is incorrectly spelled "Mendelson" in the complaint.

[3]Neil Mechling's name is incorrectly spelled "Mechlin" in the complaint.

authorized the illegal search, became involved in a conspiracy to cover up the illegal conduct of other Defendants, and "approved of their conduct, condoned it and turned a blind eye to the violations of the laws and statutes and Constitutional rights of Plaintiff." (Id. at 29, ¶ 5.)

Defendant George Johnson is a parole supervisor for the Board and acted upon Giornesto's allegedly false report. In addition to being part of a conspiracy to cover up the illegal conduct of others, Plaintiff alleges that Johnson was directly responsible for the training and supervision of Board agents and was responsible for their actions. (Id. at 30, ¶ 4.)

Plaintiff was arrested following the search and seizure, and he was then taken to the Huntingdon County prison where counsel was appointed to represent him. On June 24, 1998, Plaintiff was transported to SCI Smithfiled where he was held in solitary confinement while he awaited a revocation hearing. On August 11, 1998, Plaintiff's parole was revoked following a hearing before hearing examiner Fred Jacobs.

In addition to the weapons that were seized from David Galloway's bedroom, apparently Defendant Smith testified at the revocation hearing that Plaintiff had purchased a rifle. (Id. at 26, ¶ 19.) It is Plaintiff's position that Smith presented evidence of the purchase, which he knew to be false, and that Smith testified against him even though "Smith knew Plaintiff was not in possession of any contraband." (Id. at ¶ 18.) Plaintiff contends that the search, seizure, and subsequent parole revocation resulted in a violation of his rights under the Fourth

4

and Fourteenth Amendments of the United States Constitution and Article I § 8 of the Pennsylvania Constitution.[4]

Defendants Arthur Thomas and Scott Roy are Board attorneys that Plaintiff alleges conspired to cover up the illegal search and caused a violation of Plaintiff's state and federal constitutional rights. (Id. at 38, ¶ 2.)  Furthermore, Plaintiff asserts that they helped to falsely imprison him, causing Plaintiff's business to be destroyed.  As to hearing examiner Fred Jacobs, Plaintiff claims that Jacobs denied him a fair hearing and due process. Jacobs allegedly refused to allow Plaintiff's attorney to tape record the hearing, considered inadmissible hearsay evidence, considered fraudulent evidence, and was responsible for testimony being deleted from the official recording of the proceeding.

Defendant Thomas Ridge is the Governor of Pennsylvania.  Plaintiff alleges that Governor Ridge failed his duties to protect Plaintiff's constitutional rights after receiving a detailed letter from Plaintiff.  Defendant Ward is the Chairman of the Board, who Plaintiff contends was part of the alleged conspiracy and cover-up to violate Plaintiff's right to be free of an unlawful search and seizure.

## 2. **Allegations regarding treatment at SCI Smithfield**

The next series of events giving rise to the instant action occurred while Plaintiff was in solitary confinement at SCI Smithfield.  There Plaintiff suffered severe chest pains, pain and numbness in his left arm, profuse sweating, severe headache, and erratic blood pressure.  After asking an unnamed guard to get medical

---

[4]Plaintiff's complaint also alleges that Defendants violated various state and federal criminal statutes by their actions, including but not limited to, perjury and racketeering.  However, Plaintiff's claim for damages is stated under § 1983 which only redresses violations of federal rights.  See infra. Therefore, the court will dismiss these claims.

help, Plaintiff allegedly waited and hour before the guard gave him four Tums, told Plaintiff to go to sleep, and then allowed Plaintiff to suffer through the night.

