ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL J. GALLOWAY,                          :
    **Plaintiff**                          :
                                           :
    **v.**                                 :      CIVIL NO. 1:CV-00-0649
                                           :
**PENNSYLVANIA BOARD OF**                  :
**PROBATION AND PAROLE, ET AT.,**          :
    **Defendants**                         :

FILED
HARRISBURG, PA

## PLAINTIFF'S FIRST AMENDED COMPLAINT

AUG 2 0 2002

### I.    CLARIFICATION

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

Gail Galloway, ("Plaintiff"), is confused by the Courts Memorandum and

Order dated July 15, 2002, which is perceived as a further denial of due process by

the Defendants and the Court.  Plaintiff has given a responsive answer to everything

filed by the Defendants.  If Defendant Robert B. Stewart filed a Statement of Undisputed

Facts and Plaintiff has not answered them, it is because he <u>never</u> received them, which

was one of the key issues against Defendant Stewart in his lawsuit.  During Plaintiff's

Habeas Corpus case, Defendant Stewart filed papers into the District Court and <u>never</u>

served them on the opposing party, Plaintiff in this action, as required by law.  Plaintiff

had filed a Motion To Compell  for Stewart to serve copies of all filings into the District

Court on Plaintiff, Judge Caldwell denied the Motion, which allowed Defendant Stewart

to file documents and papers into the District Court without serving them on the pro se

Plaintiff, thereby denying Plaintiff due process of law.  An opposing party cannot respond

to or defend against court filings unless he has a copy of them and knows what they are.

It is a denial of due process for the Court to allow this to happen and then dismiss an

action for failure to respond to something the party has never seen or knew existed.

Plaintiff is also confused as to how the caption can keep changing for the same docketed case. On one document the caption on the Court papers says: *Gail Galloway v. Robert B. Stewart,* and on another it says: *Gail Galloway v. Pennsylvania Board of Probation and Parole,* but they are one case with the same docket number.

Plaintiff is under the understanding that the 3rd Circuit was allowing him to amend his complaint against Defendant Stewart also since it was a key issue raised in the appeal and it was wrong to dismiss the case against Defendant Stewart when Plaintiff could not answer what he did not receive.

## II.    **PRELIMINARY STATEMENT**

Gail Galloway, ("Plaintiff"), files this Amended Complaint for the Civil Rights violations pursuant to 42 U.S.C.A. Section 1983 to redress the deprivations, under color of law, of rights secured by the Constitutions of the United States and Pennsylvania. Plaintiff also files this Action under the Civil RICO Statutes, 18 U.S.C.S. ss1961, ss1962, ss1963, ss1964 for violations committed while engaged in a conspiracy to deprive Plaintiff of his Constitutional rights while engaging in a corrupt organization. Plaintiff also claims violations of 18 U.S.C.S. ss241, ss242, as well as violations of state law 61 P.S. ss331.27, 18 Pa. C.S. ss4902, ss4903, ss4904, ss4910, ss4911, all of which violations caused the plaintiff to be denied due process of law.

Plaintiff is an adult citizen and resides at R.D.#1, Box 30, Petersburg, PA 16669. Plaintiff lives in a private home and shares access and common authority over the bathroom, livingroom, den, kitchen, and one bedroom Plaintiff shares with Beverly

Galloway, ("Wife").

Plaintiff's son David Galloway, ("David"), shares common authority over rooms of the house except his bedroom, which as an adult individual, he maintains sole occupancy, sole access and no one else in the household has access to or common authority over his private room which he keeps locked and possesses the only key.

For clarification, all references to David are strictly references to establish a chain of events and in no way are to be considered as the issues of this Amended Complaint or prosecuted in any manner by this Amended Complaint. This Amended Complaint deals solely with the violations of the Constitutional rights of the Plaintiff and the illegal seizure of Plaintiff and wrongful incarceration by the conspiratorial actions of the Defendants as stated for each individual as follows later in this Amended Complaint.

David lives in privacy in his own private room which, as an adult individual, keeps locked at all time and no one else has access to or common authority over his private residence which was covered by his Fourth Amendment rights to absolute privacy from governmental interference without warrant. David was 27 years old and a law abiding citizen, a sportsman, and a private collector of militaria, sporting equipment and antique through semi-modern firearms including his personal hunting rifles. David held a current valid license to carry a concealed weapon for protection, registered to him at his home address by the Huntingdon County Sheriff's Department following the extensive background investigation required for such a permit, including the known fact that Plaintiff was his father, on parole, and lived in the same house.

Plaintiff was convicted of a non violent crime in 1991 and still maintains his innocence. Plaintiff was incarcerated in November 1992 and released to a Community Corrections Center in January 1994 where Plaintiff had his car, a full time job, and was free to go home on weekends to be with his family. On September 14, 1994, Plaintiff was released on parole and worked the same job without incident until the events which brought about this action.

On June 1, 1998, Joseph Smith, ("Smith"), an agent of the Pennsylvania Board of Probation and Parole, ("PBPP"), came to the residence of Plaintiff wher Plaintiff was sitting on the side porch with his 5 year old grandson. Smith got out of a pickup truck and approached Plaintiff at the porch. Smith said he came to search the house because it had been reported to the PBPP office that Plaintiff's son David had inquired about buying Plaintiff a .50 caliber rifle for Plaintiff for his birthday. Plaintiff informed Smith that he knew nothing of this and did not believe that David would make such and inquiry.

Smith then said he was there specifically to search David's room. Plaintiff asked Smith for a search warrant because David's room was locked and no one had a key or access to David's room. David had a legitimate Fourth Amendment right to privacy in his locked room. Smith said he did not have a search warrant and did not need one because he could search anywhere he wanted anytime he wanted. Plaintiff again told Smith that David was not home and that David keeps his door locked to his private room to maintain his privacy. Smith ordered Plaintiff to take him to David's room. Smith made no attempt to search any area of the house that Plaintiff had common authority over or access to. Plaintiff complied under protest, leaving 5 year old Tyler Galloway, ("Tyler"), on the porch alone without family supervision. Upon arriving

at David's room, Smith ordered Plaintiff to open the door. Plaintiff had stated repeatedly that he did not have a key to David's private room and no access to or common authority to enter. Smith again ordered Plaintiff to get the door open. Plaintiff tried the door knob and it was locked as Plaintiff had repeatedly stated. Plaintiff had asked Smith 6 different times to be allowed to call David at work so he could come home if Smith wanted to talk to him about the report or enter his locked room for which David would have required a search warrant with sworn affidavit before he would have allowed anyone to enter. Smith refused each request.

Plaintiff also asked 3 time to be allowed to wake his wife to look after Tyler and Smith refused this also. Smith then became aggressive and ordered Plaintiff to get the door open while exposing a handgun at his side with his hand close to the pistol grip. Plaintiff became scared for his life while instantly remembering how 2 parole agents had shot down an unarmed man as he lay in bed in his home in West Kensington, PA. Fearing for his life, Plaintiff forcibly opened the door causing damage to the lock assembly and physical damage to the door. Smith had no search warrant, no probable cause for a search warrant and no reasonable suspicion to believe Plaintiff had violated any condition of his parole.

Smith entered David's room and began ransacking. Finding nothing, Smith opened the doors to a large closet and entered it. Smith looked around for a few seconds and then reached up on the top shelf and slid his had along, then removed a handgun which David had a permit to carry. Then Smith found a key in the closet somewhere and tried it in a locked wooden cabinet inside the closet and discovered David's collection

﹁

of antique and collectible guns and David's hunting rifles.

