**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GAIL GALLOWAY,      :
    **Plaintiff**      :    **No. 1:00-CV-00649**
            :
    **v.**      :    **(Judge Rambo)**
            :
**PENNSYLVANIA BOARD OF**      :    **JURY TRIAL DEMANDED**
**PROBATION AND PAROLE,**      :
*et al.,*      :
    **Defendants**      :

**FILED**
HARRISBURG, PA

SEP 2 6 2002

MARY E. D'ANDREA, CLERK
Per _____
— Deputy Clerk

## PLAINTIFF'S RESPONSE TO "BRIEF IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS BOARD, SMITH, ROBERTS, JOHNSON, THOMAS, ROY, RIDGE, WARD, BURKS, MENDELSOHN, JACOBS, MECHLING, AND MORGAN

      Gail Galloway, ("Plaintiff"), is suing each defendant in their individual capacity for violations of Plaintiff's Constitutional rights under color of law. The defendants were acting under color of law because they were cloaked by their official jobs which allowed them to abuse their authority and be in a position to violate Plaintiff's Constitutional rights. The defendants are not entitled to immunity when performing government functions when that official's conduct violated clearly established Statutory and Constitutional rights of which any reasonable person would have known.

      When deciding a motion to dismiss for failure to state a cognizable claim, the Court must accept plaintiff's factual claims and draw from them all reasonable inferences favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237 (1974); *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957). Therefore, the Court should not dismiss a complaint for failure to state a claim unless it is convinced beyond a reasonable doubt

that the plaintiff can prove no set of facts to support a claim which would permit

recovery. *Conley, supra; Columbia Pictures Industries, Inc. v. Redd Horne, Inc.,*

749 F.2d 154, 161 (3rd Cir. 1984). "The Federal Rules of Civil Procedure do not require

a claimant to set out in detail the facts upon which he bases his claim. To the contrary,

all the Rules require is **'a short and plain statement of the claim'** that will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Conley v. Gibson,* 355 U.S. 41, 47 (1957) emphasis added. Federal Rules of Civil

Procedure, Rule 8 (a)(2).

The collective group of defendants as named above are, ("Commonwealth

Defendants, or Defendants") in all parts of this response. The Defendants are trying

to pull a snow job on this Court by stating things they know are **not true** in their brief.

Defendant's claim "Galloway's home was searched because of a tip that he possessed

weapons in violation of his parole." There was no **tip** as stated, but a known false

report filed as part of a conspiracy to seize Plaintiff. Defendants also claim that Plaintiff

made a "claim that the forfeiture proceedings violated his Fourteenth Amendment rights

to due process." This is not true. The forfeiture proceedings involved Plaintiff's son

and not Plaintiff. For the record, Plaintiff's son filed a federal lawsuit for the violation of

his Constitutional rights in the illegal seizure which he won and his illegally seized

property was returned to him. If the conspiratorial actions of the Defendants were not

illegal, he would not have had his property returned.

The United States Supreme Court has made the issue clear.

"The Fourth Amendment provides that: 'The right of the people to be
secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated...'  In Bell v. Hood, 327 U.S. 678 (1946),
we reserved the question whether violations of that command by a federal agent acting
under color of his authority gives rise to a cause of action for damages consequent upon
his unconstitutional conduct.  Today we hold that it does."  *Bivens v. Six Unknown Fed.
Narcotics Agents,* 403 U.S. 388 (1971).

Mr. Justice Harlan in concurring with the majority decision of the United States

Supreme Court stated:

> "I am of the opinion that federal courts do have the power to award
> damages for violations of 'constitutionally protected interests' and I agree with
> the Court that a traditional judicial remedy such as damages is appropriate to
> the vindication of the personal interests protected by the Fourth Amendment."
> ..."Thus the interest which Bivens claims - to be free from official conduct in
> contravention of the Fourth Amendment - is a federally protected interest."

*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971).

> "(i) the Bivens remedy, being recoverable against individuals, is a more effective
> deterrent...(ii) punitive damages may be awarded in a Bivens suit..." "Bivens established
> that the victims of a constitutional violation...have a right to recover damages..." *Carlson
> v. Green,* 446 U.S. 14 (1980).


