IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAIL J. GALLOWAY | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 1:00-CV-0649 |
| | : | |
| PENNSYLVANIA BOARD OF | : | (Judge Rambo) |
| PROBATION AND PAROLE, *et al.*, | : | |
| Defendants | : | (Electronically Filed) |

STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants, by their attorneys submit that the following facts are not in dispute and that based on these facts they are entitled to judgment in their favor:

1. At the time relevant to this action, Joseph M. Smith was a parole agent assigned to the Altoona District Office of the Board. Smith Declaration, ¶ 1.

2. Plaintiff, Gail Galloway, was convicted of two counts of theft in the Court of Common Pleas for Huntingdon County, Pennsylvania and was sentenced to a term the controlling minimum of which was two

years and the controlling maximum of which was seven years. The minimum term expired on September 14, 1994 and the maximum term expired on September 14, 1999. Smith Declaration, ¶ 2.

3. On September 14, 1994, plaintiff was released on parole after executing a form containing both the standard conditions of parole as well as one special condition concerning payment of a supervision fee. Smith Declaration, ¶ 3.

4. The Board imposes a number of conditions in all supervision cases. The condition numbered on the form as 5.b. states:

> 5. You shall:
>
> * * *
>
> b.  refrain from owning or possessing any firearms or other weapons. . . .
>
> Exhibit A, page 2.

5. At the time this action arose, June 1, 1998, Smith had been plaintiff's parole agent for a few months. Smith Declaration, ¶ 5.

6. Prior to Smith's arrival at plaintiff's home on June 1, 1998, his superior informed him he had heard that plaintiff's son, David Galloway, was interested in purchasing a .50 caliber weapon for his father as a birthday present. Smith Declaration, ¶ 6.

7. Both because of this information as well as because Smith needed to make a routine contact with plaintiff as a parolee on his caseload, Smith went to plaintiff's home that day. He went to plaintiff's home intending to ask him if he possessed any firearms or other weapons. *Id*.

8. While this information undoubtedly increased the likelihood Smith would ask plaintiff about weapons on that day, he has asked this question of many other parolees under his supervision caseload without specific information to cause him to ask it. Smith Declaration, ¶ 7.

9. Smith went to plaintiff's home and found plaintiff on his porch. Smith Declaration, ¶ 8.

10. Smith asked him if there were any weapons on the property. *Id*.

11. Plaintiff told Smith that there were; that they were his son's, although some were still registered to plaintiff. *Id*.

12. When Smith asked him to show him, plaintiff willingly got up and Smith followed him into his house. Smith Declaration, ¶ 9.

13. At all times while the two were walking through plaintiff's home plaintiff was in the lead. *Id*.

3

14. Smith followed plaintiff down the hallway until they came to a bedroom door. The door was closed but not locked. Smith Declaration, ¶ 10.

15. Plaintiff opened the door and Smith followed him into the bedroom. Smith Declaration, ¶ 11.

16. Plaintiff stood to Smith's right and before them was a closet with a sliding door. Smith Declaration, ¶ 11.

17. The sliding door to the closet was not secured in any way. *Id*.

18. When Smith opened the closet door, he saw a 9-millimeter handgun lying on a shelf. It was loaded. Smith Declaration, ¶ 12.

19. Smith also found an unsecured gun cabinet in the closet and a number of other weapons in the closet. *Id*.

20. In that closet Smith discovered all the weapons listed on the confiscation report attached to Smith's declaration as Exhibit B.

21. Because Smith concluded plaintiff had easy access to these weapons, he considered plaintiff as having constructive possession of them in violation of Condition 5b. Smith Declaration, ¶ 13.

22. Consistent with this assessment, Smith arrested plaintiff and charged him with that violation. Smith Declaration, ¶ 13 & Exhibit C.

23. Smith arrested plaintiff because of the weapons he observed and confiscated and not for any other reason. Smith Declaration, ¶ 14.

24. While the information that plaintiff's son was thinking about purchasing a gun for his father likely prompted Smith to ask plaintiff about weapons, it was not the reason Smith viewed plaintiff as a technical parole violator. Smith Declaration, ¶ 14.

25. Smith had no desire to possess or own the weapons he found in the closet and confiscated and was unaware that any other person might have had such a desire. *Id*.

26. Further, Smith made the decision to arrest plaintiff for this violation without consulting anyone else. Smith Declaration, ¶ 15.

27. Plaintiff is not the only parolee whom Smith has arrested for constructive possession of weapons. *Id*.

28. Based on the record developed at that hearing the Board determined to revoke plaintiff's parole. Smith Declaration, ¶ 16.

Wherefore, as defendant Smith had probable cause to arrest plaintiff on June 1, 1998, and this is the sole issue remaining in this litigation, judgment should be entered in favor of all defendants and against plaintiff.

                                              GERALD PAPPERT
                                              Attorney General

                                  By:   *s/ Francis R. Filipi*
                                              FRANCIS R. FILIPI

Office of Attorney General          Senior Deputy Attorney General
15th Floor, Strawberry Square     Civil Litigation Section
Harrisburg, PA 17120
Phone: (717) 787-3874             SUSAN J. FORNEY
Fax:   (717) 772-4526             Chief Deputy Attorney General
                                              Chief, Civil Litigation Section

Date: May 28, 2004