ORIGINAL

FILED
HARRISBURG, PA

AUG 1 2 2004

MARY E. D'ANDREA, CLERK
Per _____
       Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GAIL GALLOWAY,
    Plaintiff

v.                                                    Civil Action No. 1:00-CV-00649
                                                      (Judge Rambo)
PENNSYLVANIA BOARD OF
PROBATION AND PAROLE, *et al.*,
    Defendants

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Gail Galloway, ("Plaintiff"), asserts that there are genuine issues to be tried and the issues must be decided by a jury and the Defendant's Motion for Summary Judgment should be denied.

Plaintiff will address Defendant's argument by the numbers and title used in their argument.

1. **SMITH HAD PROBABLE CAUSE TO ARREST PLAINTIFF FOR CONSTRUCTIVE POSSESSION OF THE WEAPONS.**

THIS IS NOT TRUE. The initial search of Plaintiff's home was not proper because is was not based on probable cause and not even based on reasonable suspicion to believe that Plaintiff had violated any condition of his parole. Plaintiff had been convicted of a non violent offense, had **no** history of aggressive or violent behavior, had a perfect conduct record while incarcerated, had a perfect record at the Community Corrections Center in Johnstown, PA where he maintained a full time job and did volunteer work at the Senior Citizen Center and the fact that Plaintiff had been on parole almost four (4) years without incident and was employed full time.

The entire pretext of the warrantless search of Plaintiff's home was based on the

unfounded and known false report by Defendant Giornesto, a former parole agent who was fired, and who was also a licensed gun dealer. Defendant Giornesto reported to Defendant Johnson that Plaintiff's son, David Galloway, ("David"), had "inquired" about buying a ".50 caliber single shot rifle" for Plaintiff for his birthday. The alleged report was made in May and Plaintiff's birthday is not until the last day of August, over three (3) months from that time.

The false report was part of a conspiracy to gain control of David's valuable gun collection by the Defendant's. The story of Giornesto's report has many inconsistencies and outright lies. Defendant Smith gave sworn testimony at the revocation hearing that Giornesto reported that a man named "Stryker" had reported it and Smith was not sure of the mans first name but thought it was something like Carl. This testimony was during the four (4) minutes of Defendant Smith's testimony that is "mysteriously" missing from the hearing transcripts. However, Plaintiff's attorney wrote this down in his notes and will be available to testify at trial. (The Defendants refused to allow Plaintiff's attorney to tape record the hearing. The man named Stryker referred to is Chet Stryker of Huntingdon, Pa, the former landlord of Defendant Giornesto's gun business. Stryker was subsequently contacted and gave a sworn affidavit that he never had any conversation with Giornesto concerning Plaintiff about his son or any guns. Plaintiff's son David also gave a sworn affidavit that he never inquired about purchasing any gun for Plaintiff. These sworn affidavits are in the Commonwealth Court and will be available for trial. Since these sworn were filed, Defendant Giornesto has changed his story considerably in the answer to an interrogatory in the lawsuit filed by David Galloway to recover his

illegally seized property. The first "report" said "Stryker" had reported that David was "inquiring" about buying a .50 caliber single shot rifle for Gail Galloway. In the interrogatory in David's lawsuit, Giornesto now says "I learned from a licensed gun dealer that you were attempting to buy." Then the story changes again in the interrogatories in David's lawsuit. Now Giornesto states that he was told by an undisclosed source that David was considering purchasing a semi-auto M2HB .50 caliber machine gun for his father. Now in the obscure answers to Plaintiff's current interrogatories that were received many months after they were filed, the story has changed again. In interrogatory #10, Giornesto now states "Chet Stryker has nothing to do with this case. He reported nothing to me concerning this issue." Plaintiff asked in interrogatory #12 for Giornesto to specifically name the person who made the report that David Galloway had inquired about buying his father a .50 caliber rifle for his birthday. Now Giornesto answers "She shall remain anonymous, to protect her from retaliation by the Plaintiff, etc." Giornesto's story has changed from a man named "Stryker" to a "licensed gun dealer" to "undisclosed source" to "She". It also changed from "inquiring about" to "attempting to buy" and from "a .50 caliber single shot rifle" to a "semi auto M22HB .50 caliber MACHINE GUN. This so-called report was false and known by all involved to be false and was the foundation of a conspiracy to get a valuable gun collection from a private individual and put Plaintiff away in prison for a bogus parole violation. Therefore the initial warrantless search was not based on reasonable suspicion to believe that Plaintiff had violated his parole, but based solely on the conspiracy and known false "report" filed by Defendant Giornesto.

