**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GAIL J. GALLOWAY | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 1:00-CV-0649 |
| | : | |
| PENNSYLVANIA BOARD OF | : | (Judge Rambo) |
| PROBATION AND PAROLE, *et al.*, | : | |
| Defendants | : | (Electronically Filed) |

### DECLARATION OF JOSEPH M. SMITH

I, Joseph M. Smith, hereby declare that the following information is true and correct and from my personal knowledge or based upon records routinely maintained during the operation of the Pennsylvania Board of Probation and Parole (hereinafter, Board), whose entries are made at or near the time by, or from information transmitted by, a person with knowledge as a normal part of operating the Board:

1.　　At the time relevant to this action, I was a parole agent assigned to the Altoona District Office of the Board. Since that time, I have been promoted and presently hold the position of District Director of the Scranton District Office.

2. Board records show plaintiff was convicted of two counts of theft in the Court of Common Pleas for Huntingdon County, Pennsylvania and was sentenced to a term the controlling minimum of which was two years and the controlling maximum of which was seven years. The minimum term expired on September 14, 1994 and the maximum term expired on September 14, 1999.

3. On September 14, 1994, plaintiff was released on parole after executing a form containing both the standard conditions of parole as well as one special condition concerning payment of a supervision fee. Attached hereto as Exhibit A is a true and correct copy of the Conditions Governing Parole/Reparole for plaintiff that bears his signature and the date September 14, 1994.

4. The Board imposes in all supervision cases a condition numbered on the form as 5.b. which states:

> 5. You shall:
> \* \* \*
> b. refrain from owning or possessing any firearms or other weapons. . . .
>
> Exhibit A, page 3

5. At the time this action arose, June 1, 1998, I had been plaintiff's parole agent for a few months.

6.      Prior to my arrival at plaintiff's home on June 1, 1998, my superior informed me that he had heard that plaintiff's son, David Galloway, was interested in purchasing a .50 caliber weapon for his father as a birthday present. Both because of this information as well as because I needed to make a routine contact with plaintiff as a parolee on my caseload, I went to plaintiff's home that day. I went to plaintiff's home intending to ask him if he possessed any firearms or other weapons.

7.      The information my supervisor passed on undoubtedly increased the likelihood I would ask plaintiff about weapons on that day. However, I have asked this question of many other parolees under my supervision without specific information to cause me to ask it.

8.      I went to plaintiff's home and found plaintiff on his porch. During the initial conversation, I asked him if there were any weapons on the property. He told me that there were; that they were his son's, although some were still registered to plaintiff.

9.      When I asked him to show me, he willingly got up and I followed him into his house. At all times while we were walking through plaintiff's home he was in the lead.

3

10. I followed plaintiff down the hallway until we came to a bedroom door. Contrary to plaintiff's representations, the door was closed but not locked.

11. Plaintiff opened the door and I followed him into the bedroom. I recall he stood to my right and before me was a closet with a sliding door. Just as the bedroom door was unlocked, the sliding door to the closet was not secured in any way.

12. When I opened the closet door, I immediately saw a 9-millimeter handgun lying on a shelf. I examined it and found it was loaded. I also found an unsecured gun cabinet in the closet and a number of other weapons in the closet. A true and correct copy of the confiscation report I prepared is attached to this declaration as Exhibit B. I listed all of the weapons and related items I found in that closet and confiscated at page 2 of the exhibit.

13. Because of plaintiff's easy accessibility to these weapons, I viewed plaintiff as having constructive possession of them in violation of Condition 5b. Consistent with this assessment, I arrested plaintiff and charged him with that violation. Exhibit C is a true and correct copy of my handwritten notice of charges, which bears plaintiff's acknowledgement of receipt in the upper right-hand corner.

14. I arrested plaintiff because of the weapons I observed and confiscated and not for any other reason. Specifically, while the information that plaintiff's son was thinking about purchasing a gun for his father prompted me to ask plaintiff about weapons, it was not the reason I viewed plaintiff as a technical parole violator. Nor did I harbor any desire to possess or own the weapons I found and confiscated and was unaware that any other person might have had such a desire,

15. Further, I made the decision to arrest plaintiff for this violation without consulting anyone else. Plaintiff is not the only parolee whom I have arrested for constructive possession of weapons.

16. I subsequently testified truthfully and under oath at the violation hearing as to exactly what had occurred. Based on the record developed at that hearing the Board determined to revoke plaintiff's parole.


Executed this _____ day  
of May, 2004

_____  
Joseph M. Smith  
District Director, Scranton District  
Pennsylvania Board of Probation & Parole