The next day Plaintiff was examined by a medic and was placed in the infirmary where he remained for approximately one week suffering intermittent chest pains. Plaintiff's wife filed a complaint regarding improper medical treatment and the fact that she was not contacted when Plaintiff was hospitalized. When Plaintiff was returned to his cell, Defendant Burks, the Assistant Superintendent of SCI Smithfield, allegedly told Plaintiff to write his wife and tell her that he was not being mistreated. Plaintiff's claim against Burks is that she is responsible for a conspiracy to cover up the denial of medical care in violation of the Eighth Amendment of the United States Constitution. (Compl. at 46, ¶ K.) Plaintiff claims that the Superintendent at SCI Smithfield, Defendant Morgan, is also responsible for any Eighth Amendment violations that occurred at that facility.

### 3.    Allegations regarding treatment at SCI Waynesburg

At some unspecified point Plaintiff was transferred to SCI Waynesburg. He was exiting his housing unit and slipped on a wet floor which caused him to fall and strike his head and left shoulder on a wooden table seat. Plaintiff states that before he fell there were no signs indicating that the floor was wet, but following his accident an officer made an inmate put out signs. Plaintiff contends that the Department of Corrections doctor indicated that there was not much that could be done for Plaintiff, but that he has suffered severe headaches, pain in his left shoulder, and back pain since the fall.

Defendant Neil Mechling is the Superintendent of SCI Waynesburg. Plaintiff alleges that Mechling did not properly train corrections officers in the use

of wet floor signs.  Plaintiff further alleges that Mechling and his staff were indifferent to Plaintiff's need for medical care following his accident and degraded Plaintiff by allowing him to be video taped during a strip search.  (Compl. at 49, ¶ 11.)

Plaintiff's complaint as applied to Defendant Seth Mendelsohn, deputy attorney general of Pennsylvania, is somewhat unclear.  Plaintiff alleges that Mendelsohn conspired with Defendant Stewart to "file a fraudulent forfeiture action in trespass on a civil litigation. . . to deliberately stall the proceedings."  (Compl. at 54 ¶ P.)  Apparently, David Galloway filed a lawsuit to recover the weapons seized by the government.  Soon thereafter, a forfeiture action was filed by the state.  Plaintiff contends that this action was taken "in violation of [Mendelsohn's] oath to uphold the Constitution."  (Id. at ¶ 3.)  Plaintiff does not state any federal constitutional or statutory rights that Mendelsohn violated that would provide a basis for the damages claim.  Therefore, Plaintiff's claim against Mendelsohn will be dismissed without further consideration.

## B.    Defendant William Caldwell

Defendant William Caldwell is a United States District Court Judge for the Middle District of Pennsylvania.  Apparently, immediately following his incarceration Plaintiff filed a petition for writ of habeas corpus before Judge Caldwell.  Plaintiff alleges that Judge Caldwell conspired to have Plaintiff locked in solitary confinement at SCI Smithfield when the habeas petition was filed.  Judge Caldwell also purportedly was a co-defendant with Defendant Stewart, the District

Attorney of Huntingdon County, Pennsylvania, in various unspecified civil actions. (Compl. at 33, ¶ 1.)

Plaintiff contends that Judge Caldwell had a conflict of interest in addressing Plaintiff's habeas petition because the petition was "against Huntingdon County." (Id. ¶ 2.) Defendants Caldwell and Stewart allegedly had Plaintiff's habeas petition dismissed without allowing him to receive copies of Stewart's filings or to answer anything filed. Plaintiff further alleges that he was denied access to legal materials for five months, which limited his ability to prosecute his habeas petition.

### C.    Defendant Robert B. Stewart, III

Plaintiff alleges that Defendant Robert B. Stewart, District Attorney for Huntingdon County, Pennsylvania, conspired with Judge Caldwell to deny Plaintiff due process and have him placed in solitary confinement as SCI Smithfield after Plaintiff filed a petition for writ of habeas corpus. Plaintiff contends that he did not receive and have the opportunity to respond to various filings of Defendant Stewart prior to having his petition for writ of habeas corpus dismissed by Judge Caldwell. Plaintiff also alleges that Stewart filed a fraudulent forfeiture action against David Galloway and Plaintiff to seize property that is not Plaintiff's.