Smith forced Plaintiff out onto the porch where a Pennsylvania State Police, ("PSP"), car was arriving. Smith illegally seized Plaintiff in front of his grandson and handcuffed Plaintiff and placed him in the PSP car.

Smith seized David's private property and loaded it into the back of the pickup truck he came in. Another PSP car arrived and Cpl Brown got out and aided Smith in taking David's private property.

Plaintiff was placed in the Huntingdon County prison. On June 2, 1998, George Zanic, ("Zanic"), was appointed to represent Plaintiff, but Zanic refused to talk to Plaintiff's family and would not come to see Plaintiff when his office is only two blocks from the prison. On June 9, 1998, a preliminary hearing was held and Zanic did not show up. The hearing officer held Plaintiff over for a full board hearing while denying Plaintiff due process to have a preliminary hearing while lying to Plaintiff that if he signed a paper he could have the next hearing in two weeks. Plaintiff was deliberately deceived into signing a waiver and then denied the preliminary hearing. Zanic had not asked for a continuance or anything in Plaintiff's behalf, thereby abandoning Plaintiff without legal representation which caused Plaintiff to be denied due process and be taken advantage of by the PBPP hearing officer.

On June 24, 1998, Smith transported Plaintiff to the State Correctional Institution at Smithfield, PA. At the direction of the PBPP, Plaintiff was held at SCI Smithfield until a revocation hearing could be held and Plaintiff was placed in solitary confinement in the Hole, Restricted Housing Unit, ("RHU"), Plaintiff remained in solitary confinement until his transfer on November 10, 1998.

A revocation hearing was held on August 11, 1998, at which Smith committed perjury, presented documents as evidence while representing them to be something they were not which was a violation of state law and a violation of Plaintiff's due process rights. Smith and the PBPP supplied no information or list of witnesses against Plaintiff so Plaintiff could be properly represented and the withholding of names and using their hearsay statements as evidence against Plaintiff without being able to cross examine them violated Plaintiff's right to due process.

Plaintiff was further denied due process when by some odd reason his habeas corpus petition came active in District Court while Plaintiff was locked away in solitary confinement and being denied access to all legal material. Plaintiff was pro se on the habeas corpus matter because he could not afford an attorney, so Plaintiff should have been served with all papers that were filed into the District Court. Defendant Stewart filed papers into the District Court in the habeas corpus petition **without serving Plaintiff.** Plaintiff discovered this by chance when a letter from the District Court came to him and mentioned the filings by Stewart. Plaintiff, not knowing what Stewart had filed, filed a Motion to Compel for Stewart to have to serve him with all court filings so Plaintiff could respond. As part of a conspiracy to submarine Plaintiff's habeas corpus action, Judge Caldwell denied Plaintiff's Motion To Compel, thereby giving Stewart carte blanche to file anything he wanted without serving Plaintiff which caused a denial of due process where Plaintiff could not respond to anything and altered the balance of justice so Plaintiff could not get a fair hearing.

While in the Hole at Smithfield in solitary confinement, Plaintiff suffered from

dizziness, sweating and severe chest pains and numbness in the left arm. Plaintiff's

family had a history of heart disease. Plaintiff, believing he was havin a heart attack,

asked the guard for medical help. The guard left and came back about an hour later

and pushed a crumbled up piece of toilet paper under the door and said there were

4 tums in it and Plaintiff should eat them, keep quiet and go to sleep. The next day

Plaintiff was taken to the dentist for an exam and the doctor said he wanted to see

the Plaintiff about his cholesterol level before he went back to the block. Plaintiff

told him what had happened the previous evening and the doctor placed Plaintiff

in the hospital.

Plaintiff's wife protested the inadiquate care given during the initial incident

and why it took so long to get medical care. Plaintiff was returned to the Hole and

given nitro glycerin. Sharon Burke, ("Burke"), came to the Plaintiff in the Hole and

ordered Plaintiff to write a letter to his wife telling her he was being well taken care of.

Plaintiff said that was not true and Burke's response was "You didn't die, did you."

The fact Plaintiff did not die was no excuse to deny critical medical care in violation

of Plaintiff's Constitutional rights.

Plaintiff fell on a wet floor and was injuried at SCI Waynesburg when the

floor was wet mopped and no wet floor signs were place out to warn anyone.

Plaintiff's Constitutional rights were violated when he was held in excess of the

maximum sentence of seven years because the County Prison time was not calculated

properly by the Department of Corrections, ("DOC").

Plaintiff's Constitutional rights were violated under the Fourth, Eighth, and

Fourteenth Amendments. The PBPP defendants violated their own regulations

and Statutes governing them including 61 P.S. ss 331.27, because they had no authority to conduct a warrantless forced entry search on the locked private residence of a law abiding citizen, seize his property and then use the seized property as evidence to justify the illegal seizure of the Plaintiff in violation of his Fourth Amendment rights concerning the seizure of his person, and the Fourteenth Amendment right to due process that was denied from the beginning.

The conspiratorial acts of the Defendants violated Plaintiff's Constitutional rights and violated the RICO Statutes by the fraudulent conduct by wire and mail which has caused the Plaintiff's business to be destroyed.

Plaintiff had been on Parole for 4 years without incident until a PBPP agent, Charles Giornesto, aka Casey Giornesto who is also a gun dealer filed a known false report with the sole intent to further the conspiracy to steal David's valuable antique and collectible firearms so he could have them forfeited and then buy them cheaply for resale with the profits split among the conspirators.

Within a couple weeks after David filed a lawsuit for the violation of his Fourth and Fourteenth Amendment rights, Defendant Giornesto was fired by the PBPP. Subsequently, David's lawsuit was settled out of court and all of David's illegally seized property was returned to him.

The actions of the Defendants under color of state law has violated well established Constitutional and Statutory rights of the Plaintiff by the illegal seizure of the Plaintiff in violation of the Fourth Amendment and incarceration in violation of the Fourteenth Amendment by denying him due process.

### III.    **JURISDICTION**

The U.S District Court has jurisdiction over Plaintiff's claims of violations of Plaintiff's federal and state Constitution rights under color of law as provided in 28 U.S.C.S. ss1343, among others, granting District Courts original jurisdiction over civil actions to redress any deprivation under color of law of any right, privilege or immunity secured by the Constitution of the United States.

### IV.    **PARTIES**

1.    Gail Galloway, ("Plaintiff"), is an adult citizen of the United States and resides at R.D.#1, Box 30, Petersburg, PA  16669.  Plaintiff initiates this lawsuit for violations of his civil rights and Constitutional rights within the meaning of the Constitutions of the United States and Pennsylvania as well as violations of federal and state laws in denying Plaintiff due process of law.