## ARGUMENT


The named defendants are not immune when their conduct violates clearly

established Statutory and Constitutional rights of which a reasonable person would have

been aware.  The specific language of 42 U.S.C. 1983 "creates a species of tort

liability that on its face admits of no immunities." *Imler v. Pachtman,* 424 U.S. 409, 417.

Its language is absolute and unqualified, and no mention is made of any privileges,

immunities, or defenses that may be asserted. *Owen v, City of Independence,* 445 U.S.

622 (1980).

*Martinez v. California,* 444 U.S. 277 (1980) held that a State cannot immunize

an official from liability for injuries compensable under federal law and conduct of

persons acting under color of state law which is wrongful under 42 U.S.C. 1983.

Title 42 U.S.C. 1983 provides in relevant part:

"Every person who, under color of law of any statute, ordinance, regulation, custom, or usage, of any state..., subjects, or causes to be subjected, any citizen of the United States or person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The suit is being brought against state officers in their individual capacity because

they were only able to act under color of law because of their official capacity.

A clear reading of the language of the Constitution is affirmed in *South Carolina*

*v. United States,* 199 U.S. 437, 448 and states:

**"The Constitution is a written instrument. As such, its meaning does**

**not alter. That which it meant when it was adopted, it means now."** emphasis added.

A cause of action is clearly provided by 42 U.S.C. 1983, which in terms

authorizes suits to redress deprivation of rights secured by the laws of the United States.

*Boyd v U.S.,* 116 U.S. 28 asserts that the Court has a duty to protect against any

encroachment of a Constitutionally secured liberty; and *Byars v. U.S.,* 273 U.S. 28 asserts

that rights must be interpreted in favor of the citizen.

The infringement upon Plaintiff's **liberty interests** was a violation of the Fourth

and Fourteenth Amendments which are well established rights.  Plaintiff was subjected to

an illegal and unconstitutional search which resulted in Plaintiff being forced  under

color of law to commit a criminal act of burglary by defendant Joseph Smith, ("Smith"),

to forcibly enter, without warrant, the private locked residence of a law abiding private

adult citizen, illegally seize that persons property from a locked cabinet located inside

his closed closet and then use the illegally seized property as evidence to establish a

bogus parole violation and incarcerate Plaintiff with loss of liberty for 15 1/2 months,

with almost 5 months being spent in the Hole in solitary confinement when Plaintiff

had done nothing wrong.  "**Due process protections apply when government action**

**<u>deprives a person of a liberty</u> or property interest.**"  *Board of Regents v. Roth,* 408 U.S.

564, 577 (1972).  "The substantive aspect of the due process clause bars certain

arbitrary, wrongful government actions regardless of the fairness of the procedure used

to implement them."  *Daniels v. Williams,* 474 U.S. 327 (1996).  The "Procedural

aspect of the due process clause guarantees fair procedure for the **deprivation of a**

**constitutionally protected interest in life, liberty,** or property."  *Zinerman v. Burch,*

494 U.S. 113 (1990).  **"When an official acts in behalf of the state and acts are illegal**

**or unconstitutional, they are not entitled to the states immunity."**  *Hafer v. Melo,*

502 U.S. 21 (1991) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 234 (1974)).  "The

threshold inquiry in any due process analysis is whether there exists any identifiable

property or **liberty interest** at issue."  *Com. v. Mountain,* 711 A.2d 473.  <u>Plaintiff</u>

<u>had a definite liberty interest at issue.</u>

A State official seeking to enforce in the name of a State an unconstitutional

act "comes into conflict with the superior authority of that Constitution, and he is in that

case stripped of his official or representative character and is subjected in his person to

the consequences of his individual conduct.  The state has no power to impart to him

any immunity from responsibility to the supreme authority of the United States."

*Ex parte Young,* 209 U.S. 123, 159-160.  "Where federally protected rights have been

invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies as to grant the necessary relief." *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) citing *Bell v. Hood,* 327 U.S. 678, 684 (1946).

The defendants are liable to Plaintiff because they acted under color of state law and acted in bad faith with malicious purpose and a manner exhibiting a wanton and willful disregard of Plaintiff's rights, liberty, or safety.