"Constitutional rights of parolee are indistinguishable from those of probationer.

Probationer's home like anyone else's is protected by Fourth Amendments requirement that searches be reasonable." *Com. v. Williams*, 629 A.2d 1031. 547 Pa 577 (1977).

In *Com. v. Walter*, 440 Pa Super 263, 655 A.2d 554 (1995), it states: "Probationers and parolees have Fourth Amendment right protecting them against unreasonable searches and seizures." and further states, "Acceptance of parole and signing of 'conditions of parole/reparole' found which include provisions expressly consenting to search of 'my person, property and residence, without warrant by agents of the Pennsylvania Board of Probation and Parole' was inconsistent with search and seizure rights of parolee." This case refers to a parolee signing the PBPP-11 form which is signed under duress and coercion because not signing it will result in a person being denied parole. *Walter* continues: "The essence of Fourth Amendment rights is the concept that individuals have an expectation of security in their person and things; that one will not be subjected to the intrusion of a search of a parolee for no other reason than that the parolee accepted parole, and in so doing signed a form authorizing a search for any or no reason, is tantamount to a parolee checking his Fourth Amendment rights at the door of the prison while leaving, for once out the door that right is effectively surrendered."

*Com. v. Rosevelt*, 443 Pa Super 616, 622, 662 A.2d 1131, 1133 states: "Reasonable suspicion is not enough to uphold a warrantless search of parolee's premises." and further states: "[a] parolees protection from unreasonable search and seizure is no less than that afforded to any other Commonwealth citizen." *Rosevelt* further quotes the United States Supreme Court as applicable to Pennsylvania: *Muncey v.*

*Arizona,* 437 U.S. 385, 393 (1978), " '[T]he mere fact that law enforcement **may** be made more efficient can **never** by itself justify disregard of the Fourth Amendment' Nor can it be an excuse to curtail Article 1, Section 8 of the Pennsylvania Constitution." emphasis added, *Rosevelt, supra,* 662 A.2d 1131, 1145.

There was no reasonable suspicion to believe that Plaintiff had violated any condition of his parole. There was not even mere speculation to believe Plaintiff had violated any condition of his parole. Counsel for the Commonwealth Defendants in David's lawsuit rightly stated: "(Board's consent-to-search form does not authorize suspicionless searches of parolee's person, property or residence.)" Thus, the case at controversy is whether the parole agents can falsely fabricate their own story and use it as suspicion and as a basis to conduct a warrantless search and seizure. Plaintiff was never reported to have inquired about buying any gun which would have been a violation of his parole. It is **not proper** to speculate **before the fact** that a parole violation **may occur** in the future as the basis to conduct a warrantless search on a parolee and there was absolutely no evidence that Plaintiff had any knowledge of any alleged "inquiry" or even if true (which it was not) that any inquiry by a third party without the knowledge of a parolee was reasonable suspicion that the parolee had violated the terms of his parole to justify a warrantless search. If this were the case, a parole agent or policeman would just have to fabricate a false story and use it as the basis anytime they wanted to conduct a warrantless search of a person or property.

There is no provision in the Constitution or law that permits a parole agent while exposing a handgun in a coercive threatening manner to force a parolee under threat of his life to forcibly break into a locked room thereby committing an act of burglary. This

action far exceeds the scope of authority of a parole agent in supervising and being responsible for the rehabilitation of a parolee.