### II.    Legal Standard: Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. Nami v.

Fauver, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant[s] on notice of the essential elements of the plaintiff's cause of action." Nami, 82 F.3d at 65. The court will not dismiss a complaint for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"In determining whether a claim should be dismissed under [Federal] Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Ben. Guar. Corp. v. White Consol. Ind, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    **Discussion**

### A.    **State Defendants**

The State Defendants filed a motion to dismiss on June 21, 2000.[5]

#### 1.    **The State Defendants are entitled to Eleventh Amendment Immunity for actions taken in their official capacities.**

Plaintiff sues all of the State Defendants in both their official and individual capacities. The Eleventh Amendment of the United States Constitution

---

[5]Defendant Giornesto filed a separate motion to dismiss on August 7, 2000. However, Giornesto's brief is identical in substance to the other listed Defendants', and the motions will be addressed together.

bars suits against a state or state agency in federal court by citizens of any state. See, e.g., Atascadaro State Hospital v. Scanlon, 473 U.S. 234, 238 (1985); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98 (1984). There is an exception to Eleventh Amendment immunity under which a state officer may be enjoined from "taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant." Ex Parte Young, 209 U.S. 123, 159 (1908). The exception, however, is very narrow. First, there must be an "ongoing violation of federal law." Johns v. Stewart, 57 F.3d 1544, 1552 (10th Cir. 1995). Furthermore, "[i]t applies only to prospective relief" and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. Puerto Rico Aqueduct v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). "When a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). Finally, the Ex Parte Young exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Id.

In addition to the Ex Parte Young exception, Eleventh Amendment immunity may be lost in two ways. A state may waive its Eleventh Amendment immunity and consent to being sued in federal court, however Pennsylvania has not waived its immunity. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (recognizing that Pennsylvania has "specifically withheld consent" to suit in federal court under 42 Pa. Cons. Stat. Ann. § 8521(b)). In the alternative, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth

10

Amendment." <u>College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.</u>, 527 U.S. 666, 670 (1999). However, the Supreme Court has specifically held that § 1983 does not override Eleventh Amendment immunity. <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).

       Here, the Board is entitled to Eleventh Amendment immunity as the Department of Corrections is an agency of Pennsylvania as established by 71 Pa. Cons. Stat. Ann. § 61. Furthermore, to the extent that the State Defendants were acting in their official capacities, they are also entitled to Eleventh Amendment immunity. Plaintiff contends that his suit is "being brought against state officers in their individual capacity because they acted under color of law in their official capacity and is not a suit against the state itself." (Pl. Br. in Resp. to State Def. Mot. to Dis., (hereinafter "Pl. Resp. to State") at 3.) Thus, Plaintiff inherently concedes that immunity applies to the Board itself and to the State Defendants in their official capacity. Plaintiff has only alleged past violations of his constitutional rights, and nowhere claims on-going violations or seeks prospective relief as is necessary for the <u>Ex parte Young</u> exception to apply.

       Eleventh Amendment immunity applies to the State Defendants only to the extent that they acted in their official capacities. However, Plaintiff seeks monetary damages pursuant to § 1983 for actions that he claims the State Defendants took in their individual capacities. Thus, while the State Defendants are immune from suit for actions taken in their official capacities, the court must now turn to potential individual liability.

## 2. The search of David Galloway's room did not violate Plaintiff's Fourth Amendment rights.

Section 1983 imposes liability on any person who "under color of any statute, ordinance, regulation, custom, or usage of any State" deprives another of "any rights, privileges or immunities secured by the Constitution or laws. . . ." 42 U.S.C. § 1983. Section 1983 does not grant any substantive rights, but instead offers redress for the deprivation of already existing Constitutional or statutory rights. See Maine v. Thiboutot, 448 U.S. 1, 5-6 (1980). Thus, in order to recover under § 1983, a Plaintiff must show that there has been a violation of a federal constitutional or statutory right.