2.    Defendant Joseph Smith, ("Smith"), is an adult individual who is an agent of the PBPP and is being sued in his individual capacity for actions committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

3.    Defendant Daniel Roberts, ("Roberts"),is an adult and was the manager for the PBPP and is being sued individually for actions committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

4.    Defendant George Johnson, ("Johnson"), is an adult and was a supervisor for the PBPP and is being sued individually for actions committed against Plaintiff under

color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

5.     Defendant Charles Giornesto, aka Casey Giornesto, ("Giornesto"), is an adult and was an agent of the PBPP and is being sued individually for actions committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

6.     Defendant Robert B. Stewart III is an adult and is the District Attorney of Huntingdon County and is being sued individually for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

7.     Defendant Arthur Thomas, ("Thomas"), is an adult and is counsel for the PBPP and is being sued individually for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

8.     Defendant K. Scott Roy, ("Roy"), is an adult and is counsel for the PBPP and is being sued individually for acts committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

9.     Defendant Thomas Ridge, ("Ridge"), is an adult and was the Governor of Pennsylvania and is being sued individually for acts committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania,

11

10.     Defendant William Ward, ("Ward"), is an adult and is the charman of the PBPP and is being sued individually for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

11.     Defendant Sharon Burke, ("Burke"), is an adult and is being sued individually for acts committed against Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

12.     Defendant Fred Jacobs, ("Jacobs") is an adult and was a hearing examiner for the PBPP and is being sued individually for acts committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

13.     Defendant John Doe, ("Doe"), is an adult and is a corrections officer with the Pennsylvania Department of Corrections, ("DOC"),  and is being sued individually for acts committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

14.     Defendant Neil Mechlin, ("Mechlin"), is an adult and is Superintendant of SCI Waynesburg, PA and is being sued individually for acts committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

15.     Defendant James Morgan, ("Morgan"), is an adult and is the

Superintendant of SCI Smithfield, PA and is being sued individually for actions committed against the Plaintiff under color of state law, thereby depriving Plaintiff of rights secured by the United States Constitution and the laws of the United States and Pennsylvania.

## V.    STATEMENT OF FACTS

A.    Defendant Smith, an agent of the PBPP did on June 1, 1998, come to the residence of the Plaintiff and demanded to search David's room under the guise that it had been reported that David had inquired about buying a .50 caliber rifle for Plaintiff for his birthday.  Smith was part of a conspiracy to deprive Plaintiff of secured Constitutional rights and Smith knew this was not true and was not probable cause or even reasonable suspicion to believe that Plaintiff had committed any parole violation. Smith would have known from the file that Plaintiff's birthday was 3 months away and even if David had inquired about anything unknown to Plaintiff, it was not grounds for reasonable suspicion that Plaintiff had done anything wrong which is required by law before any search can be conducted.  Smith knew he had no authority over any person not under the direct supervision of the PBPP.  Defendant Smith arrived at Plaintiff's residence in a pickup truck and came up to the side porch where Plaintiff was sitting with his 5 year old grandson.

1.    Defendant Smith demanded to search David's room.  Plaintiff asked Smith for a search warrant because David had a private room that was locked and no one else had access to or common authority over.  Smith admitted he did not have a search warrant.  Plaintiff asked where he got such a story or who supposedly

13

filed the report and Smith refused to say who filed the report when Plaintiff stated there

was no truth to it.

2.    Defendant Smith refused six different times to allow Plaintiff to

call David at work to come home if Smith specifically wanted to search David's private

room.

3.    By David having his door locked, he exhibited an expectation

of privacy that society would accept as reasonable.

4.    Defendant Smith was acting as part of a conspiracy on the

known false report filed by PBPP agent Defendant Giornesto who also operated a

gun dealership near Saxton, PA.  Smith ordered Plaintiff to take him directly to David's

room.  Smith had no search warrant, no probable cause and no reasonable suspicion to

believe Plaintiff had done anything wrong or committed any violation of the parole he

had been on for four (4) years continuously without incident.

5.    Smith conducted no investigation to confirm anything he was

claiming about the so-called report of an inquiry by David into purchasing a .50 caliber

rifle as required.  Smith was knowingly part of a conspiracy to illegally seize Plaintiff.

6.    Smith made no attempt to search anywhere in the house that

Plaintiff had access to or common authority over.  Smith ordered Plaintiff to take him

directly to David's room at the other end of the long house.

7.    Upon arriving at David's private room, Smith ordered Plaintiff to

open the door, Plaintiff tried it and it was locked as Plaintiff had stated.  Smith became

aggressive and again ordered Plaintiff to get the door open.  Plaintiff explained he did not

have a key to the room and should call David at work to come home if he wanted to

look in his room, for which David would have required a search warrant since he was doing nothing wrong and Smith had no authority over him. Smith became agitated and his voice became harsh and demanding and again ordered Plaintiff to "GET THE DOOR OPEN." Then Smith moved his hand back along his side and exposed a handgun with his hand close to the grip. The shooting death of an unarmed parolee in his home several months before flashed into Plaintiff's mind. Plaintiff, in fear of his life, forcibly opened David's locked door causing damage to the lock and physical damage to the wood of the door.

8.      Defendant Smith did not do any investigation to see if David had a concealed weapons permit issued by the Sheriff to his home address. David was not an offender as described by law and Smith had no authority over him.

9.      After forcing a parolee to commit a criminal act of burglary to gain access to a private individual's room, Smith opened David's closet doors and entered and then seized a gun David had on the top shelf of his closed closet that he had a permit to carry. Smith then found a key in the closet and physically opened a locked large solid wooden cabinet inside David's closet and seized the contents of antique and collector firearms.

10.      Defendant Smith knew he was violating the law by conducting a warrantless search and was violating the state law governing parole agents, specifically 61 P.S. ss331.27a(b) which stated in no uncertain terms: "Nothing in this section shall be construed to permit searches and seizures in violation of the Constitution of the United States or Section 8 of Article 1 of the Pennsylvania Constitution."

11.     The criminal acts perpetrated by Defendant Smith violated David's Constitutional rights and the results of the illegal breakin cause the illegal physical seizure of Plaintiff in violation of Plaintiff's Fourth amendment rights against unreasonable seizures.

12.     It was obvious that the whole thing was a setup in furtherance of the conspiracy of the Defendants to gain access to David's valuable collection for their own personal use because the seizure of David's property was done with shopping list precision.  Had this been anything but a farce as part of a conspiracy which resulted in the illegal seizure of the Plaintiff and taking him to jail, the seizure of David's property would have been handled differently if it were legal.  Specific items were taken that were not weapons or firearms, while part of a knife collection cosisting of two large bayonet knives were left on David's bed and two loaded rifle magizines and three other rifle magazines were left in the bottom of the wooden cabinet inside David's closet.

13.     Defendant Smith conspired with the other Defendants to physically seize Plaintiff and deprive Plaintiff of his Constitutional rights by knowingly committing a fraudulently based warrantless search into an area that was locked and Plaintiff had no access to and no authority over.

14.     After illegally seizing Plaintiff, Smith became involved in a cover-up in furtherance of the conspiracy to deprive Plaintiff of his Constitutional rights against unreasonable seizure and Plaintiff's rights to due process.  Smith knew Plaintiff was not in possession of any contraband which would violate Plaintiff's parole, but by violating the law by the illegal breakin of David's room and the violation of David's Fourth Amendment rights, Smith used this illegal incident perpetrated by himself

16

in furtherance of the conspiracy to deprive Plaintiff of his freedom and the seizure

of the Plaintiff and incarceration for 15 1/2 months violated Plaintiff's rights against

the illegal physical seizure of Plaintiff.