"Tort defendants, including those sued under Section 1983 are 'responsible for the natural consequences of [their] actions." *Malley v. Briggs,* 475 U.S. 335.

The illegal and unconstitutional seizure of Plaintiff was a direct result of a conspiracy between the defendants which began with the known false report of parole agent Giornesto which the other defendants knew was not true and culminated with the conspiracy of the defendant to cover-up the illegal and unconstitutional seizure by filing false reports, perjury, and other violations of statutory law and the Constitutional rights of the Plaintiff.

Defendant Giornesto violated the law by filing a known false report. The conspiracy among defendants Smith, Johnson, and Roberts to conduct a warrantless seizure took root. Plaintiff had been on parole for almost four (4) years without incident, was employed in the same job since being paroled, and was not committing any violation of his parole.

Defendant Smith did not have a search warrant or probable cause or even reasonable suspicion that Plaintiff had violated his parole outside of the conspiracy and

~ 6 ~

known false report. "Constitutional rights of parolee are indistinguishable from those of

probationer. Probationer's home, like anyone else's is protected by the Fourth

Amendment's requirement that searches be reasonable." *Com. v. Williams*, 629 A.2d

1031, 547 Pa 577 (1997).

    In confirming Plaintiff's rights, the Pennsylvania Supreme Court states:

> "Overriding function of the <u>Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the state</u>; security afforded to personal privacy against arbitrary intrusion by the police is the core of the Fourth Amendment and basic to free society. U.S.C.A. Const Amend. 4." and "Search and <u>seizure is not reasonable</u> unless it is conducted pursuant to a search warrant issued by a magistrate upon probable cause, <u>which exists when officer has knowledge of sufficient facts and circumstances gained through trustworthy information</u> to warrant prudent man to believe that the <u>person seized has committed a crime</u>. Const. Art. 1 ss 8." *Com. v. Kohl*, 615 A.2d 308 (Pa 1992) emphasis added.

    The entire pretext of coming to Plaintiff's residence was not probable cause and

not reasonable suspicion, but, rather, based solely on the known false report which was

the basis of the conspiracy. When defendant Smith entered Plaintiff's home on June 1,

1998, he found no evidence of a parole violation in Plaintiff's living quarters or areas of

common authority, **that is where the reasonableness of the search ended**.

    When defendant Smith ordered Plaintiff to get the locked door open to Plaintiff's

adult son's room and displayed a gun in a coercive manner, defendant Smith exceeded

<u>his authority</u> and entered a realm that required a search warrant based on probable cause.

Defendant Smith far exceeded reasonableness and his authority when he forced Plaintiff

through coercive tactics and potential threat on Plaintiff's life to get the locked door

open to David Galloway's, ("David") room. Plaintiff had asked defendant Smith a total

of six (6) times to call David at work to come home if Smith wanted in his private

residence and Smith refused each request. David is a law abiding private adult citizen and maintains a private residence in the home where Plaintiff lives with his wife and grandson.

The defendants admit that Plaintiff has a subjective expectation of privacy and defendant Smith by forcing Plaintiff to become a party to the criminal act of burglary in the forced entry of David's locked room <u>far exceeded his authority</u> and violated every concept of parole supervision.

The defendants also state "conditions accepted by Galloway in this case included his agreement not to possess any weapons and his written consent to a search of his person, property and residence without warrant by agents of the Board." However, Plaintiff <u>**did not**</u> and <u>cannot</u> sign away the Constitutional rights of another person to have his property searched without warrant. "An individual's effects and possessions are <u>Constitutionally protected from unreasonable search and seizure as well as **his person**</u> and such protection does not depend on the physical presence or physical absence of the individual owner. P.S. Const. Art. 1, ss 8." *Com. v. DeJohn*, 403 A.2d 1283. "Expectation of privacy is present when an individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that...subjective expectation is one that society is prepared to recognize as reasonable." *Com. v. Oglialoro,* 525 Pa 250, 579 A.2d 1288 (1990). *Com. v. Rathfon,* 705 A.2d 448 (Pa Super 1997). "To have reasonable expectation of privacy protectable by Fourth Amendment, one must intend to exclude others and must exhibit that intent." *Rathfon* at 451. "Absent exigent circumstances, <u>police may not search residence without warrant.</u>" *Rathfon* at 451, emphasis added. "Generally, residential settings are areas which are given greatest protection by Fourth

Amendment." *Rathfon* at 451. Without question, defendant Smith and defendant Brown had no Constitutional right, no power and no authority to be a party to a warrantless search and **seizure** and the instigation of a criminal act of breaking into David's locked residential dwelling. "Upon closing the door to one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Com. v. Alexander,* 708 A.2d 1251, 1256 n 14 (Pa 1998).