Conditions which almost mirror Plaintiff's case are shown in the case of *Keith Scott v. Pennsylvania Board of Probation and Parole,* No. 3093 CD 1994 on remand from the United States Supreme Court to the Commonwealth Court and the final decision filed October 27, 1999. Keith Scott ("Scott") was on parole and living in his parents house. Without probable cause or reasonable suspicion, parole agents conducted a warrantless search of Scott's living quarters and found no evidence of a parole violation. Then the parole agents continued the warrantless search into Scott's mother's sitting room which was open to the rest of the house, and found several rifles under the sofa that belonged to his stepfather. Scott was arrested and charged with a technical parole violation and incarcerated. **The warrantless search was subsequently ruled unconstitutional** and on October 27, 1999, on remand to the Commonwealth Court, the PBPP finally conceded that its revocation of parole was not supported by substantial evidence. This was after the PBPP had fought Scott for five (5) years and kept him in prison illegally. In No. 66 M.D. Appeal Docket 1996, decided July 3, 1997, in the Supreme Court of Pennsylvania, the Court determined that **Scott had protection under the Fourth Amendment**. This Court also stated: **"Thus the agents suspicion was based on mere speculation and insufficient to support a warrantless search of the room adjacent to appellee's bedroom."** Therefore, the totally baseless and known falsely contrived "report" was not a basis for a proper warrantless search and the **speculation that a parole violation may occur sometime in the future** is insufficient

grounds to conduct a warrantless search on the Plaintiff.

The Defendant's claim that by the Plaintiff forcibly entering David's room (under duress and threat) was enough to qualify as "constructive possession." However, the Defendant's fail to state that constructive possession requires the "Power and Intention" to control objects. It was never proven that Plaintiff had the power, other than under threat of his life, or the required intent to control any guns. The defendants also state that many of the guns were still registered in Plaintiff's name, although facts prove it was only a couple, but fail, as they did at the revocation hearing, to admit that under the Federal Firearms Regulations the guns can be transferred from father to son without the use of any paperwork transfer. <u>Federal law does not require any registration transfer between father and son</u>.

It has been long-standing law in many United States Supreme Court Cases that: "The right to be let alone--the most comprehensive of rights and the most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, **whatever the means employed, must be deemed a violation of the Fourth Amendment.**" Justice Louis Brandeis in *Olmstead v. U. S.*, 277 US 438 (1928).

"Consent to search adult son's room given by mother **not valid** because police <u>**could not reasonably believe mother would have common authority over his room.**</u>" *U.S. v. Whitfield*, 939 F.2d 1071, 1074-75 (D.C. Cir. 1991). However, unlike *Whitfield* Plaintiff gave **NO** permission and in fact was coerced into breaking into David's locked room. "The major policy behind the use of search warrants is to protect citizens from unreasonable searches and seizures. Article 1, ss8. Such searches may be unreasonable

because they constitute fishing expeditions by overly zealous police officers **or by officers motivated by personal or political animus."** emphasis added. *Com. v. Glass,* 718 A.2d 804.

2. THE UNDISPUTED FACTS SHOW THAT SMITH IS ENTITLED TO QUALIFIED IMMUNITY.

There are no "undisputed facts" here. Defendant Smith knew what he was doing and that it violated Plaintiff's Constitutional rights. Smith was schooled as a parole officer in search and seizure which means he is aware of the PBPP regulations governing his actions. Pennsylvania Statutes regulate the PBPP. 61 P.S. 331.27a(b) states:

"State parole agents are authorized to search the person and property of state offenders in accordance with the provisions of this section."

The second sentence of 61 P.S. 331.27a(b) is explicit and states in clear and unambiguous language:

**"Nothing in this Statute shall be construed to permit searches and seizures in violation of the Constitution of the United States or Section 8 of Article 1 of the Constitution of Pennsylvania."** emphasis added.

The Defendant's are liable to Plaintiff under 42 U.S.C. 1983 when their conduct violated clearly established Statutory and Constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). **"[A]n action for damages may offer the only realistic avenue for vindication of constitutional guarantees."** *Harlow, supra,* at 814.

The Defendants knew the laws and Statutes that regulated their actions. "Tort defendants, including those sued under Section 1983, are 'responsible for the natural consequences of [their] actions.'" *Malley v. Briggs,* 475 U.S. 527, 106 S. Ct. 1092, 1098

n7 (quoting *Monroe*, 365 U.S. at 187). The Defendants are **not** immune when their conduct violates clearly established Statutory or Constitutional rights which a reasonable person would have known. By its terms, 1983 "creates a species of tort liability that on its face admits to no immunities." *Imler v. Pachtman*, 424 U.S. 409, 417. Its language is absolute and unqualified, and no mention is made of any privileges, immunities, or defenses that may be asserted. *Owen v. City of Independence*, 445 U.S. 622 (1980). The Defendants are not immune because their actions were taken in bad faith and with full knowledge of the law. No probable cause or exigent circumstances existed and the Defendants may not manipulate events and circumstances to create a justification for a warrantless search.