Plaintiff's claims against Defendants Giornesto, Smith, Roberts, Johnson, Thomas, Roy, Ridge and Ward are based on alleged violations of the Fourth Amendment prohibition against unreasonable searches and seizures.[6] The State Defendants contend that the search of David Galloway's bedroom and subsequent seizure of weapons found there did not violate Plaintiff's rights because Plaintiff did not have a possessory interest in the area searched. Plaintiff concedes that the Board had the power to conduct a warrantless search of any property over which he exercised common authority. (Compl. at 24, ¶ 13.) Plaintiff's allegations of a Fourth Amendment violation rest on the fact that David Galloway was not an "offender" for the purposes of Board authority to conduct a warrantless search, and that David Galloway had a reasonable expectation of privacy that his bedroom would be free of a warrantless search. (Id. at ¶ 12.)

---

[6]Plaintiff also refers to Article I § 8 of the Pennsylvania Constitution which prohibits unreasonable searches and seizures. However, recovery under § 1983 is predicated upon violations of federal law, and therefore the court need not address Plaintiff's allegations of state constitutional violations.

In the criminal context, "[t]o claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 83 (1998). Here, Plaintiff has not alleged that he had any reasonable expectation of privacy as to his son's bedroom or possessions. In fact, Plaintiff admits that he did not have access to or authority over David Galloway's bedroom. (Compl. at 3.) Furthermore, Plaintiff states that "David keeps his room locked at all times and he possesses the only key, showing he exhibits an expectation of privacy that is reasonable." (Id.) Plaintiff concedes that the search of the common areas of the house was reasonable. (Pl. Resp. to State at 7) ("When defendant Smith entered Plaintiff's home on June 1, 1998, he found no evidence of a parole violation in Plaintiff's living quarters or areas of common authority, that is where the reasonableness of the search ended.") Plaintiff further acknowledges that it is actually David Galloway's constitutional rights that are at issue when he states that "Plaintiff did not and cannot sign away the Constitutional rights of another person to have his property searched without a warrant." (Id.) Thus, Plaintiff has not stated a claim for a violation of his own Fourth Amendment rights.

Plaintiff also describes various conspiracies and due process violations that are directly related to the alleged Fourth Amendment violations. Plaintiff contends that Defendants Smith, Roberts, Johnson, and Giornesto conspired to violate his Fourth Amendment rights. Moreover, Plaintiff alleges that Defendants Thomas, Roy, Ward, and Ridge conspired to cover up the violation of these rights. As the court has already determined that Plaintiff's Fourth Amendment rights have not been violated, he may not recover under these theories. Section 1983 provides

13

recovery for violations of individuals' constitutional or statutory rights. Where there is no violation, there is no recovery. Accordingly, Plaintiff's Fourth Amendment claims against Defendants Giornesto, Smith, Roberts, Johnson, Thomas, Roy, Ridge, and Ward will be dismissed.

### 3. Plaintiff cannot recover under § 1983 for due process violations in his revocation hearing unless that decision is otherwise invalidated.

Plaintiff alleges that his Fourteenth Amendment right to due process was violated when his parole was revoked and he was imprisoned based on the weapons seized on June 1, 1998. Plaintiff claims Defendant Giornesto fabricated the tip that lead to the search of the guns, and that he caused Plaintiff to lose a protected liberty interest. (Compl. at 31.) Defendant Roberts allegedly "used the illegally seized property which Plaintiff had no access and no control over as evidence of a parole violation against Plaintiff." (Id. at 28, ¶ C.) Regarding Smith, Plaintiff asserts that Smith intentionally introduced falsified documents to prove that Plaintiff had purchased a gun, and that Smith testified against him even though he knew that Plaintiff was not in possession of contraband. Johnson allegedly attempted to cover up the known false report and helped to fabricate the parole violation.