        15.     In furtherance of the conspiracy and to deny Plaintiff due

process of law, Smith maliciously committed perjury on August 11, 1998 in violation

of 18 Pa. C.S. ss4902 and ss4903 by testifying to what he knew was not true.  Smith

testified that Plaintiff had purchased a rifle within about the last month knowing it to be

false  and then Smith violated 18 Pa. C.S. ss4910(2) by knowing misrepresenting a BATF

form and placing it into evidence as an exhibit to prove Plaintiff had purchased a rifle

and to discredit the sworn testimony of David.

        16.     Defendant Smith used the BATF form to back up his perjured

testimony and falsely presented the form to be something it was not in order to deny

Plaintiff a fair hearing and to deny Plaintiff due process by the presenting of known

falsified evidence.  Plaintiff's name was only on the BATF form where it was written in

by the PBPP about who they were checking on and not who the purchaser was.  In

fact, the BATF form was clearly marked on the front by the BATF that no check could be

done because the serial number was wrong and needed to be rechecked and the form

resubmitted for a check to be made.

        17.     By misrepresenting the BATF form and presenting it as evidence

to be something it was not was a violation of 18 Pa. C.S.4911(a)(2) and (b) since Smith

used the known false document to defraud the hearing examiner and cause injury to the

Plaintiff by denying him due process of law.

18.    Defendant Smith violated the law with known false statements and false papers in violation of 18 Pa. C.S. ss4904(d)(1)(2)(3)(e) pertaining to unsworn falsification to authorities, violation of 18 Pa. C.S. ss4906(b)(1) pertaining to false reports to law enforcement authorities, violation of 18 Pa. C.S. ss4910(2) pertaining to tampering with or fabricating physical evidence with the report and violation of 18 Pa. C.S. ss4911(a)(2) pertaining to tampering with public records or information.  All of these illegal acts by Smith denied Plaintiff his Fourteenth Amendment right to due process because of known perjury and known falsification of records and tampering with evidence.

19.    Defendant Smith in furtherance of the conspiracy and cover-up deliberately withheld vital information from Plaintiff until the moment of the revocation hearing so Plaintiff could not rebut any of the false or perjured testimony, thereby denying Plaintiff due process of law.

20.    Defendant Smith presented hearsay testimony that Plaintiff could not cross examine in violation of Plaintiff's right to due process and to face his accuser.

21.    Defendant Smith's search was illegal and was the basis for the illegal physical seizure of the Plaintiff and the search was deemed to have been illegal and the seizure of David's property illegal when David filed a federal lawsuit which resulted in his illegally seized property being returned to him.  Therefore, the illegal physical seizure of Plaintiff based on the illegal seizure of David's property that Plaintiff had no control over  was a violation of Plaintiff's Fourth Amendment right against his unreasonable physical seisure and subsequent denial of due process.

B.    Defendant Daniel Roberts was the District Supervisor of the PBPP at the Altoona, PA office and acted under color of law and in the furtherance of the conspiracy to deprive Plaintiff of his Constitutional rights by authorizing a warrantless search and seizure based on a know false report by co-conspirator Giornesto when he knew David was not subject to PBPP authority.  Roberts then became involved in a conspiracy to cover-up the illegal conduct of his agents and the illegal physical seizure of Plaintiff for no just cause.

1.    Defendant Roberts knew or should have known that no one in the PSP or PBPP had any authority over David to justify a warrantless physical breakin into David's private locked residence.

2.    Defendant Roberts was responsible for the direct supervision of the parole agents and supervisors working in his office and was directly responsible for their conduct and training.

3.    Defendant Roberts knew or should have known that it was a violation of Constitutional rights to order a warrantless forced entry into the residence of a private citizen and the seizure of their property to be used as the basis to illegally conduct the physical seizure of the Plaintiff in violation of his Fourth Amendment rights against unreasonable seizure.

4.    Defendant Roberts knew the state laws and Statutes governing the conduct of parole agents, especially 61 P.S. 331.27 which state that no search and no seizure can be made in violation of the Fourth Amendment.

5.    Defendant Robertws knew the conduct of Defendants Smith,

Giornesto, and George Johnson and himself being a co-conspirator, approved of their conduct, condoned it and turned a blind eye to the violations of the laws and statutes and the violations of Plaintiff's protection against unreasonable seizure and the subsequent violations of Plaintiff's right to due process by the cover-up of the violations of Plaintiff's basic Constitutional rights.

C.    Defendant George Johnson was a parole supervisor for the PBPP and acted under color of law and in furtherance of the conspiracy by acting on known false information supplied by Giornesto to conduct a general warrantless search on a private individual that the PBPP had no authority over.

1.    Defendant Johnson in furtherance of the conspiracy attempted to cover-up the false report and illegal conduct of the co-conspirators in order to deprive Plaintiff of his protected liberty interest and basic Constitutional protection from unreasonable seizure and Plaintiff's rights to due process.

2.    Defendant knew or should have known the laws and statutes governing the PBPP and the extent of their authority over private law abiding citizens who are not under their supervision.  Johnson knew it was a violation of due process to fabricate a parole violation and seize Plaintiff in violation of his Constitutional rights under the Fourth Amendment against unreasonable seizure.

3.    Defendant Johnson, due to his position as parole supervisor was directly responsible for the training and supervision of the parole agent co-defendants and responsible for their conduct and actions and became a willing participant in the conspiracy to cover-up the illegal actions of his agents in the warrantless search of David's private residence and the unreasonable seizure of Plaintiff

in violation of Plaintiff's Constitutional rights against unreasonable seizure.

    4.  Defendant Johnson knew he had no authority over David as defined by Statute, but allowed the warrantless search to be conducted and the illegal seizure of David's property to be used as a basis to physically seize the Plaintiff and then conspire to falsify evidence that denied Plaintiff due process of law.

    D.  Defendant Charles Giornesto was an agent of the PBPP and had a long history as a gun dealer and was involved in the conspiracy to conduct a warrantless search on the residence of a private citizen by falsifying a report so an illegal seizure could take place and the valuable firearms forfeited so he could purchase them cheaply through his gun dealership and then sell them at market value so the proceeds could be split among the co-conspirators. Giornesto acted under color of law in filing a known false report in violation of the law knowing it would be acted upon, this being a direct violation of 18 Pa. C.S. 4904, unsworn falsification to authorities. Giornesto specifically violated 18 Pa. C.S. 4904(a)(3) when he intentionally and maliciously fabricated a story that he had been informed by Chet Stryker ("Stryker") that Plaintiff's son David had inquired about buying a .50 caliber rifle for the Plaintiff for his birthday. This deliberate and malicious lie was fabricated and reported by Giornesto with the sole intent to mislead a public servant to rely on the false report. Giornesto violated 18 Pa. C.S.ss4906(b)(1) when he filed a false report to law enforcement authorities of an incident he knew **did not** occur. Giornesto's illegal acts, under color of law caused Plaintiff to be illegally seized and incarcerated and lose his protected liberty interest in violation of Plaintiff's Fourth Amendment protection from unreasonable physical seizure.

1.      Defendant Gornesto fabricated the known false report with the assistance of Johnson and Smith to conduct a general warrantless search upon the residence of David who was not under the authority of the PBPP.  This was done solely to get their hands on David's valuable collection and the only way to justify the theft of David's collection was to conspire to physically seize Plaintiff and fabricate a case of a parole violation against him in order to be able to forfeit the collection so they could take permanent possession of it.