Pennsylvania Statute 61 P.S. ss 331.27 a (b) which governs parole agents states:

**"Nothing in this Section shall be construed to permit searches and <u>seizures</u> in violation of the Constitution of the United States or Section 8 of Article 1 of the Constitution of Pennsylvania."**

The Pennsylvania Supreme Court has addressed this Statute and determined that parole agents have no authority over private citizens who are not under their supervision. Pennsylvania Supreme Court Justice Papadakos wrote a separate concurring and clarifying opinion:

"Consistent with my reading of 61 P.S. s 331.27, I can agree that **<u>the parole officers were not vested with police powers over Robert Edwards since it does not appear that he was a probationer or parolee and that therefore, they were not entitled to seize</u>** his welfare card, insurance card, or business card." *Com. v. Pickron,* 535 Pa 241, 251, 634 A.2d 1093, 1098.

In the instant case, the defendants considered themselves above the law and Constitutional rights of a private citizen they had no authority over and above the Pennsylvania Supreme Court's affirmation of the clear language of the Statute.

The warrantless search of a private law abiding citizen's locked residential dwelling to find evidence to **fabricate** a case against another person for a technical parole violation is something that society is not willing to recognize as reasonable.

The items seized from a private citizen following the forced entry into his residential dwelling cannot be used as evidence of a technical parole violation when Plaintiff had no knowledge of what was there and no authority or control over what was seized in the illegal warrantless search. <u>Conditions parallel to Plaintiff's</u> are shown in the case of *Keith Scott v. Pennsylvania Board of Probation and Parole*, No. 3093 CD 1994 on remand to the Commonwealth Court and final decision filed October 27, 1999. Keith Scott, ("Scott"), was on parole and living in his parents house. Without probable cause or reasonable suspicion, parole agents conducted a <u>warrantless search of Scott's living quarters and found no evidence of a parole violation</u>. Then the <u>agents continued the warrantless search into Scott's mother's sitting room</u>, which was open to the rest of the house, and found several rifles under the sofa that belonged to his stepfather. Scott was arrested and charged with a technical parole violation and incarcerated. The <u>warrantless search was subsequently ruled unconstitutional</u> and on October 27, 1999, on remand to the Commonwealth Court, the <u>PBPP finally conceded that its revocation of parole was not supported by substantial evidence</u>. This was after the PBPP had fought Scott for 5 years and kept him in prison illegally. In No. 66 M.D. Appeal Docket 1996, <u>Decided July 3, 1997 in the Supreme Court of Pennsylvania, the Court determined that **Scott had protection under the Fourth Amendment.**</u> This court also stated: <u>"Thus, the agents suspicion was based on mere speculation and insufficient to support a warrantless search of the room adjacent to appellee's bedroom."</u>

The court in *Com. v. Katz*, 452 Pa 102, 305 A.2d 701 (1973) also stated that it "Applies the exclusionary rule in revocation hearings when the officer engaged in the misconduct is aware of parolees status."