*Martinez v. California*, 444 U.S.277 (1980) held that a State cannot immunize an official from liability for injuries compensable under federal law and conduct of persons acting under color of state law which is wrongful under 42 U.S.C. 1983.

**"When an official acts in behalf of the state and the acts are illegal or unconstitutional, they are not entitled to the states immunity."** *Hafer v. Melo*, 502 U.S. 21 (1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 234 (1974).

Defense Counsel states "Smith had no reason to believe Plaintiff did not have 'the intend and power at any given time to exercise control and dominion over the object either directly or through another person." This is completely wrong. Smith had access to all records and information about Plaintiff and there was nothing in the record to show that Plaintiff had any intent or power to control anything which is a critical factor for a case of constructive possession.

A state official seeking to enforce in the name of a state an unconstitutional act

"comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state **has no power top impart to him any immunity from responsibility to the supreme authority of the United States**"

*ex parte Young,* 209 U.S. 123, 159-160 (1907).

The determination of qualified immunity necessitates three inquires: (1) The identification of the specific right allegedly violated; (2) The rights are clearly established as to alert any reasonable officer to its constitutional parameters; and (3) The ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue.

(1) Plaintiff has established and identified the specific right allegedly violated by the violation of the Fourth Amendment. (2) The rights are clearly established and any reasonable officer would have been aware of them. **The training sheets supplied by the Defendants verify the Defendants were trained on search and seizure and well versed on the Statutes they were supposed to be enforcing.** The Fourth Amendment, as construed by State and Federal Courts, clearly precluded a warrantless, nonconsensual entry into a home absent exigent circumstances. **This fundamental principle of Fourth Amendment jurisprudence was well established long before June, 1998, and it remains law today. A public official is presumed to know the laws that are clearly established, thus, no grant of qualified immunity can be proper.** (3) No reasonable officer trained for his job could have believed the conduct would be lawful of forcing a parolee under threat of his life to commit an act of forced entry into a locked room of a

private citizen the officer had no authority over.

Where statutory authority exists, there can be no waiver of Constitutional rights. "Victims of unreasonable searches and seizures may recover damages directly related to the invasion of their privacy--including (where appropriate) damages for physical injury, property damage, injury to reputation, etc." *Towns v. City of New York,* 173 F.3d 138, 148 (2d Cir. 1999).

    3.    REGARDLESS OF HOW QUESTION 1 IS ANSWERED, NO OTHER DEFENDANT BE HELD LIABLE FOR THE DECISION TO ARREST PLAINTIFF ON JUNE 1, 1998, FOR TECHNICAL VIOLATION OF HIS PAROLE.

The Defendants were involved in a scheme to take David's extremely valuable gun collection which constitutes a conspiracy. In order for the conspiracy to work and the gun collection had to be forfeited so they could get their hands on it for their own personal use, they had to have Plaintiff arrested for a parole violation and placed in prison. They tried to have the guns forfeited so Giornesto, a licensed gun dealer at the time could buy them cheap and resale them or distribute them among the other conspirators. This failed when David filed a Federal lawsuit and won and his private gun collection had to be returned to him. Giornesto was then fired by the Pennsylvania Board of Probation and Parole. "At the pleading stage in civil rights cases, however, the Plaintiff's access to specific facts surrounding the defendants conduct is severely limited. In addition, conspiracy by its very nature is secretive. Thus, in view of Fed. R. Civ. P. 8(f), the Court will liberally construe the allegations of the complaint concerning combinations of the conspirators. The Third Circuit is Ammlung v. City off Chester, supra, take the position that the combination element of conspiracy is pleaded with

sufficient specificity if the complaint <u>merely alleges</u> that the defendants 'conspired' or were involved in an agreement or combination." *Vasquez v. Ferre,* 404 F. Supp. 815, 822 (1975) emphasis added. This is a matter for the jury to decide as required by the United States Constitution because of the complex issue in controversy. The Plaintiff has been deliberately denied critical discovery consistently in this case by all the frivolous objections to keep from giving truthful answers to discovery and boilerplate non responsive and evasive answers to interrogatories. While the Defendant's version of events has changed many time, Plaintiff's version has remained consistent.