As to Defendants Thomas and Roy, Plaintiff provides only general allegations of those individuals taking part in an "overall conspiracy to deprive the Plaintiff of his liberty interest and due process of law." (Id. at 39, ¶ 5; 41, ¶ 5.) Similarly, Plaintiff asserts that Governor Ridge became aware of Constitutional violations and the denial of Plaintiff's right to due process but ignored the violations. Plaintiff also provides only general allegations that Ward was involved

14

in the conspiracy to cover up due process violations. Finally, Plaintiff alleges that Defendant Jacobs, the hearing examiner at the revocation hearing, denied Plaintiff due process through various procedural errors.

The State Defendants respond to Plaintiff's due process claims, arguing that Plaintiff is essentially challenging the validity of the parole revocation, a challenge not cognizable under § 1983 unless the decision to revoke has been invalidated or overturned. The State Defendants rely heavily on Heck v. Humphry, 512 U.S. 477 (1994), where a prisoner filed a § 1983 claim against prosecutors and a police investigator. The plaintiff there alleged that there had been an unreasonable, unlawful, and arbitrary investigation, evidence was destroyed, and unlawful procedures had been used. The Supreme Court held that to recover damages under § 1983, a plaintiff must prove that his conviction or sentence has been previously invalidated in a state or federal proceedings. Similarly, when damages have been sought under § 1983, the Supreme Court has refused to consider the validity of prison discipline, Edwards v. Balisok, 520 U.S. 641 (1997), and lower courts have applied Heck to parole board denials or revocations of parole. Butterfield v. Bail, 120 F.3d 1023 (9th Cir. 1997); Ali v. Hubbard, No. 97-1047, 1997 WL 556293 (1st Cir. 1997); Crow v. Penry, 102 F.3d 1086 (10th Cir. 1996); Miller v. Indiana Dep't of Corrections, 75 F.3d 330 (7th Cir. 1995); McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 161 (5th Cir. 1995); Schafer v. Moore, 46 F.3d 43 (8th Cir. 1995).

In the present action, no state or federal tribunal has invalidated the revocation of Plaintiff's parole. Thus, Plaintiff's claims for damages under § 1983 for any due process violations that may have occurred leading up to or during the

15

revocation hearing are barred by the Supreme Court's holding in <u>Heck</u> and subsequent case law.  Accordingly, Plaintiff's due process claims against Defendants Giornesto, Smith, Roberts, Johnson, Thomas, Roy, Ridge, Ward, and Jacobs will be dismissed.

### 4.    **Defendants Burks, Morgan, and Mechling did not participate in, direct or have knowledge of and acquiesce to violations of Plaintiff's federal rights.**

Plaintiff's allegations as to Defendants Burks, Morgan, and Mechling do not state a claim for personal liability under § 1983.  Where a plaintiff seeks to hold individual actors liable in their personal capacities under § 1983, liability will not be imposed vicariously or based on a theory of respondeat superior.  <u>Shaw v. Strackhouse</u>, 920 F.2d 1135, 1147 (3d Cir. 1990); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Instead, a defendant must have had personal involvement in violating a plaintiff's civil rights.  <u>Rode</u>, 845 F.2d at 1207.  Such involvement may include participation in, personal direction of, or actual knowledge of and acquiescence to alleged violations.  <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir. 1997).

As to Defendant Burks, the Assistant Superintendent of SCI Smithfield, Plaintiff has alleged that she "is responsible for a conspiracy to cover up the denial of medical care as guaranteed by the Eighth Amendment." (Compl. at 46, ¶ K.)  The factual allegations made by Plaintiff do not support a claim for personal liability under § 1983.  According to the complaint, Burks did not become aware of any denial of medical care until after Plaintiff had been treated and released from the infirmary.  Plaintiff has not alleged that she in anyway participated in, directed, or

16

had knowledge of and acquiesced to the denial.  Therefore, Plaintiff's claim against Burks will be dismissed.