2.      Defendant Giornesto fabricated the false report to overcome the reasonable suspicion requirement to conduct a warrantless search on Plaintiff's living quarters which was a ruse to gain access to the house so a general warrantless search could be performed on the private residence of David and illegally take possession of his valuable collection.

3.      Defendant Giornesto, a known gun dealer of questionable reputation, knew the value of the collectible guns owned by David and under the guise of being destroyed, as stated by Roberts, the co-conspirators would be able to keep what they wanted, split up the collection or sell it for their own personal gain.

4.      Defendant Gironesto knew when he filed the report it was false and in violation of state laws and would result in the Plaintiff being physically seized in violation of his Fourth Amendment protection against unreasonable seizure.

5.      Defendant Giornesto knew that none of the co-conspirators had any authority over David and used Plaintiff's parole status as  a stepping stone to launch the warrantless forced entry into David's private room that resulted in the

Plaintiff being physically seized in violation of Plaintiff's Fourth Amendment protection against unreasonable physical seizure.

      6.    Defendant Giornesto knew his conspiratorial actions violated PBPP regulations, state and federal law as well as Plaintiff's Fourth and Fourteenth Amendment protections.

      E.    Defendant Robert B. Stewart conspired to deprive Plaintiff of due process protection of the Fourteenth Amendment when he conspired to have Plaintiff placed in a state correctional facility in solitary confinement when his habeas corpus petition became active in the District Court in order to deny Plaintiff due process of law.

      1.    Defendant Stewart was looking out for the interests of Huntingdon County and not in the interests of justice when he submarined Plaintiff's habeas corpus petitions and to violate Plaintiff's rights to due process of law.

      2.    Plaintiff was denied due process when his habeas corpus petition was dismissed without allowing Plaintiff who was pro se to receive copies of what Stewart filed into the federal court by not serving a copy upon Plaintiff so Plaintiff could not respond or answer in any manner. Stewart is continuing his ways by not serving complete sets of documents he files into federal court so Plaintiff has no way to file any response. Stewart had refused to answer any of Plaintiff's interrogatories or produce any documents Plaintiff requested to prove his case against Stewart and the court allowed him to once again get away with what is a gross violation of Plaintiff's rights to due process when he cannot respond because he has never been served.

      3.    Stewart has conspired to manipulate the court for his own advantage and deny Plaintiff due process under the Fourteenth Amendment.

4.    Defendant Stewart failed to comply with a Court Order issued by Judge Caldwell on September 28, 1998, giving Stewart 20 days to comply. The ordered material was to due on October 13, 1998. Stewart failed to comply with the time limit. When Plaintiff questioned the failure to comply, the court stated they had given Stewart a 15 day "informal extension" of time without notifying Plaintiff in violation of Plaintiff's right to due process.

5.    Defendant Stewart sent a letter to Plaintiff stating that some papers had been filed with the Court and that other papers would be filed in the future, however, Plaintiff was locked away in solitary confinement in the Hole and was never served any papers that were filed into court. Plaintiff had no way to verify the content or truthfulness of any papers filed by Stewart and had no way to make and response to them when he didn't know what they were which violated Plaintiff's rights to due process.

6.    On October 27, 1998, Plaintiff filed a Motion to Compel and Comply for Stewart to serve copies of all court filings to Plaintiff who was pro se and needed to be served in order to respond and present his case to assure him due process. After another 7 days had passed and in order to deny Plaintiff access to the court and deny Plaintiff due process, the court arbitrarily denied Plaintiff's Motion to Compel, thereby giving Stewart carte blanche to file papers to the court without serving them on Plaintiff and denying Plaintiff due process of law and causing extreme prejudice to the Plaintiff's habeas corpus action in direct violation of the rules of court that the opposing party be served with anything filed into the court. Plaintiff is sure that if it

had been him filing papers into the court and not serving the opposing party, sanctions would have been asked for and granted against Plaintiff.

7.    In the Order dated November 4, 1998, denying Plaintiff's Motion to Compel and Comply with the Court Order of September 28, 1998, Stewart was given the extra days in between and another 15 day extension to comply after Stewart had already failed to comply two times with the court order. This gave Stewart a total of 60 days to comply with the original 20 day order and gave Stewart court permission to file without serving Plaintiff a copy. This caused Plaintiff extreme prejudice and denied Plaintiff his Constitutional right to due process.

8.    Plaintiff had registered his home address with Stewart so all filings could be sent to his home, copied and forwarded to Plaintiff. The new date for Stewart to file and answer to the court was November 19, 1998. Stewart did not mail the Plaintiff's copy to his registered address, but instead mailed it to SCI Smithfield on November 19, 1998 while having full knowledge that Plaintiff had been transferred to SCI Waynesburg on November 10, 1998, causing an extreme delay and Plaintiff not receiving the copy until December 3, 1998. Plaintiff, with limited access to legal material, copying and mailing drafted a response, but Judge Caldwell had ruled on December 14, 1998, deny Plaintiff's writ of habeas corpus before the court had received Plaintiff's response, thereby denying Plaintiff due process of law and access to the court. Stewart had effectively swept Plaintiff's petition for writ of habeas corpus under the rug so the true issues would never be presented and Plaintiff's Constitutional rights to due process had been trambled into the ground, and the case never heard on its true merits.

F.    Defendant Arthur Thomas is an attorney for the PBPP and has conspired with the other defendants to cover-up the illegal conduct and warrantless seizure of the Plaintiff in violation of his Fourth Amendment protection against unreasonable seizure while acting under color of law.

1.    Defendant Thomas through his conspiratorial actions has caused Plaintiff to lose his protected liberty interest and be unjustly and unconstitutionally incarcerated for a fraudulent parole violation that never existed.  Plaintiff served a total of 15 1/2 months with 5 months being in solitary confinement in the Hole as directed by the defendants.

2.    Defendant Thomas, while continuing in the conspiracy and cover-up has abused his authority and oath as an attorney while working for the PBPP and acting under color of state law, has caused Plaintiff to lose his Constitutional rights under the Fourth Amendment when he was physically seized in an unreasonable manner, and denied his Fourteenth Amendment rights to due process by the perjured testimony and fabricated evidence.

3.    Defendant Thomas knew the law governing the actions of the PBPP and knew the illegal warrantless forced entry search of David's residence was illegal and unconstitutional and then to take the illegally seized property and use it as evidence to justify the illegal seizure of the Plaintiff.  Thomas knew this violated 61 P.S. 331.27 but conspired to cover it up and protect the illegal actions of the defendants.

4.    Defenadant  Thomas being an attorney and officer of the court and sworn to uphold the Constitution could have corrected the violations of Plaintiff's Fourth Amendment protection against unreasonable seizure, but instead chose to

become a party to the conspiracy to cover-up the unlawful and unconstitutional actions of the PBPP agents and conspired to deny Plaintiff due process of law by not allowing a fair and impartial hearing as required by the Constitution to assure due process of law.

5.    Defendant Thomas in furtherance of the conspiracy approved of the unlawful conduct and abused his position under color of state law by aiding in the cover-up and turning a blind eye to the known violations of state and federal law, violations of Plaintiff's Fourth and Fourteenth Amendment rights which caused Plaintiff to lose his liberty interest with the unreasonable physical seizure and the denial of Plaintiff's right to due process.