In the instant case there was not even mere speculation, but only the known false report based on the conspiracy of the defendants. Based solely on the known false report, which was contrived as part of the conspiracy to circumvent the law, defendant Smith came to Plaintiff's residence and caused the criminal act of breaking into a private citizen's residence in violation of the well established Fourth and Fourteenth Amendments and seized private property to use as evidence of a technical parole violation. Defendant Smith, aside from the conspiracy with the other defendants, had **no** reasonable suspicion to believe Plaintiff had violated any condition of his parole and Smith admitted that he had seized David's property to see if any of it was stolen which made him acting as a "Stalking horse" for police. "It is a matter of federal law and state law that parole and probation agents cannot act like 'stalking horses' for the police." *Com. v. Pickron,* 535 Pa 241, 247, 634 A.2d 1093, 1096. "It is only if the parole officer 'changed hat' and became stalking horses for the police that society's interest in the rehabilitation of a parolee is superseded by the parolee's privacy interests. **If and when that occurred, the subsequent search of the parolee's apartment without a search warrant was a violation of the parolee's Fourth Amendment rights."** *Com. v. Edwards,* 583 A.2d 445 emphasis added. Defendant Smith admitted to being a stalking horse for the police and abandoned his duties as an administrator for the parole system and became a police officer conducting a warrantless search upon the locked residence of a private citizen he had no authority over in hope of finding evidence of a crime, which he did not, and the search became exploratory in nature. "General exploratory searches **cannot** be undertaken by officers

with or without a warrant." *U.S. v. Rabinowitz*, 70 S. Ct. 430 (1950) emphasis added.

"However, a parole search **may not** be used as a 'subterfuge for a criminal

investigation.'" *Com. v. Edwards*, 583 A.2d 445 (Pa Super 1990) emphasis added.

Therefore, <u>Plaintiff had standing and an expectation of privacy covered by the</u>

<u>Fourth Amendment</u> and defendants argument should be denied.

The defendants have contended that Plaintiff "Does not reasonably

dispute that Smith believed the information that he had been given about Galloway's son

attempting to purchase a weapon as a gift for Galloway." However Plaintiff does

contend that a conspiracy existed between Smith and the other defendants to deprive

Plaintiff of his Fourth Amendment Constitutional rights in seizing Plaintiff and did so by

the wrongful arrest and incarceration of Plaintiff for 15 1/2 months.

"At the **pleading stage** in civil rights cases, however, the **Plaintiff's access to**

**specific facts surrounding the defendants conduct is often severely limited. In**

**addition, conspiracy by its very nature is secretive.** Thus, in view of Fed. R. Civ. P. 8

(f), <u>the court will liberally construe the allegations of the complaint concerning</u>

<u>combinations of the conspirators</u>. The Third Circuit in Ammlung v. City of Chester,

supra, takes the position that the <u>combination element of conspiracy is pleaded with</u>

<u>sufficient specificity if the complaint</u> **merely alleges** that the defendant's '<u>conspired</u>' or

were involved in an agreement or combination." *Vasquez v. Ferre*, 404 F. Supp. 815,

822 (1975) emphasis added. Therefore, Plaintiff should be allowed to fully develop the

facts and evidence surrounding  the conspiracy and combination in discovery.

The defendants had guilty knowledge of the wrong done to Plaintiff, but would

not admit to the wrong which caused the conspiracy to cover-up their illegal and

unconstitutional actions.

Defendant's Mendelsohn and Robert Stewart have conspired in a forfeiture action against David's private property in which they want to forfeit David's property to the state so it can be sold to pay restitution they say Plaintiff owes. It is unconstitutional for the state to illegally take the private property of an innocent person and sell it to pay a debt another person owes and said debt has nothing to do with the innocent person. As part of the conspiracy, Defendant Giornesto, a licensed gun dealer, and the other Defendants would buy the illegally seized property for their own personal gain.

Since it is impossible to plead more specifically as to the conspiracy, Plaintiff needs full discovery to put his case of conspiracy together with specific facts and details.

Defendant Jacobs is not immune for his actions in furtherance of the conspiracy to cover-up for the other defendants and is an intricate party to the instant suit. The defendants are not immune when their conduct violates clearly established statutory or Constitutional rights of which a reasonable person would have known. Plaintiff needs full discovery to tie the conspiracy to cover-up the unconstitutional conduct of the other defendants together. Plaintiff was also denied due process of law by defendant Jacobs as part of the conspiracy and Plaintiff was denied a fair hearing before a fair and impartial tribunal. Employees working for the PBPP have a self serving agenda and interest in the outcome of the proceeding and are biased and prejudiced which lays the ground work for a conspiracy to cover-up any wrongdoing by their agents or employees. "One element of **due process** is the chance to defend oneself before a fair and impartial tribunal." *Callahan v. Mid Valley School Dist.*, 720 A.2d 815 (Pa Cmwlth