Plaintiff's complaint should not be dismissed because it states a cause of action that is clearly provided by 42 U.S.C. 1983, which in terms authorizes suits to redress deprivations of rights secured by the laws of the United States. *Boyd v. U.S.* 116 U.S. 28 asserts that the Court has a duty to protect against any encroachment of a Constitutionally protected right and secured liberty. "A complaint may not be dismissed on motion if it states some sort of claim, baseless though it may prove to be and inartistically as the complaint may be drawn. **This is particularly true where the plaintiff is not represented by counsel**." *Boag v. MacDougal,* 454 U.S. 364 (1982) emphasis added. It is well settled in the Courts that, **"The complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that the plaintiff will be able to prove all the necessary factual allegations."** *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982).

Plaintiff has made a short plain statement of his claims that notified the defendants as to the claim against them. "<u>The Federal Rules of Civil Procedure do not</u>

<u>require a claimant to set out in detail the facts upon which he bases hi claim. To the contrary, all the Rules require is '**a short and plain statement of the claim**' that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."</u> *Conley v. Gibson,* 335 U.S. 41, 47 (1957). The Third Circuit also made it clear as to the claim in the case of *Tunstall v. Office of Judicial Support,* 820 F.2d 631, 633 (3rd Cir. 1987) (citing the Supreme Court decision in *Flagg Brothers, Inc. v. Broods,* 436 U.S. 155 (1978) by stating: "**In order to properly state a Section 1983 claim in the Third Circuit, a plaintiff must only <u>allege</u> a deprivation of a right guaranteed by the Constitution and laws of the United States by a named defendant acting under color of law.**" "**Damages are appropriate in cases of reckless or callous disregard for Plaintiff rights or intentional violations of Federal law.**" *U.S. v. Balistrieri,* 981 F.2d 916 (7th Cir. 1992). "Pro se complaints, according to the Supreme Court are held 'to less stringent standards than formal pleadings by lawyers,' and regardless of who represents the plaintiff, **a motion to dismiss is <u>not</u> to be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.**" *Haines v. Kerner,* 404 U.S. 519 (1972). The United States Supreme Court has repeatedly held that: " 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' **said complaint cannot be dismissed.**" *Rock v. Philadelphia,* 868 F.2d 644, 645 (3rd Cir. 1989).

    Plaintiff has included sworn affidavit's from David and Beverly Galloway which verify Plaintiff's claim as to what happened June 1, 1998. Smith cannot say the decision was his alone to arrest Plaintiff when Smith made several phone calls from a cell phone when he detained Plaintiff at his home. Smith had the authority to search the living

quarters of Plaintiff in a reasonable manner only without warrant which no such search occurred, but he did search the private room of a person he had no authority over which required a search warrant based upon probable cause. Smith had no search warrant because he had no probable cause to believe Plaintiff had violated any of the conditions of his parole. The overstepping of his authority and conducting a warrantless search in an unreasonable manner based on the conspiracy with the others was the basis for their violation of Plaintiff's Fourth Amendment Constitutional rights. "The bedroom itself was not a 'common area' and the agents had no grounds for believing otherwise." and "The agents could not infer such authority merely by her ownership of the house." *U.S. v. Whitfield*, 939 f.2d 1071, 1074-75. Plaintiff had no access to the area searched and no control over its contents and Plaintiff was not in possession of anything to justify the arrest or the warrantless search of David's locked room and there was no constructive possession which requires access and the intent to control an item. Critical to a finding of constructive possession is <u>evidence of shared 'access' and 'control' of the area where the contraband was found</u>." *Com v. Rodriquez.* 618 A.2d 1107 (Pa Super 1997). All of the defendants listed in the present action were involved in the conspiracy when the officials knew about the conduct and facilitated it, approved it, condoned it, and turned a blind eye to the known violations of the law and the Violation of Plaintiff's Fourth Amendment United States Constitutional rights.