Similarly, Plaintiff's claims against Defendants Morgan and Mechling cannot stand.  Plaintiff simply alleges that Morgan and Mechling failed to meet their duties as Superintendents of SCI Smithfield and SCI Waynesburg, respectively.  No personal contact between these Defendants and Plaintiff is alleged, nor is any knowledge of purported constitutional or statutory violations that would allow Plaintiff to recover damages pursuant to § 1983.  Because personal liability under § 1983 cannot be imposed vicariously or based on respondeat superior, Plaintiff's claims against Morgan and Mechling will also be dismissed.

### B.    Defendant William Caldwell

On June 6, 2000, Judge Caldwell filed a motion to dismiss, asserting judicial immunity as a complete defense to Plaintiff's claims.  Judges are immune from liability in monetary damages for judicial acts.  Mireless v. Waco, 502 U.S. 9, 12 (1991).  Only two exceptions exist to the doctrine of judicial immunity, neither of which are asserted by Plaintiff.  Judges are not immune from liability for actions not taken in the judge's judicial capacity, Forrester v. White, 484 U.S. 219, 227-29 (1988), and judges are not immune from liability for actions that are judicial in nature but are taken in the complete absence of all jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).

In the present case, Plaintiff alleges that Judge Caldwell improperly dismissed his petition for writ of habeas corpus.  Plaintiff nowhere asserts that Judge Caldwell was acting in a nonjudicial capacity or that the action was taken in the

17

complete absence of jurisdiction.  Even taking all of the allegations in the complaint as true, the court finds that Judge Caldwell is immune from civil liability for his act of dismissing Plaintiff's habeas petition.  Accordingly, Defendant Caldwell's motion to dismiss will be granted.

### C.    Defendant Stewart III

Presently before the court are both Defendant Stewart's motion to dismiss and Plaintiff's motion for entry of a default judgment against Stewart.[7]

### 1.    Motion for Entry of Default Judgment

Turning first to the motion for default judgment, the court notes that three factors must be considered by the trial court in determining whether a default judgment is appropriate:  (1) whether the plaintiff will be prejudiced absent the default judgment; (2) whether the default was the result of the defendant's culpable conduct; (3) whether the defendant has a meritorious defense.  Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982).  Furthermore, the Third Circuit does not generally favor default judgments because "the interests of justice are best served by obtaining a decision on the merits."  Choice Hotels Int'l v. Pennave Assoc., Inc., 192 F.R.D. 171, 173 (E.D. Pa. 2000) (citing Farnese at 764); see also Hritz v. Woma, 732 F.2d 1178 (3d Cir. 1984).

In the present action, Plaintiff does not contend that he will suffer any prejudice if his motion for default judgment is denied.  Moreover, the Third Circuit has specifically held that in the context of default judgments, "culpable conduct

---

[7]Plaintiff has not requested an entry of default from the clerk of court which should precede a motion for a final default judgment.  However, the court will address the merits of Plaintiff's motion for default judgment.

means actions taken willfully or in bad faith." <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d 120, 124 (3d Cir.1983). Defendant Stewart explains to the court that he received a copy of the Complaint late in June 2000, but that the exact date is unknown to Stewart or his counsel. (Stewart Resp. to Mot. for Def. Jud. at 1.) Even if Stewart was neglectful by not promptly responding to the Complaint, Plaintiff is not entitled to a default judgment. <u>See</u> <u>Farnese</u>, 687 F.2d at 764. There is simply nothing in the record to indicate that Stewart was acting willfully or in bad faith. Finally, Stewart contends that his motion to dismiss is sufficient to satisfy the meritorious defense prong. As discussed <u>infra</u>, the claims against Stewart will not be dismissed. However, because the Third Circuit disfavors default judgments, and in the absence of prejudice to the Plaintiff and culpable conduct of the Defendant, the court will deny Plaintiff's motion for default judgment.