6.    Defendant Thomas exhibited a gross deliberate indifference to Plaintiff's Constitutional rights and in furtherance of the conspiracy to cover-up the illegal seizure and protect the other conspirators he filed a Motion to Suppress the evidence Plaintiff presented to the Commonwealth Court so the truth about the illegal and unconstitutional conduct of the PBPP agents would not be known, thereby denying Plaintiff access to the court to present the truth and denying Plaintiff due process of law as guaranteed by the Fourteenth Amendment.

G.    Defendant James Morgan is the superintendant of SCI Smithfield and shoulders the responsibility of running the Institution, training staff and seeing that proper medical care is given to the inmates.

1.    Plaintiff was 50 years old with a family history of heart disease and was placed in solitary confinement in the Hole and suffered severe chest pains, pain and numbness in the left arm, severe headache, sweating, and shortness of breath.

27

2.    Plaintiff reported this to a corrections officer and the office left for what Plaintiff thought was medical assistance. When the officer returned an hour later, he slid a folded up piece of toilet paper under the doo with 4 tums in it and said to eat them, keep quiet and go to sleep. The staff exhibited a deliberate indifference toward Plaintiff's health and the condition could have been fatal for Plaintiff when left uncared for with no medical help to determine if Plaintiff's life was in danger.

3.    Defendant Morgan failed to prevent his staff from tampering with United States Mail. Plaintiff's wife purchased a word circle book at The Book Store about a mile from the institution and mailed it promptly to the Institution. It took 9 days for Plaintiff to get the book and it was delivered to the Hole dog eared and some of the had been worked in it with a pencil

4.    Plaintiff was in administrative custody in the Hole and not in disciplinary custody and while Plaintiff's habeas corpus petition was in the federal court, Plaintiff was being denied all access to legal material for four months and Plaintiff was denied meaningful access to the court in violation of his Constitutional rights and could not addequately prepare any type of legal papers.

5.    Plaintiff was further humiliated by being strip searched in front of a video camera while 4 guards watched and took movies of it.

6.    Plaintiff's wife filed a complaint about Plaintiff not receiving proper medical care and Plaintiff was ordered to write a letter to his wife saying he was not being mistreated and being well taken care of. When Plaintiff refused to lie for them, the administration retaliated against Plaintiff by refusing his established family visits on visiting day and turning Plaintiff's family away, telling them to go home and they could

not visit Plaintiff.

H.    Defendant K. Scott Roy is an attorney for the PBPP and has conspired with the others to cover up the illegal and unconstitutional activities and warrantless search on a private person who is not under their authority.  This conspiracy resulted in the wrongful incarceration of Plaintiff for 15 1/2 months and caused Plaintiff's business to be virtually distroyed.

1.    Defendant Roy through his conspiratorial actions has caused Plaintiff to lose his protected liberty interest when he was unreasonably seized in violation of his Fourth Amendment rights.

2.    Defendant Roy has continued in the conspiracy and cover-up and abused his authority and oath as an attorney while working for the PBPP and acting under color of law and has caused Plaintiff to lose his Constitutional rights under the Fourth Amendment and Fourteenth Amendment.

3.    Defendant Roy knew the PBPP had no authority over David to conduct a forced entry warrantless search and then seize private property to use as false evidence of a parole violation against Plaintiff.  Roy also knew what the laws and statutes are that govern the conduct of the PBPP and that such a search was a direct violation of 61 P.S. 331.27.

4.    Defendant Roy being an attorney and officer of the court was sworn to uphold the Constitution and could have corrected the injustice and illegal seizure of the Plaintiff when he first becamne aware of it, but chose to become part of the conspiracy to cover it up instead and became a party to the unconstitutional seizure

of the Plaintiff and the denial of due process.

      5.     Defendant Roy in furtherance of the conspiracy, approved the unlawfuol conduct and abused his power and authority underf color of law by aiding in the cover-up and condoning the unlawful actions of the other conspirators by turning a blind eye to the known violations of state and federal law in a conspiracy to deprive Plaintiff of his protected liberty interest and due process of law.

      6.     Defendant Roy exhibited a gross deliberate indifference to the Constitutional rights of the Plaintiff and was involved in a Motion to Suppress evidence Plaintiff was presenting to the Commonwealth Court so the truth about the illegal and unconstitutional conduct of the PBPP agents would be known, thereby denying Plaintiff due process of law to have truthful supporting evidence presented to a fair and impartial tribunal in support of his right to due process of law.  What were they hiding that they had to suppress a defendants evidence?

     I.     Defendant Thomas Ridge was the Governor of Pennsylvania and bears the overall responsibility for the conduct and training of officials, officers and field agents of the PBPP and the PSP and is responsible for the appointment of defendant Ward as Chairman of the PBPP.

      1.     Defendant Ridge, as chief law enforcement officer of Pennsylvania has failed in his duties and responsibilities to secure the Constitutional rights of Plaintiff after being personally informed of the violations by state agents under color of state law.  Plaintiff wrote a detailed letter to Ridge explaining the numerous violations of state and federal law and well as the Constitutional violations by the PBPP  and the PSP and Ridge refused to investigate the misconduct and turned a

blind eye to the violations.

2.    Defendant Ridge became involved in the conspiracy to deprive Plaintiff of his Constitutional rights when he first became aware of them and chose to ignore the violations of Plaintiff's Constitutional rights and cover up to deprive Plaintiff of his Fourth Amendment protection against unreasonable seizure and the Fourteenth Amendment violations of the right to due process.

3.    Defendant Ridge exhibited a gross deliberate indifference to Plaintiff's Constitutional rights when Ridge had an affirmative duty to uphold the United States Constitution and the Pennsylvania Constitution he swore to protect when he took office.  He allowed the conspiracy to continue and the illegal seizure of the Plaintiff in violation of his Fourth Amendment protection to go uncorrected and allowed Plaintiff to be denied due process of law.

J.    Defendant William Ward was appointed as Chairman of the PBPP by Defendant Ridge and has conspired to cover-up the violations of federal and state law rather than correct the violations.  Ward has misused his power under color of law to deprive Plaintiff of his Constitutional rights and due process of law.

1.    Defendant Ward knew the PBPP had conducted a warrantless forced entry into the locked residence of a private citizen they had no authority over in Violation of David's Constitutional rights.  Ward knew that it was wrong to seize the Plaintiff and use illegally obtained material that was not relevant to Plaintiff to be used as evidence against Plaintiff in a revocation hearing where Plaintiff was denied due process in order to cover-up for the illegal actions of the conspirators.

2.    Defendant Ward's continuous cover-up of his agents illegal and unconstitutional conduct in furtherance of the conspiracy has resulted in the Plaintiff being denied due process of law.

3.    Defendant Ward knew the laws and regulations that governed the conduct of the PBPP and has ignored the laws and regulations in allowing a warrantless search to take place on a private individual they had no authority over and the use of illegally seize property that Plaintiff had nothing to do with to be used as evidence against Plaintiff to justify the illegal physical seizure of Plaintiff and wrongful incarceration for 15 1/2 months.

4.    Defendant Ward failed to correct the numerous violations of the law and Constitutional rights of the Plaintiff and chose to conspire to cover-up and protect his people rather than the truth and Constitutional rights of the Plaintiff.

5.    Defendant Ward displayed a negligent deliberate indifference to the Constitutional rights of the Plaintiff and turned a blind eye to the truth and ignored the Plaintiff's unlawful seizure and incarceration and the perjured testimony and fabricated evidence that led to the denial of due process to Plaintiff.