1998).  It is obvious that throughout the entire process of the technical parole violation Plaintiff has been prejudiced by the manufactured charge based on the lies and known false reports of parole officials, followed by the deliberate filing of known false documents and perjury to cover-up their illegal conduct.  Plaintiff has, therefore, been continually prejudiced and denied due process of law and has not had "an adequate opportunity in the state proceedings to raise constitutional challenges" *Freger v. Thomas*, 74 F.3d 740, 745 (9th Cir. 1996) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Further, they will commit overbroad abuses to protect their own self serving interests and then claim immunity.  Would a person be able to get justice if he bought a used car that was junk and the entire used car industry was regulated and policed by an association of used car dealers.  Plaintiff thinks not.  The same applies to self regulating agencies who will not admit to error or mistakes and are will to do "whatever it takes" to cover-up their illegal or unconstitutional acts.  Such power places them above the law as the Constitution was meant when written.  Plaintiff has been denied due process of law through the illegal and unconstitutional conspiratorial conduct of the defendants and then regulating and ruling on their own actions.  Quasi-judicial immunity only protects quasi-judicial acts.  A civil conspiracy to cover-up the unconstitutional acts of associates in the same organization is not a judicial act when the conspiracy to cover-up was done with malice toward Plaintiff and therefore does not allow Jacobs to claim quasi-judicial immunity.  No immunity is expressly provided for in an action brought pursuant to Section 1983.

     V.    The fundamental flaw in applying *Heck v. Humphrey*, 512 U.S. 477

(1994) is that it does not apply in the instant action.  It would be an affectation of legal

research to cite a plethora of cases and the many treatises on the law of torts to confirm

that the tort of false imprisonment is the unlawful detention or confinement of the

Plaintiff that was intentionally caused by the defendants.  False arrest is simply an

unlawful detention or confinement brought about by means of an arrest rather than in

some other way and is in all other respects synonymous with false imprisonment.  It is

also generally required that the Plaintiff be conscious of his detention or confinement.

The interest sought to be protected by this tort is the interest each of us has to remain free

from restraint of movement and is actionable under common law and the Fourth

Amendment where the unlawful detention or confinement is intentionally caused

regardless of whether a criminal prosecution is instituted thereafter.

 *Heck* holds that a damages claim that "necessarily demonstrates the invalidity

of a conviction" may not be brought while the conviction stands. 512 U.S. at 481-82.  A

claim for damages based upon a false arrest does not necessarily impugn the validity of a

conviction should a prosecution be instituted.  That this is so becomes clear by the

considering the following illustrations.  Assume, for example, an arrest is made and no

statement is taken or evidence seized incident to it.  A common law action for false arrest

or an action pursuant to ss 1983 is thereafter commenced and a verdict rendered in favor

of the plaintiff.  An indictment is, however, thereafter duly obtained and the plaintiff is

convicted.  The validity of the conviction is not at all impugned by the result of the action

for false arrest.  In *Gonzales v. Entress*, 133 F.3d 551 (7th Cir. 1998) Judge Esterbrook

stated it thus at 553:  **"Wrongful invasions of property are actionable...under state**

**law and the Fourth Amendment, no matter what happens to the criminal prosecution.** Suppose a person says something like 'I was arrested without probable cause and spent a night in jail until my wife came up with bail money.' That injury is compensable whether or not the person is later convicted - indeed, whether or not he is later prosecuted. **The rationale of cases such as *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980), and *Haring v. Prosise*, 462 U.S. 306, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983), which hold that a criminal prosecution does not bar civil search and *seizure* claims under principles of preclusion ( collateral estoppel or res judicata) is that a search can be unlawful but the conviction entirely proper, or the reverse, and that *some injury from a violation of the Fourth Amendment is unrelated to conviction."* emphasis added.