Therefore, since the search exceeded the reasonable search requirement of the parole laws, the search was illegal and the subsequent arrest of Plaintiff for a technical parole violation was unreasonable and in violation of Plaintiff's Fourth amendment rights

to be free from unreasonable searches and seizures of his residence and person and the Motion for Summary Judgment should be denied and the many disputed issues put before a jury to decide, for these are clearly matters for a jury to decide.

Respectfully submitted,

*Gail Galloway*
Gail Galloway
R.D.#1, Box 30
Petersburg, PA 16669
814-669-9164

Date: August 10, 2004

## SWORN AFFIDAVIT

I, Beverly Galloway, certify that my son, David Galloway, had his door locked to his room as he always does, on June 1, 1998, and that entry was made forcibly causing damage to the door. I further certify that Mr. Joseph Smith is not telling the truth when he states the door was open or unlocked. I further certify that my adult son had a protection permit to carry a handgun issued to him at his home address by the Huntingdon County Sheriff's Department following the required background checks including the fact that the sheriff knew Gail Galloway and that he was on parole and knew that David Galloway was an adult living in a private room in the same house. I further certify that Joseph Smith was not telling the truth concerning the welfare of my 5 year old grandson. Mr. smith says he got me up to take care of my grandson before arresting Gail Galloway. This is not true. I was sleeping because I worked third shift and when Mr. Smith got me up, he was ransacking my son's room and did not search anywhere else in the house that Gail had access to or use of. I went outside and could not find my grandson, Tyler, and at that time, Gail was handcuffed in the back seat of a Pennsylvania State Police car. I asked him where Tyler was and he said he did not know, when Smith handcuffed him in front of Tyler, Tyler took off around the house and out of sight. I searched and found Tyler hiding behind a chair on the other side of the house on the other porch. No one had any concern for the welfare of my 5 year old grandson while they were arresting my husband, handcuffing him and placing him in a police car. This was a traumatic experience for a 5 year old and Mr. Smith lied about it. The issue of Tyler being in the care of his grandfather, Gail Galloway, when Mr. Smith arrived and then not being cared for or looked after by anyone including a family member during the arrest and handcuffing procedure and placing in the back of a police car was brought up several times in Gail's appeals of this arrest for a parole violation and neither Mr. Smith nor the Pennsylvania Board of Probation and Parole contested this issue as not being factual.

*Beverly A. Galloway*
Beverly A. Galloway

Sworn to before me this /0
day of August, 2004.

Seal

```
NOTARIAL SEAL
BETTY J. GRISSINGER, NOTARY PUBLIC
HUNTINGDON BORO, HUNTINGDON CO., PA
MY COMMISSION EXPIRES OCT 28, 2007
```

## SWORN AFFIDAVIT

I, David Galloway, certify that I always keep my door locked to my private room and that no one else has a key or any authority to enter my locked room. My door was locked, as always, on June 1, 1998, when I went to work. When I returned home from work that night my door had been broken in, damaged and my private room had been ransacked any a lot of my private property stolen. It was later said that the items were firearms and taken as result of a parole violation of my father, Gail Galloway. However, many items were taken that were not firearms and would not justify a parole violation. A set of handcuffs were taken, metal boxes were taken, while other items such a bayonets and knives were left on my bed. My antique Civil War sword was taken. It looked like someone was doing a shopping list seizure of items that were valuable and they wanted.

David Galloway

Sworn to before me this _10_
day of August, 2004

Seal.

DANIEL S. DAVIS
MAGISTERIAL DISTRICT
P.O. BOX 361, ALEXANDRIA, PA 16611
MY COMMISSION EXPIRES JAN. 1, 2008

## CERTIFICATE OF SERVICE

I certify that I have this day served a true and correct copy of the foregoing document upon the persons named below by First Class United States Mail at the address stated, which is the last known address of each.

> Francis Filipi
> Office of Attorney General
> 15th Floor, Strawberry Square
> Harrisburg, PA  17120

> *Gail Galloway* (signature)
> Gail Galloway
> R.D.#1, Box 30
> Petersburg, PA  16669
> 814-669-9164

Date:  August 10, 2004