## 2. **Motion to Dismiss**

Stewart correctly notes that Plaintiff's claims against him essentially rest upon two theories: (1) that Stewart conspired with Judge Caldwell to have Plaintiff's habeas corpus petition dismissed, and (2) that Stewart conspired with Defendant Mendelsohn to forfeit David Galloway's property. Stewart contends that Plaintiff's claims against him should be dismissed for two reasons. First, to the extent that Plaintiff asserts a violation of David Galloway's constitutional rights, Plaintiff's claims cannot stand. The court agrees that Plaintiff cannot recover under § 1983 for a violation of another's rights. Therefore, to the extent that Plaintiff seeks redress for the forfeiture action, his claims will be dismissed.

Stewart's other basis for dismissal is that he is entitled to immunity from suit pursuant to the Eleventh Amendment of the United States Constitution and

19

Pennsylvania case law for actions taken in his official capacity as District Attorney of Huntingdon County.  However, in <u>Carter v. Philadelphia</u>, 181 F.3d 339, 348-51 (3d Cir. 1999), the Third Circuit specifically held that a county district attorney's office is not an arm of the state that is entitled to Eleventh Amendment immunity. Therefore, Stewart's motion will not be granted based on Eleventh Amendment immunity.

Stewart further contends that he is entitled to absolute immunity as a "high public official," as described in <u>Mosley v. Observer Publ'g Co.</u>, 619 A.2d 343 (Pa. Super. Ct. 1993).  However, Stewart's reliance on this case is misplaced.  The "absolute privilege" discussed by Pennsylvania Superior Court related to defamatory statements made by a prosecutor in a search warrant.  <u>Id.</u> at 259-60.  The privilege provides high public officials with immunity from damages "arising out of false defamatory statements." <u>Id.</u> at 346.  The present action is not analogous.  Here Plaintiff seeks monetary damages for alleged violations of his due process rights from acts committed by Stewart, not damages arising from defamatory statements. Accordingly, to the extent that Stewart seeks to have Plaintiff's due process claims dismissed, the motion will be denied.[8]  An appropriate order will issue.


SYLVIA H. RAMBO
United States District Court Judge

January  2  , 2001

_____

[8]The court will not sua sponte address any other bases upon which Plaintiff's claims against Stewart could properly be dismissed.

20

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

January 2, 2001

Re:  1:00-cv-00649    Galloway v. Pennsylvania Board o

True and correct copies of the attached were mailed by the clerk
to the following:

```
Gail J. Galloway
R.D. #1, Box 30
Petersburg, PA  16669

Francis R. Filipi, Esq.
Attorney General's Office
Strawberry Square
15th Floor
Harrisburg, PA  17120

Peter M. McManamon, Esq.
Henry, Corcelius, Gates, Gill & Ody
200 Penn Street
P.O.Box 383
Huntingdon, PA  16652

Anne K. Fiorenza, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
228 Walnut Street
Suite 217
Harrisburg, PA  17108
```

```
cc:
Judge                     (X )
Magistrate Judge          (  )
U.S. Marshal              (  )
Probation                 (  )
U.S. Attorney             (  )
Atty. for Deft.           (  )
Defendant                 (  )
Warden                    (  )
Bureau of Prisons         (  )
Ct Reporter               (  )
Ctroom Deputy             (  )
Orig-Security             (  )
Federal Public Defender   (  )
```

```
Summons Issued            (  )  with N/C attached to complt. and served by:
                                 U.S. Marshal (  )    Pltf's Attorney (  )
Standard Order 93-5       (  )
Order to Show Cause       (  )  with Petition attached & mailed certified mail
                                 to:  US Atty Gen   (  )  PA Atty Gen (  )
                                      DA of County  (  )  Respondents (  )
Bankruptcy Court          (  )
Other_____   (  )
```

MARY E. D'ANDREA, Clerk

DATE: January 2nd, 2001

BY: _____
Deputy Clerk