K.    Defendant Sharon Burke is an assistant to the Superintendant at SCI Smithfield and is responsible for the conspiracy to cover-up the denial of medical care as guaranteed under the Eight Amendment of the United States Constitution and causing unwarranted excessive punishment as retaliation by refusing to allow family visits to Plaintiff for no just cause.

1.    When Plaintiff's family filed a complaint with state official that Plaintiff had been denied medical care while suffering an apparent heart attack while

locked up in solitary confinement in the Hole in administrative custody, Burke came

to Plaintif and ordered him to write a letter to his family stating that he was not being

mistreated or denied medical care. When Plaintiff refused and stated he had been denied

medical care, Burke responded by stating, "Well, you didn't die." Thereby exhibiting

a deliberate indifference fo the medical needs of the Plaintiff and signifying that a person

had to die to have been denied medical care.

        2.      As retaliation, Burke was instrumental in Plaintiff being denied

family visits which are crucial to the morale of a person locked up in solitary

confinement in the Hole for no other reason than administrative action at the request of

the PBPP and denied all contact with other people until Plaintiff got the family visits he

requested and then had taken away for no just cause.

        3.      Plaintiff could have easily died from the deliberate indifference

of the Institution personnel and no one would have known any different.

    L.      Plaintiff John Doe #1 is an unknown corrections officer at SCI Smithfield

who refused medical care to Plaintiff who believed he was having a heart attack which

there is a family history of.

        1.      Plaintiff was sitting in solitary confinement in the Hole and started

to have severe chest pains, sweating, severe headache, and pain and numbness in his

left arm. When Doe#1 came on his rounds, Plaintiff told him he thought he was having

a heart attack and needed medical care. Doe#1 left and Plaintiff assumed he had gone

for help. About an hour later, Doe#1 returned and pushed a piece of toilet paper under

the door and told Plaintiff there were 4 tums in it and Plaintiff should eat them, keep

quiet and go to sleep. Plaintiff suffered severely throughout the night and believed he was going to die.

2.      Defendant Doe#1 exhibited a deliberate indifference to the immediate medical needs of Plaintiff which could have caused Plaintiff to die. Plaintiff's blood pressure was very erratic and had gone to extremely high levels which Plaintiff had never experienced before.

M.      Defendant Neil Mechlin is the Superintendant of SCI Waynesburg and shoulders the responsibility of running the Institution, training the officers and knowing the qualifications of his medical staff

1.      Defendant Mechlin did not properly train his officers on the use of wet floor signs on hazardous floors that were waxed to a high shine and became extremely slippy when wet.

2.      Plaintiff walked out of his housing cube in block DB and immediately slipped on the wet floor, hitting his left shoulder and head on the heavy plank on the picnic style table bench when he fell. Plaintiff also hurt his back when he fell onto the floor.

3.      Plaintiff suffered an injury to his head, left shoulder and neck as well as pains in his back and insides.

4.      Plaintiff sought medical care and was told not to worry the pain would go away and Plaintiff would be sore for a few days. Nothing else was done and no tests were conducted.

5.      Plaintiff also sustained internal injuries when he fell and had blood in his stool for about two weeks. Plaintiff was told there was nothing to be concerned

about and nothing was done except take away the asperin Plaintiff was taking to thin his blood for his heart problem.

6.    Plaintiff suffered for months with the extreme pain in his left shoulder which still persists.  Plaintiff still has pain in his neck and back and suffers severe headaches.

7.    Plaintiff's back still hurts in a chronic pain.

8.    Defendant Mechlin and his medical staff exhibited a deliberate indifference to the medical care of the Plaintiff and did not conduct any tests or adequate examinations to discover the extent of any possible internal injuries.

9.    Defendant Mechlin was negligent in the supervision and training of officers who did not put out wet floor signs on the dangerous floor when it was wet mopped and failed in his supervision of the medical staff to assure proper medical care.

10.    Directly after Plaintiff fell on the wet floor, the officers put out wet floor  signs, but they were negligent for not putting the signs out before Plaintiff fell of the wet floor and injured himself.

N.    Defendant Fred Jacobs is a hearing examiner and the former Chairman of the PBPP and denied Plaintiff a fair hearing and due process of law.

1.    Defendant Jacobs refused to allow Plaintiff's attorney to tape record the hearing so he would have an accurate record of the hearing.

2.    Defendant Jacobs allowed unsubstantiated hearsay testimony that Plaintiff could not cross examine, thereby denying Plaintiff his Fourteenth Amendment right to due process.

3.    Defendant Jacobs allowed the hearing to take place while the PBPP withheld the names of crucial witnesses Plaintiff needed to show the illegal and unconstitutional conduct of the PBPP agents and the false reports they filed.  Jacobs allowed known fraudulent BATF forms to be admitted into evidence and used against Plaintiff when they were known to be falsely represented.

4.    Defendant Jacobs and/or the other conspirators were responsibility for a four (4) minute gap of testimony in the PBPP tape of the hearing which had crucial testimony to prove Smith was lying and acting as a stalking horse for police and not in his duties as an administrator for the parole system.

5.    Defendant Jacobs told Plaintiff that he could not record the revocation hearing, but that a copy of the transcript would be made available to Plaintiff for any subsequent appeal.  The hearing was held August 11, 1998 and the Plaintiff never received a copy of the transcript to aid in filing the appeal which caused extreme prejudice to Plaintiff and denied Plaintiff due process of law and the ability to file a meaningful and timely appeal and be able to make reference to testimony.  The hearing tape was not transcribed until January 2000.

6.    Defendant Jacobs knew or should have known that the conduct of the PBPP and its agents was illegal and violated the protected liberty interest and Constitutional rights of the Plaintiff as well as violating the Constitutional rights of a private law abiding innocent person and the illegal seizure of that persons lawfully owned property seized without warrant following a forced entry in his residential dwelling.

7.      Defendant Jacobs violated Plaintiff's rights to due process by allowing the admission of illegally and unconstitutionally seized property Plaintiff did not have possession of, no access to, and no control over to be admitted as evidence against Plaintiff which was not substantial evidence are required to show that Plaintiff had violated any condition of his parole.

8.      Defendant Jacobs violated Plaintiff's due process rights by admitting BATF forms to be admitted which were fraudulently represented to show Plaintiff purchased a gun and Plaintiff's name was only on the forms as the name of the person the PBPP was checking on.

9.      Defendant Jacobs was involved in the conspiracy to cover up the illegal and unconstitutional actions of the PBPP agents in a conspiracy of self preservation to protect their own employees from any claim of wrongdoing.

37

## VI.    ALLEGATIONS OF DEPRIVATIONS

(1)    All defendants herein named in this complaint are being sued individually and in their official capacity and at all times within this complaint acted under color of law to deprive Gail Galloway, the Plaintiff, of rights, privileges, immunitites, under color of any statute, regulation, rules, ordinance, custom, or usage of any state, subjects, or causes to be subject, the Plaintiff within the jurisdiction of this court, the deprivation of said rights, privileges, or immunities secured by the Constitution and laws of Pennsylvania and the United States.