  Assume further, that evidence was seized or a statement taken incident to the unlawful arrest. The **false arrest or ss 1983 claim is immediately actionable** even if the prosecutor never tries to use the evidence or statement at trial. **And even if the evidence or statement is used at trial, the validity of the subsequent conviction would not necessarily be impugned by a verdict returned in favor of the plaintiff in the civil action.** The Court recognized that in *Heck* when it wrote at 487, n.7 as follows: ". . .a suit for damages attributable to an alleged unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the ss 1983 plaintiff's still outstanding conviction. Because of doctrines like independent source and inevitable discovery,...and especially harmless error... such a ss 1983 action, even if successful, **would not necessarily imply that the plaintiff's conviction was unlawful."** emphasis added. See also, *Booker v. Ward,* 94 F.3d 1052,

1056 (7th Cir. 1996), cert. denied. U.S., 117 S. Ct. 952 (1997) holding that a ss 1983

unlawful arrest claim accrued on the day of arrest because "<u>one can have a successful</u>

<u>wrongful arrest claim and still have a perfectly valid conviction</u>.";  *Mackey v. Dickson,*

47 F.3d 744, 746 (5th Cir. 1995)  "<u>It is well established that a claim of unlawful arrest,</u>

<u>standing alone, does not necessarily implicate the validity of a criminal prosecution</u>

following the arrest.";  *Copus v. City of Edgerton,* 151 F.3d 646, 649 (7th Cir. 1998)

**"<u>The point is that it is possible for an individual to be properly convicted though he</u>**

**<u>is unlawfully arrested, or his home unlawfully searched.</u>  *<u>The remedy for those</u>***

***<u>constitutional violations is a civil action under ss 1983 for money damages.</u>"***

emphasis added.  Plaintiff is suing the Defendants in their individual capacity for illegal

actions performed under color of law, so the necessity of invalidating the parole boards

decision has no bearing in this action.  Therefore, Plaintiff should be allowed to continue

his suit for the illegal conduct and Constitutional violations perpetrated upon Plaintiff by

the defendants.

Defendants' Burks, Morgan and Mechling were all in a position of policy making

and decisions involving subordinates and Plaintiff has claimed they were involved in the

incidents listed in the suit and <u>that they knew of them and turned  blind eye, which means</u>

<u>they acquiesced in the conduct that violated Plaintiff's Constitutional rights.</u>  "However,

to state a claim under ss 1983, the defendant must have been personally involved in the

alleged wrongful conduct either by actual conduct or <u>his knowledge of, and</u>

<u>acquiescence in, the wrongful conduct</u>."  *Rode v Dellarciprete,* 845 F.2d 1195, 1207-

1208 (3d Cir. 1988).  The threshold issue is whether a defendant participated in, or had

actual knowledge of and, having the power and duty to affect the course of others, acquiesced in, the conduct that caused the violation of plaintiff's federally protected rights. *Bracey v. Grenoble*, 494 F.2d 566, 571 (3d Cir. 1974); *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Good v. Rizzo*, 506 F.2d 542, 550 (3d Cir. 1974), 423 U.S. 362 (1976).

Although Plaintiff does not agree with the validity of his parole revocation, it is **not** the crux of Plaintiff's suit which is the unconstitutional seizure of the Plaintiff's person and the continued conspiracy to deny Plaintiff due process, both of which are well established rights guaranteed by the United States Constitution.

## **CONCLUSION**

Wherefore, the Court should deny the motion to dismiss filed by the Pennsylvania Board of Probation and Parole, Joseph Smith, Daniel Roberts, George Johnson, Arthur Thomas, K. Scott Roy, Thomas Ridge, William Ward, Sharon Burks, Seth Mendelsohn, Fred Jacobs, Neil Mechling and James Morgan and permit Plaintiff to commence discovery to obtain facts and details to support his suit.

Respectfully submitted,

Gail Galloway
R.D.#1, Box 30
Petersburg, Pa 16669
814-669-9164

Date: September 21, 2002

## CERTIFICATE OF SERVICE

I certify that I have this day served a true and correct copy of the foregoing document upon the persons named below by First Class United States Mail at the address stated, which is the last known address of each.

Peter McManamon
200 Penn Street
Huntingdon, PA 16652
(Counsel for Defendant Stewart)

Francis Filipi
Office of Attorney General
15th Floor, Strawberry Sq.
Harrisburg, PA 17120

Gail Galloway
R.D.#1, Box 30
Petersburg, PA 16669
814-669-9164

Date: September 23, 2002