(2)    Defendants  Smith, Roberts, Johnson, Giornesto, Stewart, Thomas, Roy, Ridge, Ward, Jacobs,  did at all times within this complaint and at all times within the subject  matter herein have personal knowledge and were personally involved either directly or indirectly in a civil conspiracy and as such did not correct the herein claimed violations after being brought to their attention and they were knowingly responsible for either causing or allowing the Constitutional violations when they had an affirmative obligation to follow each and every directive and command of the Pennsylvania and United States Constitutions as well as all applicable state and federal laws.  These defendants had guilty knowledge of the violations of Plaintiff's Fourth and Fourteenth Amendment rights of the United States Constitution and violation of Article 1, Section 8 of the Pennsylvania Constitution and the subsequent conspiracy to cover up the violations and the denial of due process.

(3)    Said defendants in (2) were actively involved in a civil conspiracy to deprive Plaintiff of his Constitutionally protected rights under color of law and in violation of federal law under 18 U.S.C.S. ss 241 and ss 242.

(4)    Said defendants in (2) also violated the Statutes regulating the PBPP and 61 P.S. ss 331.27 and continue to ignore the law and cover up the warrantless forced entry search and seizure in the residence of a private law abiding adult citizen and the unlawful seizure of his personal property to use as false evidence of a fabricated parole violation to incarcerate Plaintiff in violation of Plaintiff's protected liberty interest, false imprisonment, and violations of Plaintiff's Constitutional rights and a continuing denial of due process of law.  Plaintiff has suffered a substantial lose to his business, lose of consortium, and severe hardship to his family by the false imprisonment.

(5)    Defendants Burke, Mechlin, Doe #1, and Morgan have violated Plaintiff's basic rights under the Eight Amendment to medical care and have exhibited a deliberate indifference toward the health and medical needs of the Plaintiff.

## VII    CLAIMS FOR RELIEF

1.    Each defendant had an affirmative duty and obligation to follow the mandates and commands of the Pennsylvania and United States Constitutions and to assure the obligations of the Constitutions are enforce against all violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, *inter alia*.  Therefore, Plaintiff seeks compensatory and punitive damages against each defendant based on their individual and official acts, where this lawsuit is brought against each defendant in his individual  for violating Plaintiff's Constitutional rights.  Also for

becoming involved in a conspiracy to cover up the illegal and unconstitutional acts performed in an arbitrary, reckless, and callous manner in total disregard of Plaintiff's Constitutional rights and rights under federal and state law. The claimed acts perpetrated by the defendants could have been corrected promptly, but the defendants chose to deprive Plaintiff of his Constitutional rights by conspiring to cover up the illegal and unconstitutional acts.

2.    Plaintiff seeks compensatory damages for the severe financial loss to his business which resulted in lost credit ratings, loss of business from the vacuum cleaner parts and service business which Plaintiff was the only repair technician, loss of the good business name and reputation by not being able to fulfill guarantee work on equipment sold which resulted in complaints to the consumer protection agency against Plaintiff. Loss of business for the new sawmill which Plaintiff was the only qualified operator. This loss was substantial and also caused Plaintiff to be known as unreliable in performing work he had agreed to do and given starting dates. Plaintiff also seeks compensatory damages for emotional distress, loss of consortium, mental anguish, and physical injuries caused by being wrongfully taken from his family for no just cause due to the illegal and unconstitutional acts of the defendants, the wrongful imprisonment, and being confined in the Hole in solitary confinement for almost five (5) months. Plaintiff also seeks compensatory damages for pain and suffering caused by physical injuries sustained in the fall at Waynesburg and the stress and anguish of the heart problem brought on by the acts of the defendants.

3.    Plaintiff seeks punitive damages as punishment for each defendant for their arbitrary and capricious disregard for Plaintiff's Constitutionally protected rights

as well as the violations of federal and state law and the conspiracy to cover up the illegal
activities of the defendants which has caused a continuing harm to Plaintiff, his business,
and his health and well being.

## VIII  RELIEF SOUGHT

1.     Plaintiff seeks from defendant Joseph Smith, compensatory damages in
excess of $50,000.00 and punitive damages in excess of $50,000.00.

2.     Plaintiff seeks from defendant Daniel Roberts, compensatory damages in
excess of $50,000.00 and punitive damages in excess of $50,000.00.

3.     Plaintiff seeks from defendant George Johnson, compensatory damages
in excess of $50,000.00 and punitive damages in excess of $50,000.00.

4.     Plaintiff seeks from defendant Charles Giornesto, compensatory damages
in excess of $50,000.00  and punitive damages in excess of $50,000.00.

5.     Plaintiff seeks from defendant Robert B Stewart III, compensatory
damages in excess of $50,000.00 and punitive damages in excess of $50,000.00.

6.     Plaintiff seeks from defendant Arthur Thomas, compensatory damages
in excess of $50,000.00  and punitive damages in excess of $50,000.00.

7.     Plaintiff seeks from defendant K. Scott Roy, compensatory damages in
excess of $50,000.00 and punitive damages in excess of $50,000.00.

8.     Plaintiff seeks from defendant Thomas Ridge, compensatory damages
in excess of $50,000.00 and punitive damages in excess of $50,000.00

9.     Plaintiff seeks from defendant William Ward, compensatory damages
in excess of $50,000.00 and punitive damages in excess of $50,000.00.

41

10.    Plaintiff seeks from defendant Sharon Burke, compensatory damages in excess of $50,000.00 and punitive damages in excess of $50,000.00.

11.    Plaintiff seeks from defendant Fred Jacobs, compensatory damages in excess of $50,000.00 and punitive damages in excess of $50,000.00

12.    Plaintiff seeks from defendant John Doe #1, compensatory damages in excess of $50,000.00 and punitive damages in excess of $50,000.00.

13.    Plaintiff seeks from defendant Neil Mechlin, compensatory damages in excess of $50,000.00 and punitive damages in excess of $50,000.00

14.    Plaintiff seeks from defendant James Morgan, compensatory damages in excess of $50,000.00 and punitive damages in excess of $50,000.00.

18.    Plaintiff asks the Court to award him attorney fees and costs under 42 U.S.C.A. Section 1988.

19.    Plaintiff demands a jury trial on all issues of his complaint.

20.    Plaintiff asks the Court to tax the defendants of this case with any and all costs of this case, any and all costs and fees to the Plaintiff, any and all witness fees and costs including expert witnesses, and any and all other costs or fees which might come about within this case.

21.    Plaintiff reserves the right to amend this complaint and/or add defendants who are unknown at present and to retain private counsel to aid in the prosecution of this case.

22.    Plaintiff asks the Court to award any other relief that the Court may deem just and equitable.

42

## IX      <u>VERIFICATION</u>

I, Gail Galloway, assert under penalty of perjury, that to the best of my knowledge and belief, the foregoing complaint is true and correct except for those matters upon which I rely on information and belief, and to those matters, I believe them to be true and correct.

This 13th day of August, 2002.

Respectfully Submitted,

Gail Galloway
Plaintiff, *pro se*
R.D.#1, Box 30
Petersburg, PA 16669
(814) 669-9164

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served a true and correct copy of the foregoing document upon the persons named below by First Class United States Mail at the address stated, which is the last known address of each.

Peter McManamon
200 Penn Street
Huntingdon, PA  16652
(Counsel for Defendant Stewart)

Calvin R. Koons
Office of Attorney General
15th Floor, Strawberry Sq.
Harrisburg, PA  17120

Gail Galloway
R.D.#1, Box 30
Petersburg, PA  16669
814-669-9164

Date:  August 14, 2002